## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER,                    :
                                        :
    Plaintiff,                         :
                                        :
  v.                                    :        C.A.No.
                                        :
THOMAS P. GORDON, individually; SHERRY  :
L. FREEBERY, individually; CHRISTOPHER  :
A. COONS, in his official capacity as County :
Executive; DAVID W. SINGLETON, in his   :
official capacity as Chief Administrative Officer; :        Jury Trial Demanded
and NEW CASTLE COUNTY, a municipal      :
corporation,                            :
                                        :
    Defendants.                        :

## COMPLAINT

1.  This is a civil action for compensatory and punitive damages and for injunctive relief

for violation of plaintiff's right to the privacy of his personal medical information under the

Fourteenth Amendment, as well as retaliatory violations of plaintiff's rights to freedom of

association, free speech and to petition the government for redress of grievances under the First

Amendment of the United States Constitution.  Plaintiff exercised his First Amendment rights to

(1) associate with his clients, (2) speak out and expose the illegal actions of corrupt public

officials, and (3) bring the bright light of public scrutiny upon the many misdeeds of corrupt

public officials in a broken government where the system of checks and balances had failed.

Defendants then immediately retaliated against plaintiff for his protected activities by releasing

his personal and confidential medical information to the news media and the general public, and

by attacking his integrity and character in numerous defamatory newspaper attack ads.  Plaintiff

also asserts supplemental state law claims for defamation and invasion of privacy.

## I.  JURISDICTION

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)

and (4), 28 U.S.C. §§ 2201 and 2202, and the First and Fourteenth Amendments to the U.S.

Constitution.  The cause of action arises under 42 U.S.C. § 1983. The claims arose in this judicial

district.  This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 which

provides for supplemental jurisdiction.

## II.  THE PARTIES

3.  Plaintiff Thomas S. Neuberger ("Neuberger") is a Delaware attorney, a citizen of the

United States and a resident of New Castle County, Delaware.

4.  At all times relevant to this lawsuit and until January 2005, defendant Thomas P.

Gordon ("Gordon") was the County Executive of defendant New Castle County ("NCC").  He is

sued individually.

5.  At all times relevant to this lawsuit and until January 2005, defendant Sherry Freebery

("Freebery") was the Chief Administrative Officer of NCC.  She is sued individually.

6.  Defendant Christopher A. Coons is presently the County Executive of defendant NCC.

He is sued only in his official capacity for injunctive relief and attorneys fees.

7.  Defendant David W. Singleton is presently the Chief Administrative Officer of NCC.

He is sued only in his official capacity for injunctive relief and attorneys fees.

8.  Defendant New Castle County is a municipal corporation organized under the laws of

the State of Delaware.

### III. **FACTS GIVING RISE TO THE ACTION**

#### A. **Plaintiff's Background.**

9.   Neuberger has practiced law in Delaware and nationally for more than 31 years.   He received his J.D. degree in 1974 from Georgetown University Law Center.   He was an editor of the *Georgetown Law Journal* and an associate editor of the *American Criminal Law Review*.   He has a Master's Degree in Political Science with honors which was granted in 1973 by the University of Delaware.   He also was awarded a graduate school teaching assistantship and a National Science Foundation traineeship.   He received his B.A. degree in Political Science from St. Joseph's University in Philadelphia, Pennsylvania in 1969 where he graduated *magna cum laude*.

10.   From June 1972 through April 1974, he served as a law clerk to the Honorable John H. Pratt, Judge of the U.S. District Court for the District of Columbia.   He is a member of the following bars: Delaware Supreme Court, U.S. District Court for the District of Delaware, U.S. Supreme Court, and the U.S. Court of Appeals for the Third, Fourth, Fifth, Sixth, Seventh, Ninth and D.C. Circuits.   He is a member of the Delaware State Bar Association and the National Employment Lawyers Association.   ("NELA").

11.   Since the mid-1970's he has lectured on topics such as federal practice and procedure, the First Amendment to the United States Constitution, the Civil Rights Acts, and recent case developments at many national continuing legal education conferences.

12.   He also served as a national vice president of the Christian Legal Society from 1978 to 1981.   From 1982 to 1987 he served as a board member and general counsel for The Rutherford Institute ("TRI"), an international civil liberties organization based in Charlottesville, Virginia.   He is currently a board member of TRI.   Presently, he also serves as a Board member

of the Philadelphia, Pennsylvania chapter of NELA, which has a nationwide membership.

13.  He has authored numerous articles on legal subjects.

14.  He is a partner in and the founder of The Neuberger Firm in Wilmington, Delaware and has a successful practice in constitutional law, employment discrimination, torts and other civil litigation.  Until December 2003, he was a solo practitioner.  Prior to entering solo practice in 1981, he was an associate and then a partner in a medium sized Wilmington, Delaware, law firm.

15.  Neuberger enjoys a reputation as being a dedicated civil rights attorney who represents the 'little guy.'  He specializes in helping the small and in need stand up to the powerful and corrupt.

16.  Neuberger enjoys an excellent reputation in the Delaware legal community.  For example, former Delaware Supreme Court Justice William T. Quillen has been quoted in the press as stating "He's a seasoned lawyer and he behaves like one.  He's well prepared and he's respectful to the court.  Unlike some 'cause' lawyers, he's professional and behaves accordingly."  Similarly, on January 31, 2005, the Chief Judge of the United States Court of Appeals for the Third Circuit appointed him to a three year term on the 15 member Lawyers Advisory Committee of the Judicial Council of the Third Circuit.

17.  He was selected by his peers in the Delaware Bar as one of its top 70 attorneys as reported in the Delaware Today magazine in October 1996; as one of its 100 top attorneys as reported in November 1999; as one of the top 175 attorneys as reported in October 2001, and as one of its top 75 power attorneys in November, 2004.  He also was listed as one of Delaware's leading business lawyers in the area of employment and labor law in the 2003-2004 edition of Chambers USA America's Leading Business Lawyers (2003), at 95, which reports that

opponents "concede him to be an 'able and persuasive adversary' with a string of notable victories to his name."

**B. Plaintiff's Protected First Amendment Association, Speech and Petitioning.**

    **1. Filing of Numerous Lawsuits Challenging Government Corruption.**

18. Over the last several years, Neuberger has associated with numerous police officers and other employees of New Castle County government and has taken these individuals on as clients. On behalf of many of these clients, he then filed lawsuits against defendants Gordon, Freebery and New Castle County, challenging Gordon and Freebery's corruption and illegal actions while holding high government office.

19. Neuberger has filed and prosecuted the following lawsuits against defendants:

    Downs v. Gordon, Freebery and New Castle County, C.A. No.99-210-MMS (D.Del.) (First Amendment free speech retaliation lawsuit on behalf of a County Police Officer who was the President of the Police Officers' Union)

    Reyes and Hernandez v. Freebery, Cunningham and New Castle County, C.A. No.02-1283-KAJ (D.Del.) (Title VII, § 1981, Fourteenth Amendment race and national origin discrimination and First Amendment speech and petition clause retaliation lawsuit on behalf of two Hispanic County Police Officers)

    Maloney and Rendina v. Gordon, Freebery and New Castle County, C.A. No.03-999-KAJ (D.Del.) (First Amendment free speech and petition clause retaliation lawsuit on behalf of two former high ranking administrative aids to Gordon and Freebery who (1) reported defendants' criminal activity in county government, (2) went to the FBI, IRS and U.S. Attorney, (3) wore the wire for the FBI and U.S. Attorney, and (4) testified truthfully before the criminal grand jury investigating defendants' corruption of county government)

    Riddell v. Gordon, Freebery, Cunningham, McAllister and New Castle County, C.A. No. 04-1201-KAJ (D.Del.) (First Amendment association, speech and petition clause retaliation lawsuit on behalf of a County Police Officer and union official)

    Tobin v. Gordon, Freebery, Cunningham, McAllister and New Castle County, C.A. No. 04-1211-KAJ (D.Del.) (First Amendment speech and petition clause retaliation lawsuit on behalf of a County Police Officer)

<u>Jamison v. Gordon, Freebery, Cunningham, McAllister and New Castle County</u>, C.A.No. 04-1568 -KAJ (D.Del.) (First Amendment speech retaliation and age discrimination lawsuit on behalf of a County Police Officer)

20.   These lawsuits were filed to achieve the lawful objective of equality of treatment for all by County government and constitute a form of political expression and petition of the government for redress of grievances.

21.   Indeed, under the conditions of County government which existed at the time of the filing of these lawsuits - where the powerful Executive Branch had been corrupted and where this corrupted Executive controlled a majority of the Legislative Branch - litigation was the sole practicable avenue open to these individuals to petition for a redress of grievances.  These clients could not obtain relief from the corrupt Executive and Legislative branches.

22.   Neuberger's vigorous advocacy, association, speech and petition on behalf of these clients angered defendants.  Defendants were enraged by Neuberger's representation of these many clients and by the fact that, for example, he filed lawsuits on behalf of his clients against defendants and their handpicked and corrupt police chiefs.

23.   In the same way, the discovery that occurred during these many lawsuits further revealed abundant evidence of defendants' illegal actions while leading the state's largest county. These illegal actions included violations of the U.S. Constitution, and various civil rights and criminal laws.

24.   Defendants were angered and humiliated that their numerous illegal actions were exposed to the bright light of public scrutiny for all the world to see.  Defendants had vigorously sought to hide their illegal actions from the public and electorate which might otherwise have held them accountable.  The filing and prosecution of these numerous lawsuits put a halt to many

-6-

of defendants' plans.

25.  As a direct and proximate result of the filing and prosecution of these lawsuits against them, defendants carry a personal vendetta against Neuberger.  Defendants have told family, friends, political mentors, employees and others that they will do everything in their power to inflict injury on and destroy Neuberger.  Defendants have sought to inflict injury on and destroy Neuberger at every opportunity.

### 2.  Speech to the Media and the Public Challenging Government Corruption and Illegality.

26.  Additionally, on numerous occasions, Neuberger actively and publicly spoke out to members of the news media and challenged numerous instances of corruption, fraud, wrongdoing, illegality and breach of the public trust by defendants while holding public office.

27.  By speaking to the media, Neuberger sought to inform and sound the alarm to the general public and electorate about the numerous instances of corruption, fraud, wrongdoing, illegality and breach of the public trust by defendants while holding high public office.

28.  Defendants were enraged by Neuberger's speech to the news media, the general public and the electorate.  They were angered and humiliated that their numerous illegal actions were exposed to the bright light of public scrutiny for all the world to see.  Defendants had vigorously sought to hide their illegal actions from the public which might otherwise have held them accountable.  But Neuberger's speech to the news media exposed many of defendants' illegal plans.

29.  As a direct and proximate result of his speech to the news media, defendants carry a personal vendetta against Neuberger.  Defendants have told family, friends, political mentors, employees and others that they will do everything in their power to inflict injury on and destroy

Neuberger.  Defendants have sought to inflict injury on and destroy Neuberger at every opportunity.

### 3.  General Allegations.

30.  At all times plaintiff associated with clients, spoke out on issues of public concern, petitioned the government for redress of grievances under the First Amendment, sought to bring to light actual or potential wrongdoing or breach of the public trust by high public officials and also sought to bring to light defendants' illegal actions which violated the U.S. Constitution and other laws.

31.  By its content, form and context, at all times plaintiff spoke out about matters of public concern.

32.  All of plaintiff's First Amendment protected activities were on matters of public concern to New Castle County government, the General Assembly, the Governor of Delaware, the news media, voters and the public at large.  His First Amendment protected activities related to matters of political, social and other concern to the community.

33.  Plaintiff was acting in good faith and with honest motive at all times when he exercised his First Amendment protected rights.

### C.  Defendants' Retaliation Against Plaintiff.

### 1.  The Defamatory Newspaper Attack Ads.

34.  As part of a calculated effort to retaliate against and injure Neuberger, defendants took out attack ads in numerous local newspapers.  These newspapers included: the January 14, 2004 edition of the Mill Creek Community News; the January 15, 2004 edition of the Middletown Transcript; and the January 16, 2004 edition of the Brandywine Community News.  Upon information and belief, the attack ads also ran in the Greenville Community News that

same week.

35.   In these retaliatory attack ads, defendants repeatedly accused Neuberger of violating federal court judicial orders, unethical conduct and other wrongdoing.  These retaliatory attack ads repeatedly accused Neuberger of sanctionable misconduct.

36.   At all times, defendants knew that their allegations were false.

37.   Defendants published their false allegations despite actual knowledge of their actual falsity.

38.   Defendants willfully blinded themselves to the falsity of their statements.

39.   These attack ads were intended to intimidate, prevent and deter Neuberger from engaging in the First Amendment protected activity discussed above and to punish him for this same activity.

40.   The last line of each newspaper attack ad stated -"Official Release from Office of County Executive.  Space paid for by Thomas P. Gordon and Sherry L. Freebery."  The text of the attack ads also stated that they were being published on behalf of New Castle County. Freebery also admitted in the February 5, 2004 edition of the Hockessin Community News and in other newspapers that the attack ads were "prepared on county time using county equipment by county employees."

41.   Newspaper stories about these false and scandalous allegations were subsequently republished in: the January 29, 2004 edition of the News Journal; the January 30, 2004 edition of the Brandywine Community News; the February 3, 2004 edition of the Greenville Community News; the February 5, 2004 edition of the Hockessin Community News; and the February 10, 2004 edition of the Greenville Community News.

**2.  The Release of Neuberger's Private and Confidential Medical Information.**

42.   Due to several judicial Orders issued by the U.S. District Court for the District of Delaware on January 15, 2004 in the case of <u>Reyes, et al. v. Freebery, et al.</u>, C.A.No. 02-1283-KAJ (D.Del.), plaintiff is barred from discussing that matter in greater detail.  But for these judicial Orders, a great deal more factual detail would be added on this issue.

43.   During the course of a proceeding on January 15, 2004 in the case of <u>Reyes, et al. v. Freebery, et al.</u>, C.A.No. 02-1283-KAJ (D.Del.), defendants became aware of certain confidential and hitherto private medical information about Neuberger.  Defendants were immediately barred by the U.S. District Court from disclosing, discussing or circulating this information in any way, shape or form.

44.   But upon learning of this private and confidential medial information, defendants widely disclosed and disseminated it throughout the State of Delaware.

45.   This private and confidential medical information was not disclosed or disseminated by U.S. District Court Judge Kent A. Jordan, the court reporter or the attorneys who attended the court proceeding in question.  Instead, it was widely disclosed, disseminated and circulated by defendants.

46.   For example, defendants advised members of the Delaware news media that Neuberger was dying of a brain tumor and that this brain tumor was causing him to act erratically.

47.   Neuberger subsequently received humiliating inquiries from members of the Delaware news media about this issue.  At least one such reporter told Neuberger that defendants had advised him of the information contained in the previous paragraph.  However, Neuberger was barred from responding by Court Order, the same Court Order defendants chose to ignore and instead violated.

48. Additionally, defendants also discussed and circulated Neuberger's private and confidential medical information throughout New Castle County government and with numerous other individuals.

49. For example, defendants regularly discussed Neuberger's private and confidential health information at Manager's Meetings of New Castle County government.

50. Defendants circulated plaintiff's private and confidential medical information far beyond the limits of any group who had a legitimate need to know or who were permitted to know by Court Order.

51. The release of plaintiff's private and confidential medical information was intended to intimidate, prevent and deter Neuberger from engaging in the First Amendment protected activity discussed above and to punish him for this same activity.

### D. Publication and Circulation.

52. As discussed above, defendants' false, reckless and malicious accusations resulted in numerous newspaper ads and articles being published in the News Journal, the newspaper of general circulation in the State of Delaware, and in the various Community News papers. In these articles, defendants' false, reckless and malicious accusations were published to an audience of hundreds of thousands of readers.

### E. Defendants' Accusations are Absolutely False and Injurious.

53. Defendants' accusations contained in the newspaper attack ads are absolutely false. Plaintiff is and has always been a highly respected and ethical attorney who follows both the letter and the spirit of the law and all judicial orders. Neuberger does not engage in sanctionable conduct or other wrongdoing.

54. Defendants knew or recklessly disregarded the knowledge that their outrageous accusations were false, would cause plaintiff severe emotional distress and also severely injure plaintiff's reputation.

55. Plaintiff was hurt, wounded, distressed, shocked, anguished, stunned, appalled, floored, taken aback, offended, traumatized, scandalized and otherwise outraged by these false accusations against him.

56. The accusations that plaintiff had violated federal court judicial orders, engaged in sanctionable misconduct, unethical conduct and other wrongdoing have injured and tend to injure plaintiff's reputation in the popular sense; diminish the esteem, respect, goodwill or confidence in which plaintiff was previously held as well as excite adverse, derogatory or unpleasant feelings or opinions against him.

57. In the same way, these false accusations have harmed plaintiff's reputation and lowered him in the estimation of the community or deterred third persons from associating or dealing with him.

58. Plaintiff has been isolated from society as a result of defendants' false accusations. Plaintiff may never know the extent of his lost opportunities to relate and associate with others because he could be avoided without knowing the reason and without having a chance to rebut the false accusations against him.

59. These false accusations have exposed plaintiff to public contempt or ridicule in the minds of right thinking persons or among a considerable and respectable class of people.

60. Any third party would understand accusations of violation of federal court judicial orders, sanctionable misconduct, unethical conduct and other wrongdoing to be injurious to the reputation of the accused.

**F.  The Private Nature of Plaintiff's Health Information.**

61.  Plaintiff has a long established constitutional and common law right not to have intimate facts of his life disclosed without his consent.  This is a venerable right whose constitutional and common law significance the courts have repeatedly recognized.

62.  It was within plaintiff's reasonable expectation of confidentiality that his private medical information would not be disclosed to the media and the general public.

63.  In light of the very nature of the confidential court proceedings through which plaintiff's confidential and private medical information became known, plaintiff had a reasonable expectation of confidentiality that his private medical information would not be disclosed to the media and the general public.

64.  Medical records and related medical information are well within the ambit of materials entitled to privacy protection.

65.  There are no public health or like public concerns that could even hope to justify access to plaintiff's private medical information that plaintiff wished to remain confidential.

66.  The type of medical information disclosed about plaintiff has historically been recognized as private, sensitive and confidential.

67.  There was potential for great harm to plaintiff by the nonconsensual disclosure of his private medical information by defendants.

68.  Plaintiff suffered great harm by the nonconsensual disclosure of his private medical information by defendants.

69.  The safeguards put in place to prevent unauthorized disclosure of plaintiff's private medical information were abysmal.

70.  There was no degree of need for access (be it public or private) to plaintiff's private

medical information.

71.  There is no express statutory mandate, articulated public policy or other recognizable public interest militating toward access to plaintiff's private medical information.

72.  Conversely, statutory mandates, public policy and other recognizable public interests dictate that access to plaintiff's private medical information be forbidden.

73.  Plaintiff has weighty privacy interests in the confidentiality of his private medical information because of the stigma, potential for harassment and the risk of much harm from the non-consensual dissemination of this information.

74.  Plaintiff was hurt, wounded, distressed, shocked, anguished, stunned, appalled, floored, taken aback, offended, traumatized, scandalized and otherwise outraged by defendants' release of his private and confidential medical information.

### G.  Plaintiff's First Amendment Rights Have Been Chilled.

75.  As discussed above, plaintiff engaged in expressive activity.  For example, plaintiff sought to root out the intimidation, corruption and illegality that were the hallmark of defendants' reign over New Castle County government and its employees.

76.  Defendants' retaliation has significantly affected plaintiff's ability to advocate his viewpoint.

77.  Plaintiff's ability to engage in expressive activity has been chilled by defendants retaliation against him.

78.  Additionally, plaintiff's clients' rights to engage in expressive First Amendment activity have been chilled by defendants' actions.

79.  Defendants are unable to assert any legally cognizable interest in the balancing that could even hope to outweigh these First Amendment rights.

## IV.  CAUSAL CONNECTION

80.  The totality of retaliatory adverse action taken by defendants against plaintiff are sufficient to deter a person of ordinary firmness from exercising his First Amendment rights to freedom of association, speech and to petition the government for redress of grievances.

81.  A reasonable person of ordinary firmness would be deterred from exercising his First Amendments rights to freedom of association, free speech and to petition the government for redress of grievances if he was falsely accused and/or if his private medical information was released to the media and the public.

82.  There is a causal link between First Amendment protected activity on matters of public concern and the adverse actions discussed above.  This is demonstrated by:

(a)    Personal knowledge and awareness of protected activity - defendants were all named and served in the numerous lawsuits filed by plaintiff. Similarly, defendants read about plaintiff's public criticisms of their corrupt regime in the newspapers and heard his statements on the radio. Relatedly, when the Maloney suit was filed, defendants sent numerous Executive Assistants in their employ to crash plaintiff's press conference and to observe and report back on its happenings.  For example, in addition to actively seeking to disrupt plaintiff's press conference, one such Executive Assistant held a live cell phone up in the air throughout plaintiff's speech to the media - presumably transmitting back to defendants;

(b)    The temporal proximity of events - within days of learning of plaintiff's private and confidential medical information, defendants leaked it to employees, the news media and the general public;

(c)    Hostility and antagonism following protected activity - defendants regularly discussed with their employees and others their hate and loathing of plaintiff because he had filed numerous lawsuits against them;

(d)    Falsehoods and other pretextual reasons - the statements published by defendants in the newspaper attack ads are untrue;

(e)    Violation of federal judicial Orders - defendants' retaliatory actions violated several judicial Orders in the Reyes case;

     (f)     Disparate treatment - defendants do not regularly release the private and confidential information of individuals to the news media, employees or the general public;

     (g)     The big picture - the evidence as a whole demonstrates causation.

83. First Amendment protected activity was a substantial or motivating factor in the adverse action taken against plaintiff. The natural probative force of the evidence demonstrates causation.

84. The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation, plaintiff would have had adverse action taken against him anyway.

85. Any non-retaliatory reasons cited by the defendants to defeat causality are a pretext.

86. As a direct and proximate result of the actions of the defendants as detailed herein, plaintiff has suffered and is suffering from humiliation, injury to his reputation and garden variety emotional distress. Plaintiff does not seek economic damages.

## V.   <u>ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT</u>

87. The individual defendants' actions violated clearly established federal constitutional rights of which any reasonable official would have known, including more than three decades of Supreme Court and Third Circuit case law prohibiting retaliation against citizens for protected speech.

88. At all times material hereto the individual defendants participated in, authorized, and sanctioned the federal constitutional and state law deprivations described above which illegally retaliated against plaintiff.

89. At all times material hereto the individual defendants and their agents were acting under color of law. The federal constitutional and state common law deprivations described

herein are fairly attributable to the State.

90.  The actions of the defendants and their agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional and state law rights and because of the exercise of those rights.

91.  The defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal constitutional and state law rights.

92.  Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.

93.  Their actions were wanton and malicious or taken with reckless indifference to federal constitutional and state law rights.

94.  The exercise of rights under the U.S. Constitution made a difference in all actions adverse to plaintiff.

95.  The exercise of these rights was a motivating, substantial or determinative factor in all actions adverse to plaintiff.

96.  The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

97.  The individual defendants' actions were willful, reckless and oppressive.

98.  The defendants' actions were motivated by bias, bad faith, and improper motive.

99.  The defendants' actions constitute an abuse of governmental power.

100.  The defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

101.  The defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

102.  The actions of the defendants were taken pursuant to County policies, customs and/or practices and were authorized, sanctioned, implemented, permitted, and ratified by officials functioning at a policy making level.

103.  By the policy, custom, and/or practice of officials functioning at a policy making level, the defendants have retaliated against plaintiff.  That policy, custom and/or practice caused a deprivation of constitutional rights.  Additionally, the defendants must have known, or reasonably should have realized, from the nature of their conduct that their policy, custom and/or practice was causing or was likely to cause violations of constitutional and state law rights.

**COUNT I - (Fourteenth Amendment Right to Privacy)**

104.  Plaintiff repeats and realleges paragraphs 1-103 set out above and incorporates them by reference.

105.  Plaintiff's constitutional right to the privacy of his private medical information has been denied under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT II - (First Amendment Freedom of Association Retaliation).**

106.  Plaintiff repeats and realleges paragraphs 1-105 set out above and incorporates them by reference.

107.   The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for his First Amendment protected associations.  There is a temporal and causal relationship between plaintiff's aforementioned protected activity and adverse action.  First Amendment protected activity was a substantial or motivating factor in the adverse action.  The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had grounds to adversely treat plaintiff.

108.  Plaintiff's constitutional right to freedom of association has been denied under the

-18-

First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT III - (First Amendment Free Speech Retaliation).

109.  Plaintiff repeats and realleges paragraphs 1-108 set out above and incorporates them by reference.

110.  The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for his First Amendment protected freedom of speech.  There is a temporal and causal relationship between plaintiff's aforementioned protected activity and adverse action.  First Amendment protected activity was a substantial or motivating factor in the adverse action.  The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had grounds to adversely treat plaintiff.

111.  Plaintiff's constitutional right to freedom of speech has been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT IV - (First Amendment Petition Clause Retaliation).

112.  Plaintiff repeats and realleges paragraphs 1-111 set out above and incorporates them by reference.

113.  The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for his First Amendment protected petitioning of the government for redress of grievances.  There is a temporal and causal relationship between plaintiff's aforementioned protected activity and adverse action.  First Amendment protected activity was a substantial or motivating factor in the adverse action.  The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had grounds to adversely treat plaintiff.

114.  Plaintiff's constitutional right to petition the government for redress of grievances

has been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

## COUNT V - (Defamation)

115.  Plaintiff repeats and realleges paragraphs 1-114 set out above and incorporates them by reference.

116.   Plaintiff's right to live his life free of defamatory falsehoods has been denied under the common law of the State of Delaware.

## COUNT VI - (Invasion of Privacy)

117.  Plaintiff repeats and realleges paragraphs 1-116  set out above and incorporates them by reference.

### A.  Public Disclosure of Private Facts

118.  First, by releasing plaintiff's private and confidential medical information about a brain tumor to the media and general public, defendants publicly published and disclosed private matters relating to plaintiff in a manner which violated ordinary decencies.

119.  In doing so, defendants publicized plaintiff's private and confidential medical condition in a manner that would be highly offensive to a reasonable person.

120.  Defendants' actions would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

121.  The private and confidential medical problems an individual is facing are not a matter of legitimate concern to the public.

122.  The private health condition of an individual is not a matter generally known to the community at large.

123.  The private health condition of an individual is not a matter which should be publically disclosed.

124.  Governments, companies, businesses and other organizations do not publically comment on private health conditions of individuals or citizens because such private matters are not of legitimate concern to the public.

125.  Plaintiff had a reasonable expectation that his right to privacy would not be invaded by defendants based on several judicial Orders issued by the U.S. District Court for the District of Delaware which may not be listed here pursuant to the requirements of these Court Orders. But for these judicial Orders, a great deal more factual detail would be added to this issue.

## B.  Intrusion on Seclusion

126.  Second, by releasing this private and confidential medical information to the media and otherwise drawing unwanted public attention to plaintiff's private health situation, defendants unreasonably intruded upon plaintiff's physical solitude, seclusion and other private affairs or concerns.

127.  Upon learning of his medical condition, plaintiff did not seek out media attention. Rather, plaintiff went into a personal seclusion around which he sought to envelop himself and his private affairs.  Defendants violated and intruded on that seclusion.

128.  A reasonable person would find defendants' actions of intruding upon plaintiff's solitude and seclusion to be highly offensive.

129.  The degree of the intrusion on plaintiff's right to privacy was immeasurable.

130.  The context, conduct and circumstances discussed at length above do not justify releasing plaintiff's private and confidential medical and health information to the media and the general public.

131.  The motives of defendants were malicious.  Defendants sought to intimidate, threaten, harass and deter plaintiff.

132.  Plaintiff had a reasonable expectation that his privacy would not be invaded by defendants because of the aforementioned federal judicial Orders.

133.  The totality of the circumstances surrounding plaintiff's private and confidential medical and health condition do not justify defendants' intrusion upon plaintiff's physical solitude, seclusion and other private affairs and concerns.

## C.  False Light Invasion of Privacy

134.  Defendants sought out media and public sources and publicized plaintiff's private and confidential medical condition in a manner which placed plaintiff before the public in a false light.

135.  Additionally, defendants also sought out media and public sources and publicized the matters addressed by the newspaper attack ads in a manner which placed plaintiff before the public in a false light.

136.  Similar publicity concerning a reasonable person would be highly offensive to that reasonable person under similar circumstances.

137.  Defendants knew the manner in which they conveyed the information about plaintiff was false, or they recklessly disregarded whether it was false.

138.   Defendants' actions would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

139.  The context, conduct and circumstances discussed at length above do not justify the public statements made about plaintiff.

140.  The motives of defendants were malicious.  Defendants sought to intimidate, threaten, harass and deter plaintiff.

141.  Plaintiff's right to live his life free from invasion of his privacy has been denied

under the common law of the State of Delaware.

**Wherefore**, plaintiff prays that the Court:

A.    Enter judgment against the defendants.

B.    Enter a declaratory judgment declaring the acts of the defendants Gordon, Freebery and NCC to be a violation of plaintiff's constitutional and common law rights.

C.    Enter a judgment against defendants Gordon, Freebery and NCC, both jointly and severally, for compensatory damages, including garden variety emotional distress, humiliation, embarrassment, and injury to reputation.

D.    Enter a judgment against the defendants Gordon and Freebery, both jointly and severally, for punitive damages.

E.    Award plaintiff costs, interest and attorneys' fees for this suit, and pre and post judgment interest.

F.    Issue a mandatory injunction requiring all the defendants to notify everyone who learned of defendants' treatment of plaintiff that their conduct was illegal.

G.    Issue a permanent injunction, enjoining all the defendants from retaliating against plaintiff now or in the future.

H.    Issue a reparative injunction directing that defendants Gordon, Freebery, NCC, Coons and Singleton take out full page advertisements in the News Journal and the Community News family of papers, apologizing for their illegal actions which violated plaintiff's constitutional and common law rights.

I.    Issue a reparative injunction directing that each defendant send plaintiff an individual signed letter, personally apologizing to him for their illegal violations of his constitutional and common law rights.

J.    Require such other and further relief as the Court deems just and proper under the circumstances.

OF COUNSEL

**THE RUTHERFORD INSTITUTE**
**JOHN W. WHITEHEAD, ESQ.**
**DOUGLAS R. McKUSICK, ESQ.**
P.O. Box 7482
Charlottesville, VA 22906
(434) 978-3888
JohnW@Rutherford.org
DouglasM@Rutherford.org

Dated:   December 29, 2005

**THE NEUBERGER FIRM, P. A.**

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
SJN@NeubergerLaw.com

Attorney for Plaintiff