IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER,        )
                               )
                 Plaintiff,   )   C.A. No. 05-916-TNO
                               )
       v.                     )
                               )
THOMAS P. GORDON, individually;   )
SHERRY FREEBERY, individually;    )
CHRISTOPHER A. COONS, in his official )
capacity as County Executive; DAVID W. )
SINGLETON, in his official capacity as  )
Chief Administrative Officer; and NEW  )
CASTLE COUNTY,             )
                               )
            Defendants.  )

**DEFENDANTS COONS, SINGLETON AND NEW CASTLE
COUNTY'S OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Barry W. Willoughby, Esquire (No. 1016)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6666; 5008
Facsimile: (302) 576-3345; 3476
E-mail: bwilloughby; mdibianca@ycst.com
*Attorneys for Defendants New Castle County and
Christopher A. Coons and David W. Singleton, in their
official capacities*

Dated:  March 24, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... III

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

SUMMARY OF THE ARGUMENT ............................................................................ 3

STATEMENT OF FACTS ....................................................................................... 4

    A.    The Parties ....................................................................................... 4

    B.    The Context of this Litigation.............................................................. 4

ARGUMENT ....................................................................................................... 8

  I.    TO AVOID DISMISSAL, PLAINTIFF MUST SHOW MORE THAN A
      SPECULATIVE BASIS FOR RELIEF ................................................... 8

    A.    The Standard for Dismissal.................................................................. 8

    B.    The Incumbent Defendants, Named Only In Their Official
        Capacities, Are Not Subject to Liability.............................................. 8

  II.   PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY FACTS THAT
      COULD SUPPORT A CLAIM FOR FIRST AMENDMENT
      RETALIATION................................................................................ 10

    A.    Plaintiff Has Failed to Allege that He Engaged in Any Conduct
        Protected by the First Amendment...................................................... 11

        1.    Plaintiff Did Not Invoke the Petition Clause When He Filed
            Suits on Behalf of His Clients ..................................................... 12

        2.    Plaintiff Did Not Invoke the Speech or Association Clauses
            When He Served as Legal Counsel to His Clients ......................... 12

    B.    Defendants Had the Constitutional Right to Respond to the Critical
        Comments of a Zealot ...................................................................... 14

    C.    Defendants' Conduct Was Insufficiently Adverse to Deter Plaintiff
        from Exercising His First Amendment Rights...................................... 16

        1.    Defendants' Actions Would Not Have Chilled the Speech of an
            Ordinary Person of Reasonable Firmness or of a Reasonable
            Plaintiff's Civil Rights Lawyer ..................................................... 17

        2.    Defendants' Conduct Has Not Chilled Plaintiff's Speech................ 21

  III.  PLAINTIFF'S COMPLAINT FAILS TO STATE A COGNIZABLE
      CLAIM UNDER THE FOURTEENTH AMENDMENT ............................. 24

A.    Plaintiff's Voluntary Disclosure of His Medical Condition Precludes
      His Privacy Claim ................................................................................ 25

B.    Plaintiff's Failure to Identify What Facts Were Allegedly Disclosed
      Bars Him From Proceeding ................................................................. 26

C.    Plaintiff Has Failed to Allege a Protected Privacy Interest ................... 28

IV.   THE STATE-LAW CLAIMS ASSERTED IN COUNTS V AND VI ARE
      BARRED BY THE TORT IMMUNITY STATUTE ...................................... 29

CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**

Aiello v. City of Wilmington,
   623 F.2d 845 (3d Cir. 1980)................................................................. 22

Alexander v. Town of Cheswold,
   No. 04C-09-277-WCC, 2007 Del. Super. LEXIS 183
   (Del. Super. June 27, 2007)............................................................. 28

Anderson v. Davila,
   125 F.3d 148 (3d Cir. 1997)................................................................ 9

Anderson v. Romero,
   72 F.3d 518 (7th Cir. 1995)............................................................... 27

Baar v. Jefferson County Pub. Sch.,
   No. 06-75-H, 2008 U.S. Dist. LEXIS 9992
   (W.D. Ky. Feb. 8, 2008) ................................................................. 24

Balaber-Strauss v. Town/Vill. of Harrison,
   405 F. Supp. 2d 427 (S.D.N..Y. 2005) .................................................. 20

Bart v. Telford,
   677 F.2d 622 (7th Cir. 1982)............................................................. 22

Batiste v. Lee,
   No. 04C-07-001WLC, 2004 Del. Super. LEXIS 348
   (Del. Super. Oct. 14, 2004). ............................................................ 28

Bell Atlantic v. Twombly,
   127 S. Ct. 1955 (2007).................................................................... 7

Benak v. Alliance Capital Mgmt., L.P.,
   435 F.3d 396 (3d Cir. 2006).............................................................. 5

Benkoski v. Wasilewski,
   No. 07-0197, 2007 U.S. Dist. LEXIS 66315,
   (M.D. Pa. Sept. 7, 2007) ................................................................. 9

Bond v. Floyd,
   385 U.S. 116 (1966) ................................................................. 14, 15

Boulden v. Turner,
   C.A. No. 04C-10-031-CLS, 2005 Del. Super. LEXIS 350
   (Del. Super. Oct. 12, 2005)............................................................. 28

Brennan v. Norton,
   350 F.3d 399 (3d Cir. 2003)............................................................. 16

C.N. v. Ridgewood Bd. of Educ.,
   319 F. Supp. 2d 483 (D.N.J. 2004)...................................................... 24

Carr v. Town of Dewey Beach,
    730 F. Supp. 591 (D. Del 1990) ............................................................ 28

Citizens for a Better Lawnside v. Bryant,
    No. 05-4268, 2007 U.S. Dist. LEXIS 38514,
    (D.N.J. May 24, 2007) ............................................................................ 16

Colson v. Grohman,
    174 F.3d 498 (5th Cir. 1999) ...................................................... 10, 17, 18

Curley v. Vill. of Suffern,
    268 F.3d 65 (2d Cir. 2001) ..................................................................... 20

Dale v. Town of Elsmere,
    702 A.2d.1219 (Del. 1997) ..................................................................... 28

Diana v. Oliphant,
    No. 05-2338, 2007 U.S. Dist. LEXIS 83834,
    (M.D. Pa. Nov. 13, 2007) ............................................................. 8, 9, 16

DiMeglio v. Haines,
    45 F.3d 790 (4th Cir. 1995) .................................................................... 21

Doe v. Boro of Jenkintown,
    No. 95-0262, 1995 U.S. Dist. LEXIS 19226,
    (E.D. Pa. Dec. 27, 1995) ........................................................................ 18

Doe v. Southeastern Penn. Transp. Auth. (SEPTA),
    72 F.3d 1133 (3d Cir. 1995) ................................................................... 24

Field v. County of La Paz,
    No. 99-15524, 2000 U.S. App. LEXIS 12715 (9th Cir. June 2, 2000) ................... 18

Gallis v. Bott,
    No. 05-551, 2006 U.S. Dist. LEXIS 72091, (M.D. Pa. Oct. 3, 2006) ................ 9, 14

Gentile v. State Bar of Nev.,
    501 U.S. 1030 (1991) ............................................................................. 19

Gini v. Las Vegas Metro. Police Dep't,
    40 F.3d 1041 (9th Cir. 1994) .................................................................. 18

Grimm v. Borough of Norristown,
    226 F. Supp. 2d 606 (E.D. Pa. 2002) ........................................................ 8

Hammerhead Enterps., Inc. v. Brezenoff, 551 F. Supp. 1360 (S.D.N.Y. 1982),
    cert. denied, 464 U.S. 892 (1983) .......................................... 9, 14, 15, 17

Hanig v. Yorktown Central Sch. Dist.,
    384 F. Supp. 2d 710 (S.D.N.Y. 2005) ........................................................ 7

Heaney v. New Castle County,
    672 A. 2d 11 (Del. 1995) ........................................................................ 28

Hinton v. Shaw Pittman Pott & Trowbridge, 257 F. Supp. 2d 96 (D.D.C. 2003) ......... 5

In re Burlington Coat Factory Sec. Litig.,
   114 F.3d 1410 (3d Cir. 1997).................................................................... 6

In re Merck Co., Inc.,
   (D.N.J. Jan. 20, 2006) ........................................................................... 5

Kougher v. Burd,
   No. 04-2209, 2007 U.S. Dist. LEXIS 8416, (M.D. Pa. Jan. 25, 2007) ............................ 16, 22

Ky. v. Graham,
   473 U.S. 159 (1988) ............................................................................. 8

Lauren W. v. DeFlaminis,
   480 F.3d 259 (3d Cir. 2007)..................................................................... 16

Lewter v. Kannensohn,
   159 Fed. Appx. 641 (6th Cir. 2005) ......................................................... 12, 13

Mann v. Brenner,
   No. 06-1715, 2007 U.S. Dist. LEXIS 18178,
   (M.D. Pa. Mar. 13, 2007)...................................................................... 21

Maule v. Susquehanna Reg'l Police,
   No. 04-05933, 2007 U.S. Dist. LEXIS 73065,
   (E.D. Pa. Sept. 27, 2007) ....................................................................... 5

McKee v. Hart,
   463 F.3d 165 (3d Cir. 2006)................................................................. 10, 16

McLaughlin v. Watson,
   271 F.3d 566 (3d Cir. 2001).................................................................... 17

Mezibov v. Allen,
   411 F.3d 712 (6th Cir. 2005).........................................................11, 12, 14, 19

Miner v. Brackney,
   719 F.2d 954 (8th Cir. 1983),
   cert. denied, 467 U.S. 1259 (1984)............................................................. 18

N.Y. Times Co. v. Sullivan,
   376 U.S. 254 (1964) ........................................................................... 17

NAACP v. Clairborne Hardware Co.,
   458 U.S. 886 (1980) ........................................................................... 17

Nat'l Fed'n of Fed. Employees v. Greenberg, 983 F.2d 286 (D.C. Cir. 1993) .......................... 24

Navarro v. Coons,
   No. 05-565, 2007 U.S. Dist. LEXIS  66280, (D. Del. Sept. 7,  2007) ................................ 8

Oshiver v. Levin, Fishbein, Sedran & Berman,
   38 F.3d 1380 (3d Cir. 1995)..................................................................... 4

Patton v. County of Kings,
   857 F.2d 379 (9th Cir. 1988),
   cert. denied, 516 U.S. 1052 (1996)............................................................. 18

Paulson v. Carter,
  No. 04-1501-KI, 2006 U.S. Dist. LEXIS 10040,
  (D. Or. Feb. 16, 2006),
  aff'd, 230 F. Appx. 645 (9th Cir. 2004)...................................................................... 18

Pekin v. County of San Benito,
  No. 05-05402-HRI, 2006 U.S. Dist. LEXIS 63645,
  (N.D. Cal. Aug. 25, 2006)............................................................................................ 11

Pension Benefit Guar. Corp. v. White Consol. Indus.,
  998 F.2d 1192 (3d Cir. 1993).................................................................................... 4, 5

Penthouse Int'l, Ltd. v. Meese,
  939 F.2d 1011 (D.D.C. 1991) ...........................................................................15, 17, 18

Phillips v. County of Allegheny,
  No. 06-2869, 2008 U.S. App. LEXIS 2513, (3d Cir. Feb. 5, 2008).......................... 7

Pisciotti v. County of Wayne,
  76 F. Supp. 2d 307 (W.D.N.Y. 1999)......................................................................... 27

Powell v. Shriver,
  175 F.3d 107 (2d Cir. 1999)........................................................................................ 27

Rappa v. Hollins,
  991 F. Supp. 367 (D. Del. 1997) ............................................................................ 9, 18

Reyes v. Freebery,
  141 Fed. Appx. 49 (3d Cir. 2005) ........................................................................... 4, 5

Reyes v. Freebery,
  2005 U.S. Dist. LEXIS 36795,
  (D. Del. 2005) ................................................................................................................ 5

Ringer v. Smith,
  No. 93-05-015, 1994 Del. Super. LEXIS 656,
  (Del. Super. Nov. 23, 1994) ................................................................................... 8, 28

S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.,
  181 F.3d 410 (3d Cir. 1999)...................................................................................... 5, 6

San Filippo v. Bongiovanni,
  30 F.3d at 439-40, & 442-43 (3d Cir. 1994),
  cert. denied, 513 U.S. 1082 (1995)............................................................................. 11

Singer v. Fulton County Sheriff,
  63 F.3d 110 (2d Cir. 1995),
  cert. denied, 517 U.S. 1189 (1996)............................................................................. 21

Smith v. Sch. Dist. of Phila.,
  112 F. Supp. 2d 417 (E.D. Pa. 2000).......................................................................... 13

Suarez Corp. Indus. v. McGraw,
  202 F.2d 676 (4th Cir. 2000).............................................................................14, 17, 18, 21

Suppan v. Dadonna,
   203 F.3d 228 (3d Cir. 2000)..........................................................................9

Terminnello v. Chicago,
   337 U.S. 1 (1949) ......................................................................................17

Thoma v. Hickel,
   947 P.2d 816 (Alaska 1997)......................................................................14

Thomas v. Farley,
   31 F.3d 557 (7th Cir. 1994).......................................................................25

Thomas v. Ind. Twp.,
   463 F.3d 285 (3d Cir. 2006)......................................................................16

Wilchek v. City of Wilmington,
   60 F. Supp. 2d 298 (D. Del. 1999) ............................................................28

X-Men Security, Inc. v. Pataki,
   196 F.3d 56 (2d Cir. 1999)...........................................................9, 14, 16, 17

Zieper v. Metzinger,
   392 F. Supp. 2d 516 (S.D.N.Y. 2005), aff'd, 474 F.3d 60 (2d Cir. 2007)....................16, 17, 20

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................. 7, 25

## Other Authorities

Jeffrey Brian Greenstein,
   The First Amendment v. the First Amendment: The Dilemma of Inherently Competing Rights
   in Free-Speech Based "Constitutional Torts",
   71 UMKC L. Rev. 27, 32 (2002) ............................................................... 14

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Thomas S. Neuberger, Esquire, filed this lawsuit on December 29, 2005.[1] Subsequently, two of the named defendants were criminally indicted and the matter was stayed pending resolution of the charges.[2] The Court lifted the stay with the consent of the parties, on January 4, 2008.[3] The parties agreed to a briefing schedule with the understanding that Defendants intended to move for dismissal.[4]

Plaintiff's Complaint names five defendants.[5] The Municipal Defendants include New Castle County ("NCC" or the "County"), current County Executive Christopher A. Coons and Chief Administrative Officer, ("CAO"), David W. Singleton (the "Incumbent Defendants"). The Incumbent Defendants, despite not having been in office at the time relevant to this suit are named in their official capacities.

Thomas P. Gordon and Sherry L. Freebery are named in their individual capacities (the "Individual Defendants").[6] The Individual Defendants held the offices of County Executive and CAO during all times relevant to this matter (the "Gordon Administration"). Plaintiff alleges that only the Individual Defendants had any personal involvement in the conduct at issue.

Plaintiff's Complaint consists of six Counts, including four federal constitutional claims and two state law tort claims. Count One alleges a violation of the Right to Privacy and is

---

[1] (D.I. 1).

[2] (D.I. 15) (Staying the case on June 26, 2006).

[3] (D.I. 20, 21).

[4] (D.I. 23, 24).

[5] (D.I. 1).

[6] (D.I. 1 at ¶¶ 4-5).

a right-to-privacy claim brought pursuant to the Fourteenth Amendment.[7]  Counts Two, Three, and Four allege First Amendment retaliation.[8]  Counts Five and Six assert claims of defamation and invasion of privacy under Delaware common law.[9]

The County and the Incumbent Defendants jointly filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[10]  This is the Opening Brief in Support of that Motion.  The Individual Defendants will file a separate Motion to Dismiss on the ground of qualified immunity.  They will also file an Opening Brief in Support of their Motion. That brief adopts the arguments and facts set forth herein.

---

[7] (D.I. 1 at ¶¶ 104-05).

[8] Each of the three Counts allege a different right derivative of the First Amendment, including in order, the right to Free Association (D.I. 1 at ¶¶ 106-08), the right to Free Speech (D.I. 1 at ¶¶ 109-11), and the right to Petition (D.I. 1 at ¶¶1 12-14).  Each of these claims are subject to an identical analysis in accordance with the body of law addressing claims of First Amendment retaliation.

[9] (D.I. 1 at ¶¶ 115-16; 117-41).

[10] (D.I. 26).

## SUMMARY OF THE ARGUMENT

Plaintiff's Complaint should be dismissed for failure to state a claim in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.   On the face of the pleadings, it is clear that:

1.   To avoid dismissal, plaintiff must provide more than speculative basis for relief.  Further, under settled authorities, Defendants Coons and Singleton, must be dismissed because they are named in their official capacities only, and were not even in office at the time of the events alleged in Plaintiff's complaint.

2.   Plaintiff's complaint fails to state a claim for relief under the First Amendment for several reasons.  First, he has not engaged in any constitutionally protected activity through his actions as an attorney practicing before this Court.  Neither the petition clause, nor the speech or association clauses are applicable in his role as legal counsel. Further, Defendants have a constitutional right to respond to comments that were critical of their performance.  They did not lose their First Amendment protection when elected to office.  Finally, Defendants conduct was insufficient as a matter of law to deter Plaintiff from engaging in free speech.

3.   Plaintiff's allegation that Defendants released his private medical information is without merit.  Plaintiff disclosed his medical information to his co-counsel, who revealed it in a telephone conference in the Reyes Matter.  Plaintiff's voluntary disclosure of his medical condition therefore precludes his privacy claim.

4.   Plaintiff's common law tort claims in Counts IV, V, and VI are barred by the County Municipal Claims Act.

## STATEMENT OF FACTS

### A.     The Parties

Plaintiff Thomas S. Neuberger, Esq. is a practicing member of the Delaware bar.[11] A self-proclaimed modern-day Robin Hood, Plaintiff describes himself as an advocate of "the little guy," who "knows how to play hard ball."[12]  According to Plaintiff, he is an "able and persuasive" attorney who has reigned victorious in a "string of notable" cases, many of which, he is quick to point out, were filed against the County and the Individual Defendants.[13]  Plaintiff reiterates his various accolades beginning as far back as 1972, in his 144-paragraph complaint-cum-autobiography.[14]

Defendant Gordon served as County Executive of New Castle County for two four-year terms.[15]  Defendant Freebery was Gordon's Chief Administrative Officer during both terms.[16]  The Incumbent Defendants took office following the expiration of the Gordon Administration.[17]  All of the facts in the Complaint are alleged to have occurred during the Gordon Administration, before the Incumbent Defendants took office.[18]

### B.     The Context of this Litigation

Plaintiff makes no attempt at humility.  He boasts that his professional success has, for nearly a decade, been predicated on his representation of plaintiffs who filed lawsuits

---

[11] (D.I. 1 at ¶ 3).

[12] (D.I. 1 at ¶ 15).

[13] (D.I. 1 at ¶ 17).

[14] (D.I. 1 at ¶¶ 9-17).

[15] (D.I. 1 at ¶ 4).

[16] (D.I. 1 at ¶ 5).

[17] (D.I. 1 at ¶¶ 6-7).

[18] (D.I. 1 at ¶¶ 4-5).

against the County.[19]  One of these suits, Reyes v. Freebery et al., (the "Reyes Matter"), is very

much at the center of the present litigation.[20]

Plaintiff is the attorney of record for the plaintiffs in the Reyes Matter.[21]  The

Reyes Matter is an employment discrimination claim brought by two County police officers (the

"Reyes Plaintiffs"), against the County, Defendant Freebery, and other government officials.[22]

Plaintiff represents the Reyes Plaintiffs in that lawsuit.  Due to the overlapping facts in both

cases, a brief chronology of the Reyes Matter is essential to put the issues in this case into

context.  The following facts are taken from several opinions by the Third Circuit and the

District Court during various proceedings in the Reyes Matter.[23]

- The parties in the Reyes Matter entered into a joint confidentiality agreement,
which was approved by the District Court as a Protective Order in January 2003.[24]  Discovery
commenced, including the depositions of several witnesses

- On December 17, 2003, the Reyes Plaintiffs moved for partial summary
judgment and submitted an opening brief and a two-volume, 900-page appendix.[25]  The appendix

---

[19] (D.I. 1 at ¶19).

[20] C.A. No. 02-1283 (D. Del. July 30 2004); see (D.I. 1 at VII. "Related Case(s) If Any," ¶2) ("This suit most closely relates to Reyes. . . , as some of the factual matters at issue [in the present case] arose during the course of that lawsuit and are currently being litigated therein.").

[21] See Reyes v. Freebery, 141 Fed. Appx. 49, 50 (3d Cir. 2005) ("Reyes I").

[22] Reyes I, 141 Fed. Appx. at 50.

[23] Reference to court files, orders, and records qualify for the public-records exception to Rule (12)(b)'s prohibition the reliance on documents outside of the pleadings.  See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (stating the general principle that the court may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, n.1 and n.2 (3d Cir. 1995) (same); Maule v. Susquehanna Reg'l Police, No. 04-05933, 2007 U.S. Dist. LEXIS 73065, at *10 (E.D. Pa. Sept. 27, 2007) (same).

[24] Reyes I, 141 Fed. Appx. at 50.

[25] (Reyes D.I. 93) at Exhibit A, ¶ 31, Declaration of Thomas S. Neuberger, Esquire (hereinafter, the "Neuberger Affidavit").  Reference to the Neuberger Affidavit does not convert the present Motion to one for summary judgment.  First, the affidavit was filed with the court and, therefore, as previously addressed, qualifies as an admissible public record.  Additionally, because Plaintiff attested to and verified the truth of the affidavit under the penalty of perjury, the affidavit also qualifies for admission as an "undisputedly authentic document."  See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

contained copies of the entire deposition transcript of every witness deposed in the matter including the transcripts of six deponents not referenced in the brief.[26]

• On January 8, 2004, the Reyes Defendants filed a motion seeking to have Plaintiff sanctioned and held in contempt for releasing the confidential material contained in the brief and appendices in violation of the Protective Order (the "Motion for Sanctions").[27]

• On January 11, 2004, the News Journal published an article written by reporter Chris Barrish (the "Barrish Article"). The tone and content of the article were critical of to the Individual Defendants. The article quoted from and referenced extensively the deposition transcripts Plaintiff leaked to the press.[28]

• On January 15, 2004, in an effort to correct inaccuracies contained in the Barrish Article, the Individual Defendants generated an advertisement (the "Responsive Ad"). The Responsive Ad was subsequently published by three or four local, limited-circulation, community newspapers.[29]

• On the same day, the District Court held an expedited hearing via telephone to address the Reyes Defendants' allegations that Plaintiff had breached the Protective Order.[30] Plaintiff did not attend the hearing but his co-counsel, Martin Haverly, attended on behalf of the

---

[26] Neuberger Aff. at ¶ 21.

[27] Reyes II, 2005 U.S. Dist. LEXIS 36795, at *11; (Reyes D.I. 82-83). See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (explaining that a court may take judicial notice of another court's opinion—"not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity"); see also Hinton v. Shaw Pittman Pott & Trowbridge, 257 F. Supp. 2d 96 (D.D.C. 2003) (finding that the filing party did not convert his motion to dismiss to one for summary judgment by attaching to his motion a portion of a court transcript from a different matter).

[28] The Barrish Article is attached as Exhibit 1. The Court may consider this and other newspaper articles without jeopardizing the status of the present Motion. "The Third Circuit permits judicial notice of newspaper articles. Whether Plaintiff read the articles or were aware of them is immaterial. They serve only to indicate what was in the public realm at the time, not whether the contents were in fact true. Their publication is 'not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Benak v. Alliance Capital Mgmt., L.P., 435 F.3d 396 (3d Cir. 2006); see also In re Merck Co., Inc., No. 05-1551, 2006 U.S. Dist. LEXIS 2345, at *19 (D.N.J. Jan. 20, 2006) (taking judicial notice of the 40 news stories submitted by the defendant in its motion to dismiss and, by implication, also taking notice of the 32 science and medical submissions, the 39 analyst reports, and the numerous composite charts at issue).

[29] (D.I. 1 at ¶ 34) (alleging that the Responsive Ad was published in three community newspapers and possibly a fourth). A copy of the Responsive Ad is attached hereto as Exhibit 2. Although the Responsive Ad serves as the basis for a majority of Plaintiff's claims, he failed to attach a copy of it to his Complaint. Plaintiff's counsel produced a copy to the Defendants' counsel at counsel's request. The full-poage ad has been copied as two separate pages to maintain its original size . The Responsive Ad is properly considered in this Matter as a document that was incorporated into the Complaint by reference, it is central to Plaintiff's claims, and, because it was produced by Plaintiff's counsel and because it is a newspaper article, it is undisputed. Thus, reliance on the Responsive Ad will not convert the present Motion to one for summary judgment. See, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); see also In re Merck Co., Inc., at *8.

[30] (Reyes D.I. 86).

Reyes Plaintiffs.[31]  Also in attendance were William W. Bowser, Esq., and Elizabeth Malloy, Esq., counsel for the Reyes Defendants.  None of the defendants in this Matter were present at the hearing.[32]

- During the hearing, Haverly disclosed that Plaintiff had "suffered a stroke and had been diagnosed with a brain tumor."[33]

- On January 30, 2004, approximately two weeks later, Plaintiff confirmed Haverly's statements.[34]  In his sworn affidavit of the same date, Plaintiff states that a reporter said he learned from the County that Plaintiff had a brain tumor."[35]  Plaintiff also attested that he did "not know the source for the County's information other than [his] suspicion that it came from the defendants in [the Reyes] case as a result of what they learned about my confidential medical condition from the Court's teleconference on January 15th."[36]  The "defendants" to whom he was referring includes the County, Defendant Freebery, and Col. John L. Cunningham.[37]

---

[31] (Reyes D.I. 86 at 6:24-25 – 7:1-2).  Consideration of statements made during the hearing, a judicial proceeding, is properly considered in support of this Motion.  See S. Cross Overseas Agencies, Inc., at 426  (finding that the court has the power to look at public records, including judicial proceedings)

[32] (Reyes D.I. 86).

[33] (Reyes D.I. 86 at 5:23-25 – 6:1-4); see also (D.I. 1 at ¶¶ 43, 46) (alleging same).

[34] See (Reyes D.I. 93 at Facts C., pp. 5-8) (detailing Plaintiff's diagnosis and subsequent treatment); and see Neuberger Affidavit at ¶¶ 10-17.

[35] Neuberger Aff. at ¶ 41.

[36] Neuberger Aff. at ¶ 41.

[37] (Reyes D.I. 93).

## ARGUMENT

I.    **TO AVOID DISMISSAL, PLAINTIFF MUST SHOW MORE THAN A SPECULATIVE BASIS FOR RELIEF**

A.    **The Standard for Dismissal**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for failure to state a claim.[38]  In its recent decision, <u>Bell Atlantic v. Twombly</u>, the United States Supreme Court reformulated the previously well-settled standard applicable to a Rule 12(b)(6) motion.[39]  In applying the <u>Bell Atlantic</u> standard, the Third Circuit has explained that a "showing," rather than a blanket assertion, of an entitlement of relief, is now required.[40]

Thus, the standard for dismissal has been expanded.  No longer will a complaint survive a 12(b)(6) motion unless there is "no set of facts" that could entitle the plaintiff to relief.[41]  Now the Complaint must allege facts sufficient to raise a right to relief "above the speculative level."[42]  Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.[43]

B.    **The Incumbent Defendants, Named Only In Their Official Capacities, Are Not Subject to Liability**

The Incumbent Defendants, County Executive Coons and Chief Administrative Officer Singleton, are not subject to liability in their "official capacities" as pleaded in Plaintiff's

---

[38] Fed. R. Civ. P. 12(b)(6).

[39] 127 S. Ct. 1955 (2007).

[40] <u>Phillips v. County of Allegheny</u>, No. 06-2869, 2008 U.S. App. LEXIS 2513, at *14 (3d Cir. Feb. 5, 2008) (citing Twombly, 127 S. Ct. at 1965, n.3).

[41] <u>Id.</u> at *13 (citing <u>Twombly</u>, 127 S. Ct. at 1968).

[42] <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1695, n.3).

[43] <u>Hanig v. Yorktown Central Sch. Dist.</u>, 384 F. Supp. 2d 710, 721 (S.D.N.Y. 2005) (internal quotations omitted).

Complaint.[44]  Plaintiff has "essentially sued the County twice on the same claims—the § 1983

claim against the County and the § 1983 claim against [Coons and Singleton.]"[45]

       It is a "fundamental principle in civil rights litigation"[46] that official-capacity suits

against government officials represent only another way of pleading an action against the

government entity employing the official.[47]   Thus, Defendants share the frustration expressed by

this Court when it stated, "[w]e are at a loss to understand why lawyers continue to bring official

capacity claims knowing that they will be dismissed."[48]  It is without dispute that the Incumbent

Defendants, who were not even in office at the time of the allegations in the Complaint, should

be dismissed from this matter.[49]

---

[44] (D.I. 1 at ¶¶ 6-7).

[45] Navarro v. Coons, No. 05-565, 2007 U.S. Dist. LEXIS 66280, at *13 (D. Del. Sept. 7, 2007).

[46] Id.

[47] Id.

[48] Grimm v. Borough of Norristown, 226 F. Supp. 2d 606, 635, n.18 (E.D. Pa. 2002).

[49] See, e.g., Ky. v. Graham, 473 U.S. 159, 166 (1988); Ringer v. Smith, No. 93-05-015, 1994 Del. Super. LEXIS 656, at *7 (Del. Super. Nov. 23, 1994); and see Diana v. Oliphant, No. 05-2338, 2007 U.S. Dist. LEXIS 83834, at *17 (M.D. Pa. Nov. 13, 2007) (dismissing one of the defendants because he was not in office at the time of the alleged retaliation).

## II. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY FACTS THAT COULD SUPPORT A CLAIM FOR FIRST AMENDMENT RETALIATION

Counts II, III, and IV of Plaintiff's Complaint fail to state a retaliation claim under the First Amendment.[50]  Plaintiff's claims fail the first stage of the retaliation analysis because Plaintiff has not alleged that he engaged in any constitutionally protected activity.[51]  Defendants' conduct, which Plaintiff characterizes as retaliatory, was actually speech protected by the First Amendment.  Because Defendants, like Plaintiff, cannot be punished for exercising their constitutionally protected rights, the analysis must terminate and the matter be dismissed.[52]

Even if Plaintiff's claims could survive the first stage of the Retaliation analysis, they would fail yet again at the second stage.  At that stage, Plaintiff must show that Defendants responded to his protected conduct with adverse action sufficient to actually deter Plaintiff from exercising his First Amendment rights. [53]  Plaintiff cannot, as a matter of law, make such a showing because he was never deterred from exercising his rights to speech, petition or associations.

Just as  Plaintiff may not be subject to government retaliation for engaging in protected conduct, nor may Defendants be subject to legal liability for exercising their own First Amendment rights.  "Public officials do not lose their unfettered rights to express their opinions" upon inauguration.[54]  Thus, to proceed to the second stage, Plaintiff's conduct must have been

---

[50] Benkoski v. Wasilewski, No. 07-0197, 2007 U.S. Dist. LEXIS 66315, at *28 (M.D. Pa. Sept. 7, 2007); Diana, at *17 (explaining that Petition claims and Speech claims share the same required).

[51] Rappa v. Hollins, 991 F. Supp. 367, 374 (D. Del. 1997) (citing Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997)).

[52] Gallis v. Bott, No. 05-551, 2006 U.S. Dist. LEXIS 72091, at *18 (M.D. Pa. Oct. 3, 2006) (holding that the defendant-public officials had a right to First Amendment right to speak to the media).

[53] See Suppan v. Dadonna, 203 F.3d  228, 236 (3d Cir. 2000); X-Men Security, Inc. v. Pataki, 196 F.3d 56, 68-69 (2d Cir. 1999) (internal citations omitted) (requiring allegations of actual harm).

[54] Hammerhead Enterps., Inc. v. Brezenoff, 551 F. Supp. 1360 (S.D.N.Y. 1982), cert. denied, 464 U.S. 892 (1983).

constitutionally protected but Defendants' conduct must have been outside the reach of the First Amendment's protections.  If Defendants' conduct is not protected, the analysis proceeds.

At the second stage of the analysis, the Court turns to the nature of the alleged conduct to determine whether it was sufficiently adverse to invoke the protections of the First Amendment.  Not every disadvantage resulting from the exercise of First Amendment freedoms is actionable.[55]   The nature of the speech must be alleged to be particularly virulent in more than vague or abstract terms.[56]  Further, Plaintiff's First Amendment rights must have been actually, not hypothetically, silenced.

**A.    Plaintiff Has Failed to Allege that He Engaged in Any Conduct Protected by the First Amendment**

Plaintiff's claims cannot survive even the first stage of the retaliation analysis. Plaintiff fails to allege that he engaged in any activity that could qualify for the protections of the First Amendment.  Instead, he alleges that he was an attorney representing clients and engaged in the practice of law; i.e., that he was doing his job.  And, according to Plaintiff, part of his job involves speaking critically of the elected officials and public office holders who are named defendants in his clients' lawsuits.

Plaintiff alleges that he engaged in three instances of protected conduct, including: (1) filing civil lawsuits on behalf of his clients; (2) associating with those clients during the course of his representation; and (3) making public statements about those cases.[57] Not one of these three activities constitute protected conduct despite Plaintiff's boilerplate attempts to characterize them as protected petitioning activity, association, and speech.  Each of

---

[55] Colson v. Grohman, 174 F.3d 498, 510 (5th Cir. 1999).

[56] See McKee v. Hart, 463 F.3d 165, 170 (3d Cir. 2006).

[57] (D.I. 1 at ¶¶ 20, 22, 26).

the claimed instances are unprotected because they each were performed during the course of providing legal services to his clients.

> **1.    Plaintiff Did Not Invoke the Petition Clause When He Filed Suits on Behalf of His Clients**

There is no merit to Plaintiff's assertion that he was engaged in protected petitioning activity when he filed lawsuits against Defendants.  He filed the suits on his clients' behalf; Plaintiff was never a party in the litigation.  The Petition Clause prohibits retaliation against individuals who petition the government for "redress of *their* grievances."[58]  It does not protect an attorney who, acting as legal counsel, signs court filings, just as it does not protect the court clerk who processes the same filings.

Such a claim misconstrues the very essence of the Petition Clause.  The Petition Clause is not a constitutional workaround to avoid the case and controversy requirements of Article III.  There is no precedent to support the transfer of constitutional rights from client to counsel as a byproduct of the attorney-client relationship.[59]

> **2.    Plaintiff Did Not Invoke the Speech or Association Clauses When He Served as Legal Counsel to His Clients**

Plaintiff's advocacy on behalf of his clients "cannot honestly be characterized as 'free' speech."[60]  As a matter of law, attorneys are not engaged in free expression when

---

[58] See U.S. Const. amend. I, cl. 6; San Filippo v. Bongiovanni, 30 F.3d at 439-40, 440 n.18, & 442-43 (3d Cir. 1994), cert. denied, 513 U.S. 1082 (1995) (explaining that the purpose of filing a "petition" is to ask the "government to fix what, allegedly, government has broken or has failed in its duty to repair.").

[59] See Pekin v. County of San Benito, No. 05-05402-HRI, 2006 U.S. Dist. LEXIS 63645, at *12 (N.D. Cal. Aug. 25, 2006) (dismissing First Amendment suit for failure to allege participation in any constitutionally protected activity where the plaintiff-attorney alleged that the defendants had retaliated against him for petitioning the government when he filed suit on behalf of his client against the county).

[60] Mezibov v. Allen, 411 F.3d 712, 719 (6th Cir. 2005).

advocating on behalf of a client.[61]   By agreeing to act as legal counsel to his clients, Plaintiff

necessarily assumed a role that "is in absolute conflict with his exercising free speech."[62]

Plaintiff "retains no personal First Amendment rights when representing his

client."[63]   The First Amendment does not provide attorneys with derivative constitutional rights.

The protections afforded to attorney-made speech are exclusively dependent on and derivative of

the rights of his client.[64]   Thus, at no time during the course of his involvement in his clients'

various lawsuits was Plaintiff engaged in a constitutionally protected activity.

The Sixth Circuit engaged in a detailed analysis of the attorney-speech issue its

the recent decision, Mezibov v. Allen.[65]   Mezibov, a criminal defense attorney, openly criticized

the prosecuting attorney during a high-profile trial, calling him an incompetent litigator who

should have paid closer attention to the case.   After Mezibov's client was found guilty, the

prosecutor made several public statements in which he questioned Mezibov's professional

competency.   Mezibov filed suit under § 1983 for First Amendment retaliation.   He claimed that

the prosecutor's defamatory comments were made in retaliation against Mezibov "for filing

motions and raising legitimate defenses in his capacity as [] counsel."

The issue presented to the court was whether an attorney is engaged in protected

activity when he files motions and makes statements on behalf of his client.   Noting that the issue

was one of first impression, the court engaged in a meticulous analysis of decisions from other

---

[61] Lewter v. Kannensohn, 159 Fed. Appx. 641, 645 (6th Cir. 2005).

[62] Mezibov, 411 F.3d at 718.

[63] Id. at 720-21.

[64] Zal v. Steppe, 968 F.2d 924, 931 (6th Cir. 1992) (Trott, J., concurring); see also Mezibov, 411 F.3d at 719 ("Absent his client, the attorney is completely silenced in legal proceedings.").

[65] 411 F.3d 712 (6th Cir. 2005).

Circuits.[66]  The court's review revealed that no federal court of appeals had ever granted an attorney relief under the First Amendment for this narrow category of speech.[67]

Joining the unanimous holding of its sister circuits, the court held that Mezibov's vigorous legal representation was not a constitutionally protected activity.[68]  Speaking on behalf of and associating with his client was "simply a discrete function of the practice of law, which is not a privilege or immunity protected by the Constitution."[69]

Like Mezibov, Plaintiff was not protected by the First Amendment when he "actively and publicly spoke out to members of the news media."[70]  Plaintiff was acting on his clients' behalf as their compensated legal representative. In this context, Plaintiff's personal First Amendment rights are "*non-existent.*"[71]  Plaintiff's failure to allege any constitutionally protected activity is fatal to his First Amendment retaliation claim.

### B.    Defendants Had the Constitutional Right to Respond to the Critical Comments of a Zealot

Throughout his Complaint, Plaintiff alleges repeatedly that he was "targeted" for his protected activities.[72]  Yet, as set forth above, none of his alleged activities actually qualify for the constitutional protections of the First Amendment.  Ironically, when Defendants engaged in protected speech, Plaintiff responded by filing this suit, seeking to punish them for exercising

---

[66] Id. at 719.

[67] Id. at 717.

[68] Id. at 719.

[69] Id.

[70] (D.I. 1 at ¶ 26).

[71] Lewter, 159 Fed. Appx. 641, 645 (6th Cir. 2005).

[72] Throughout the rest of this brief, the term "speech" shall encompass all three of the First Amendment activities, including petitioning activity, association, and speech. See Smith v. Sch. Dist. of Phila., 112 F. Supp. 2d 417, 431 (E.D. Pa. 2000) (holding that the plaintiff's petition claim was "subsumed in the claimed retaliation in violation of Plaintiff's First Amendment right to free speech).

their constitutional rights.  The Constitution does not discriminate as freely as Plaintiff would hope.[73]  The First Amendment unequivocally guarantees *all* persons freedom to express their views.[74]

Plaintiff's claims are grounded in the presumption that Defendants have no right to respond to his critical or even false speech.[75]  But Defendants did not "lose their unfettered rights to express their opinions" upon taking public office.[76]  It would be "inconsistent with the core First Amendment principles and basic notions of fairness" to impose Section 1983 liability on public officials who respond in kind to protected speech critical of their acts in office.[77]  To accept such a fundamentally flawed contention would be to turn the First Amendment on its head.[78]

Furthermore, the public has a vital interest in ensuring that public officials are able to respond freely to accusations and criticisms against them.[79]  Government officials must have free speech rights to ensure that the public has access to all sides in a political debate.[80]

---

[73] X-Men Security, Inc., 19 F.3d at 68-70 (explaining that the defendants' free speech rights are no less valuable than the ordinary citizens).

[74] Id. at 68-69.

[75] See Jeffrey Brian Greenstein, The First Amendment v. the First Amendment: The Dilemma of Inherently Competing Rights in Free-Speech Based "Constitutional Torts," 71 UMKC L. Rev. 27, 32 (2002) (discussing the implications of "double First-Amendment cases" in which one party alleges that another's constitutionally protected activities violated his own constitutional rights and concluding that, in these cases, the First Amendment could potentially operate as both a sword and shield if the claim were permitted to proceed).

[76] Hammerhead Enterps., Inc., 551 F. Supp. 1360 (explaining that the right to speak is not lost or diluted upon becoming a public official).

[77] Thoma v. Hickel, 947 P.2d 816, 821 (Alaska 1997); Mezibov, 411 F.3d at 722.

[78] Gallis, 2006 U.S. Dist. LEXIS 72091, at *18 (finding for the defendants who argued that they had a right to First Amendment right to speak to the media).

[79] Id. (holding that officials had a constitutional right to respond to accusations and criticisms of the public); see also Suarez Corp. Indus. v. McGraw, 202 F.2d 676, 686 at 688 (4th Cir. 2000) ("The nature of the alleged retaliatory acts has particular significance where the public official's acts are in the form of speech").

[80] Id. (quoting Bond v. Floyd, 385 U.S. 116, 135-36 (1966)).

Officials may vigorously criticize the acts of a citizen "for any reason they wish. As part of their duties, they must be free to speak out to criticize practices, even in a condemnatory fashion."[81]

If the First Amendment were thought to be violated any time a public official criticized a private citizen's speech, those officials would be "virtually immobilized."[82] As holders of public office, Defendants had both a right and a duty respond to "the critical comments of zealots."[83]  To permit otherwise "would put a silencer on the elected and selected leaders of the body politic."[84]

Plaintiff demands compensation from Defendants for what he claims was defamatory speech all the while ignoring the privileged nature of that speech. Such a claim is "utterly devoid of merit and borders on frivolity."[85]

### C.    Defendants' Conduct Was Insufficiently Adverse to Deter Plaintiff from Exercising His First Amendment Rights

Plaintiff's attempt to impose liability upon Defendants for their protected conduct "demonstrates a complete misunderstanding of the protections afforded to all speakers—public and private—by the Constitution."[86]  Even if Defendants' conduct was not protected, Plaintiff's claims would still fail the adversity prong of the First Amendment analysis.  Defendants' conduct never actually deterred Plaintiff from engaging in free speech and, therefore, the conduct cannot be considered sufficiently adverse.

---

[81] Id.

[82] Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1015 (D.D.C. 1991).

[83] Hammerhead Enterps., Inc., 551 F. Supp. at 1367.

[84] Id.

[85] Id.

[86] Id. at 1368.

Adversity is measured using one of two standards, depending on the status of the plaintiff-speaker.[87] Where the plaintiff is a private citizen, Defendants' conduct must have been so adverse that it would have chilled the speech of the "ordinary person of reasonable firmness."[88] A different standard is employed where the plaintiff is a public figure. This standard is appropriate where the plaintiff voluntarily attracted the attention of the media. The public-figure plaintiff uses the media's spotlight to publicly criticize others and is, therefore, required to endure equally critical and responses.

Under both standards, Plaintiff must allege that the adverse action indeed did cause him some actual harm. The harm must be more than *de minimus* and cannot be alleged in abstract terms.[89] Unless Plaintiff was actually deterred from engaging in protected speech as a result of Defendants' conduct, he cannot, as a matter of law, satisfy the adversity standard.

### 1. Defendants' Actions Would Not Have Chilled the Speech of an Ordinary Person of Reasonable Firmness or of a Reasonable Plaintiff's Civil Rights Lawyer

None of Defendants' alleged conduct was so adverse that it would have chilled the speech of an "ordinary person." The permissible scope of Defendants' expression is broad.[90] "Insults that contain neither threats of coercion that intimidate nor fighting words that create the possibility of imminent violence" are speech protected against punishment.[91]

---

[87] Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); see also Thomas v. Ind. Twp., 463 F.3d 285, 296 (3d Cir. 2006).

[88] Diana, 2007 U.S. Dist. LEXIS 83834, at *17 (citing Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003)); Citizens for a Better Lawnside v. Bryant, No. 05-4268, 2007 U.S. Dist. LEXIS 38514, at *17 (D.N.J. May 24, 2007) (explaining that the adversity standard is an objective one).

[89] Diana, at *14 (citing McKee, at 170); Kougher v. Burd, No. 04-2209, 2007 U.S. Dist. LEXIS 8416, at *20, n.9 (M.D. Pa. Jan. 25, 2007) (finding that the rescue organization's claim that it "was given misinformation and subjected to misdirection throughout its efforts" was too vague to support a First Amendment claim).

[90] X-Men Security, Inc., 196 F.3d at 68-69.

[91] Zieper v. Metzinger, 392 F. Supp. 2d 516, n.2 (S.D.N.Y. 2005), aff'd, 474 F.3d 60 (2d Cir. 2007) (citing id.).

Defendants had "every right to speak out against criticism they deem[ed] to be unfounded."[92]  Further, they had the constitutional right to respond even with speech that was critical, inflammatory, defamatory, or untrue.[93]  Thus, Plaintiff's attempt to characterize the Responsive Ad as "false and scandalous" or "willfully defamatory," although colorful, adds no value to the merits of his claim.[94]  As a matter of law, "retaliatory criticisms, investigations, and false accusations" by County officials do not constitute actionable First Amendment retaliation under § 1983.[95]

Contrary to what Plaintiff contends, the broad and encompassing nature of the right to free speech is deeply engrained in our nation's constitutional jurisprudence.[96] Defendants maintain (and the documents evidence) that their speech was truthful in all respects. But even false speech is shielded from attack by the First Amendment

> Constitutional protection does not turn upon "the truth, popularity, or social utility of the ideas and beliefs which are offered."  For "erroneous statement is inevitable in free debate," and . . . must be protected if the freedoms of expression are to have the breathing space that they need to survive.[97]

---

[92] Hammerhead, 551 F. Supp. at 1376 (internal citations omitted); see also NAACP v. Clairborne Hardware Co., 458 U.S. 886 (1980).

[93] McLaughlin v. Watson, 271 F.3d 566, 573 (3d Cir. 2001).

[94] See Suarez, 202 F.3d at 688 (holding that defamatory speech does not adversely affect a citizen's First Amendment rights); Penthouse Int'l Ltd., at 1015 (explaining that the defendants had the right to criticize the conduct of a citizen, "even in a condemnatory fashion"); (D.I. 1 at ¶ 41) (characterizing Defendants' speech as "false and scandalous").

[95] Colson, at 513.

[96] See, e.g., Terminnello v. Chicago, 337 U.S. 1, 4 (1949) ("Speech is often provocative and challenging . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest.").

[97] Zieper, at 522, n.2 (citing X-Men Security, Inc., 196 F.3d at 68-69) (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 271-72 (1964) (other citations omitted).

Equally ineffective is Plaintiff's attempt to characterize Defendants' speech as defamatory in an effort to strip the speech of its constitutional protections.[98]  It has been long established that defamation alone is not an actionable harm under Section 1983.[99]  In fact, Plaintiff's "claim that he had been defamed in retaliation for exercising his First Amendment rights" is best characterized as a "frivolous . . . attempt to avoid the constricture of Supreme Court precedent."[100]

Perhaps this explains why "no case . . . has recognized a right in any individual under the First Amendment to prevent government officials from exercising their right to express their views."[101]  Indeed, there has been "no case in which the First Amendment has been held to be implicated by governmental action consisting of no more than governmental criticism of the speech's content."[102]  Plaintiff has "alleged only that []he was the victim of criticism . . . and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence."[103]

In his own words, Plaintiff is an experienced plaintiff's civil-rights attorney who, for "more than 31 years," has vigorously represented "the little guy" in pursuit of financial retribution from public officials and governmental entities.  Such "vigorous representation" has

---

[98] See Suarez, 202 F.3d at 688 (acknowledging that speech does not adversely affect a citizen's First Amendment rights even if defamatory); Doe v. Boro of Jenkintown, No. 95-0262, 1995 U.S. Dist. LEXIS 19226 (E.D. Pa. Dec. 27, 1995) (citing Miner v. Brackney, 719 F.2d 954, 955 (8th Cir. 1983), cert. denied, 467 U.S. 1259 (1984)).

[99] See, e.g., Rappa, 991 F. Supp. at 381; Paulson v. Carter, No. 04-1501-KI, 2006 U.S. Dist. LEXIS 10040, at *21 (D. Or. Feb. 16, 2006) explaining that (the remedy for defamation by a public official is under state tort law and not the First Amendment), aff'd, 230 Fed. Appx. 645 (9th Cir. Apr. 30, 2004) (citing Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1045 (9th Cir. 1994)); Field v. County of La Paz, No. 99-15524, 2000 U.S. App. LEXIS 12715, at *12-13 (9th Cir. June 2, 2000) (same).

[100] Patton v. County of Kings, 857 F.2d 379, 381 (9th Cir. 1988), cert. denied, 516 U.S. 1052 (1996).

[101] Id. at 71 (explaining that citizens and officials are equal for the purposes of the First Amendment, which are "hardly advanced by extending more protection to citizen-critics" than to public officials).

[102] Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1015 (D.D.C. 1991).

[103] Colson, 174 F.3d 498.

involved Plaintiff's frequent and self-initiated contacts with the press.[104]  By regularly employing

the media to publicize himself and his promote his professional practice, Plaintiff is subject to

heightened scrutiny for his actions.  And the more public attention Plaintiff seeks to attract, the

more scrutiny he must endure.[105]

> As an attorney taking on high-profile cases, Plaintiff "voluntarily
> placed himself open to criticism of his actions."  As such, Plaintiff
> must have "a thicker skin than the ordinary citizen when it comes
> to enduring criticism for his behavior," even if it is protected
> speech under the First Amendment.[106]

Thus, in the present case, the adversity analysis asks whether a civil-rights plaintiff's lawyer of

ordinary firmness would be deterred from vigorously representing his clients because of

Defendants' conduct.[107]  This analysis was employed in Mezibov where the court held that the

defendant-prosecutor's comments were insufficiently adverse to trigger constitutional liability.

Focusing on the position of the plaintiff,  the court explained:

> [The comments] did not exact a harm upon [the plaintiff] that
> would deter an ordinary criminal defense attorney from vigorously
> representing his clients.  If anything, we think the opposite:  that
> **such comments would spur the typical attorney to go out of his
> way to prove them wrong**.[108]

Hence, Defendants' alleged conduct is insufficiently adverse to chill the speech of a reasonable

person.  Moreover, the alleged conduct is far from the level of adversity required for cases

---

[104] (D.I. 1 at ¶ 26) ("On numerous occasions, Neuberger actively and publicly spoke out to members of the news media").

[105] Mezibov, 411 F.3d at 722.

[106] Mezibov, 411 F.3d at 722 (internal citations omitted).

[107] Id. (citing Mattox, 183 F.3d at 522) (formulating test for adverse-action prong for elected city council member as whether a "public official of ordinary firmness" would be deterred from exercising her First Amendment rights). This formulation of the adversity analysis is consistent with the Supreme Court's often-repeated conclusion that an attorney's First Amendment rights are less than those of the common citizen.  See, e.g., Gentile v. State Bar of Nev., 501 U.S. 1030, 1071-74 (1991).

[108] Id. at 723 (emphasis supplied).

involving a public figure speaker such as Plaintiff.  When the allegations are properly put into context, this conclusion becomes strikingly evident.  Plaintiff has failed to allege any conduct by Defendants that would deter Plaintiff, a "brazen," "bold," plaintiff's civil rights attorney who regularly holds press conferences and issues press releases and who "knows how to play hard ball" from exercising his free speech rights.

### 2.    Defendants' Conduct Has Not Chilled Plaintiff's Speech

What most obviously prevents Plaintiff's claims from satisfying the adversity prong is his inability to demonstrate that his speech was actually chilled.[109]  There has been "no case in which a First Amendment claim went forward in the absence of allegations or evidence that speech was actually chilled."[110]  Despite his vague and conclusory allegations to the contrary, it is undisputable that Plaintiff's rights to free speech and association have not been chilled in any respect.

In his Complaint, Plaintiff alleged that Defendants' conduct had "significantly affected [his] ability to advocate his viewpoint" and to "engage in expressive activity."[111]  It is

---

[109] See, e.g., Balaber-Strauss v. Town/Vill. of Harrison, 405 F. Supp. 2d 427, 433 (S.D.N..Y. 2005) (holding that "a plaintiff must show that his First Amendment rights were 'actually chilled'" and where a plaintiff "can show no change in his behavior, he has *quite plainly* shown no chilling of his First Amendment right to free speech.").

[110] Zieper, 392 F. Supp. at 525; Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (same).

[111] (D.I. 1 at ¶ 76; 77).  Plaintiff also alleges that his "clients' rights to engage in expressive First Amendment activity" had been chilled by Defendants' speech.  (D.I. 1 at ¶ 78).  This claim is wholly without legal support.  Plaintiff has no standing to assert claims based on the rights of his clients; only his clients can seek redress for harms incurred.  They cannot "assign" their harms to Plaintiff to borrow.

first worthy to note that this claim is too vague to constitute a sufficient harm.[112]   Plaintiff

alleges no specific harm—only a generalized harm to his character and reputation.[113]

He claims that Defendants' "false accusations" resulted in harm to his reputation

and "lowered him in the estimation of the community."[114]   Claims of harm to professional

reputation and of emotional anguish are too general to warrant constitutional remedy.  His failure

to allege a "specific" or "concrete" personal injury prevents him from establishing the required

adversity element.[115]

But, what seals the coffin on Plaintiff's claims, is his failure to allege that he ever

incurred any *actual* harm as a result of Defendants' speech.  Not every disadvantage resulting

from the exercise of First Amendment freedoms is actionable retaliation.[116]   Rather, § 1983

requires Plaintiff to demonstrate that Defendants' actions had some real adverse impact on the

exercise of his constitutional rights.[117]

The logic for this requirement is easy to divine.  Section 1983 is a tort statute and

a tort, to be actionable, requires an injury.  "It would trivialize the First Amendment to hold that

---

[112] See generally Mann v. Brenner, No. 06-1715, 2007 U.S. Dist. LEXIS 18178, at *12 (M.D. Pa. Mar. 13, 2007) (holding that the complaint's vague references to adverse actions including "dishonest citations and criminal persecution" by the defendants failed to state a claim because it did not sufficiently identify what he actually did or when the adverse actions occurred).

[113] (D.I. 1 at ¶ 56) (alleging that Defendants' speech "injured and tend to injure Plaintiff's reputation in the popular sense; diminish the esteem, respect, goodwill or confidence in which Plaintiff was previously held as well as excite adverse, derogatory, or unpleasant feelings or opinions against him").

[114] (D.I. 1 at ¶ 57).

[115] See Mezibov, 411 F.3d at 722 (citing Mattox, 183 F.3d at 522).

[116] DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir. 1995) (explaining that not every restriction is sufficient to chill the exercise of First Amendment rights, nor is every restriction actionable, even if retaliatory).

[117] Suarez Corp. Indust., 202 F.3d 676 at 685; Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995) (finding that the plaintiff could not prove that his First Amendment rights had been chilled by government criticism when he continued to publish his newspaper after the criticism), cert. denied, 517 U.S. 1189 (1996).

harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."[118]  Here, Plaintiff:

> is unable to demonstrate any injury to [his] First Amendment rights.  Over a span of several years, Plaintiff has communicated [his] dissatisfaction with the defendants . . . through a variety of media. . . . There is no evidence of record that the defendants interfered with any aspect of these activities or infringed with any aspect of these activities or infringed upon any other endeavors in violation of the First Amendment.[119]

As the Third Circuit explained in <u>Aiello v. City of Wilmington</u>, where the court is "faced not with a silent record but with a record of conduct, admitted by [Plaintiff], which directly contradicts his charges of a chilling effect, . . . the defendants are entitled to prevail as a matter of law."[120]  As set forth above, Plaintiff has spent the past four years undeterred, bolstering his resume with numerous filings against the government.  Any contention that Plaintiff's speech was chilled by Defendants' acts is "entirely undermined" because Plaintiff "continued and so continues to engage in the targeted activities."[121]  Plaintiff cannot claim that he has been precluded from litigating on behalf of his clients in court or from expressing his views elsewhere because the pleadings are replete with evidence of the opposite.[122]  Indeed, he has continued to prosecute numerous other actions on behalf of "the little guy," and routinely seek media attention for those activities.[123]

---

[118] <u>Kougher</u>, 2007 U.S. Dist. LEXIS 8416, at *24 (<u>citing</u> <u>Bart v. Telford</u>, 677 F.2d 622, 625 (7th Cir. 1982)).

[119] <u>Id.</u> at *23.

[120] 623 F.2d 845, 857-58 (3d Cir. 1980).

[121] <u>Chapin</u>, at *21; <u>see</u> <u>Smith v. Plati</u>, 258 F.3d 1167, 1177 (10th Cir. 2001) (finding that the fact that the plaintiff was not actually deterred served as evidence that the defendants' actions did not prevent such private speech).

[122] <u>Pekin</u>, at *18.

[123] <u>See</u> <u>Crawford-El v. Britton</u>, 523 U.S. 574, 589 n.10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right.").

Nor can Plaintiff demonstrate a cognizable constitutional injury based on the freedom of association. Even if certain persons have chosen to limit their interaction with Plaintiff since the incidents, neither the Individual Defendants nor the County have prohibited Plaintiff from associating with whomever he pleases.[124]

There can be no First Amendment injury where the plaintiff has continued to engage in the same expressive activities that he claims were chilled by the defendants.[125] To hold otherwise would be to "trivialize the First Amendment by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred."[126] By continuing his very public efforts to "fight government corruption," Plaintiff has demonstrated the absence of any injury to his First Amendment rights.[127]

## III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A COGNIZABLE CLAIM UNDER THE FOURTEENTH AMENDMENT

In Count I of the Complaint, Plaintiff alleges that Defendants released his private medical information, thereby violating his Fourteenth Amendment right to privacy.[128] Plaintiff admits that the "private" information was first disclosed by his co-counsel in the Reyes Matter, Martin Haverly, during a court proceeding in that case. Counsel for the Reyes Defendants also attended the proceeding, which was called to determine whether information in that case had

---

[124] Rattner, 733 F. Supp. at 172.

[125] See Colson v. Graham, 174 F.3d 498, 514 (5th Cir. 1999) (finding that the plaintiff had failed to allege any First Amendment deprivation actionable under Section 1983 because the alleged "attacks on Plaintiff seem to have had no effect" other than to make her more cautious but where plaintiff's protected activity did not cease).

[126] Mezibov, 411 F.3d at 721 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

[127] Kougher, 2007 U.S. Dist. LEXIS 8416, at *23 (finding no infringement on the plaintiffs' First Amendment rights where the plaintiffs continued to communicate their dissatisfaction with the public officials by writing letters, sending e-mails, publishing newsletters, etc.).

[128] (D.I. 1 at ¶¶ 43-46, 48-51).

been leaked to the press in violation of the governing Protective Order.  Count I of the Complaint is without merit as a matter of law.

   A.   **Plaintiff's Voluntary Disclosure of His Medical Condition Precludes His Privacy Claim**

          For reasons not alleged in his complaint, Plaintiff voluntarily disclosed his medical information to his co-counsel in the Reyes Matter. During a hearing in that case, Plaintiff's co-counsel volunteered the medical information that Plaintiff now contends is private.

          Thus, the disclosure of Plaintiff's medical information therefore occurred exclusively as a result of Plaintiff's voluntary decision to advise his co-counsel of his condition.[129]  Haverly, a second party subsequently repeated the information during the hearing. At best, Plaintiff's allegation can be read as asserting that counsel for the Reyes Defendants, the third party, *repeated* the information to yet a fourth party, which resulted somehow in disclosure to the Individual Defendants in this case.  Plainly, though, it was Plaintiff's own co-counsel who disclosed the information.[130]

          Thus, even if the information at issue was subject to constitutional protections, repetition of that information where it had been previously disclosed is insufficient to state a cognizable claim.  Even if Plaintiff had a legitimate expectation of privacy when he told is co-counsel about his medical information, "such a privacy right is not violated merely by [Mr. Haverly's] communication voluntarily disclosing it to a third party."[131]

---

[129] Doe v. Southeastern Penn. Transp. Auth. (SEPTA), 72 F.3d 1133, 1138 (3d Cir. 1995) (disclosure is required for a constitutional privacy violation; C.N. v. Ridgewood Bd. of Educ., 319 F. Supp. 2d 483, 494 (D.N.J. 2004) (same).

[130] See generally, Nat'l Fed'n of Fed. Employees v. Greenberg, 983 F.2d 286, 294 (D.C. Cir. 1993).

[131] Baar v. Jefferson County Pub. Sch., No. 06-75-H, 2008 U.S. Dist. LEXIS 9992, at *24 (W.D. Ky. Feb. 8, 2008).

Further, the Complaint seems to suggest that the protective orders in the Reyes Matter precluded repetition of information voluntarily disclosed by his co-counsel. The protective orders had no connection to the allegedly private medical information of Plaintiff or other involved person. Instead, the protective orders were in place to limit dissemination of confidential information about the parties themselves. Accordingly, the disclosure of Plaintiff's medical information was in no sense privileged, nor subject to constitutional protection.

**B.      Plaintiff's Failure to Identify What Facts Were Allegedly Disclosed Bars Him From Proceeding**

Plaintiff's Complaint fails to alleged a facts sufficient to establish a violation of his Fourteenth Amendment for two reasons. First, a fair reading of Plaintiffs Complaint shows that he is alleging that Defendants published untrue information about hiss medical condition.[132] Second, Plaintiff has not alleged that he suffered any concrete injury as a result of the claimed violation of his Fourteenth Amendment privacy rights. In short, Plaintiff has pleaded himself out of court with allegations that undermine the required legal elements of his claim.[133]

The Fourteenth Amendment protects against the disclosure only of truthful private information.[134] Plaintiff does not allege, nor imply, that Defendants' statement carried any

---

[132] (D.I. 1 at ¶¶ 134-41).

[133] See Thomas v. Farley, 31 F.3d 557, 559 (7th Cir. 1994) (holding that the plaintiff had pleaded himself out of court by alleging facts inconsistent with legal conclusion).

[134] Publication of false information is not a "disclosure" for the purposes of the Fourteenth Amendment.

truth,[135] instead his complaint can only be read as alleging that it is untrue that he "dying of a brain tumor" and was acting erratically as a result. Plaintiff has no constitutional claim[136] Because if Defendants knowingly communicated false information about him, Plaintiff's only recourse is through a state tort claim for defamation or false light invasion of privacy.  Of course, Plaintiff asserts both of these state law claims in this Complaint.[137]  Most importantly, Plaintiff alleges a false-light privacy claim.[138]  By definition, that claim is based on the allegation that Defendants published false information about his medical condition.[139]  Because Plaintiff asserts the medical information released by Defendants was *untrue*, he is barred from asserting a constitutional claim for the right to privacy.

There is yet another bar to Plaintiff's Fourteenth Amendment claim.  Even if there were an actionable, i.e., truthful, disclosure of private medical information by Defendants, Plaintiff has failed to plead a cognizable injury. Instead, he "offers only generalized statements about the effect on [his] character and reputation, about being held up to 'ridicule, contempt, shame, and disgrace,' but does not concretize [his] personal injury."[140]  "Without anything more specific, this does not meet the constitutional threshold for [his] claim to proceed."

---

[135] Plaintiff's attempt to evade the pleading requirements of Rule 8 with the blanket assertion that he is legally "barred from discussing" the details of his claims is unsustainable with respect to his medical information.  No judicial order bars Plaintiff from discussing his medical information.  And, if there was such an order, Plaintiff would have already violated it by discussing his personal medical information with members of the news media in great detail.  See Dover Newszap, "Big Targets Suit Del. Lawyer," Tom Eldred, Dec. 13, 2003.  (Reyes D.I. 94 at Exhibit B).

[136] (Reyes D.I. 94 at Exhibit B).

[137] (D.I. 1).

[138] (D.I. 1 at 22).

[139] (D.I. 1 at ¶ 134).

[140] Id.

## C.    Plaintiff Has Failed to Allege a Protected Privacy Interest

There is yet another bar to Plaintiff's Privacy claim.  As a matter of law, disclosure of Plaintiff's brain tumor does not constitute a privacy violation because it is not constitutionally protected information.  There is a constitutional right to the confidentiality of medical records.[141]  But that right is qualified, and depends on the medical condition at issue.[142]

There is a vast difference between disclosing that a person has a medical condition that might result in social ostracism or disrepute and the many conditions that do not invoke similarly stigmatized reactions.[143]  For example, "there is a vast difference between disclosing that a person is HIV positive or is a transsexual and disclosing more mundane maladies."[144]  There is no negative social stigma associated with the condition of a brain tumor. Plaintiff himself has discussed the condition publicly without any trace of subjective embarrassment or trepidation.  For example, in one news article, Plaintiff described the condition in great detail.  He openly discussed te circumstances of his diagnosis, subsequent search for proper health care providers, and later, his treatment.  He even described how the condition impacted his legal practice. Accordingly, Plaintiff has failed to allege that *constitutionally protected* information was disclosed.

---

[141] Anderson v. Romero, 72 F.3d 518, 522 (7th Cir. 1995).

[142] Powell v. Shriver, 175 F.3d 107, 111 (2d Cir. 1999).

[143] Pisciotti v. County of Wayne, 76 F. Supp. 2d 307, 309-310 (W.D.N.Y. 1999) (discussing significant difference between medical conditions that carry social stigma and those that do not).

[144] Levin, 470 F. Supp. 2d at 841 (citing Powell, 175 F. 3d at 111 (discussing compelling interest in privacy of persons who are HIV positive and transsexuals)).

## IV.    THE STATE-LAW CLAIMS ASSERTED IN COUNTS V AND VI ARE BARRED BY THE TORT IMMUNITY STATUTE

The common law tort claims asserted in Counts V and VI of Plaintiff's Complaint[145] are precluded by the County's Municipal Tort Claims Act (the "Act").[146]  The Act provides complete immunity for "all government entities and their employees . . . on any and all tort claims seeking recovery of damages."[147]  Delaware courts have confirmed that claims of defamation[148] and invasion of privacy,[149] as asserted in Counts V and VI of Plaintiff's Complaint, are precluded by the Act.

The grant of immunity is a broad one subject only to the specific exceptions set forth in the statute.[150]  To qualify for one of the statutory exceptions, Plaintiff must have alleged that the Individual Defendants caused property damage, bodily injury, or death.[151]  Plaintiff has made no such allegation.  Consequently, his state defamation and privacy claims must fail.

---

[145] (D.I. 1 at ¶¶115-116; 117-141).

[146] 10 Del. C. §§ 4010-12 (2007).

[147] 10 Del. C. § 4011(a).

[148] Alexander v. Town of Cheswold, No. 04C-09-277-WCC, 2007 Del. Super. LEXIS 183 (Del. Super. June 27, 2007) (holding that claims of defamation are not actionable against a governmental entity in light of the Tort Claims Act).

[149] Ringer v. Smith, No. 93-05-015, 1994 Del. Super. LEXIS 656, at *17, n.6 (Del. Super. Nov. 23, 1994) (explicitly finding that a state law claim for Invasion of Privacy is precluded pursuant to the Tort Claims Act); Wilchek v. City of Wilmington, 60 F. Supp. 2d 298 (D. Del. 1999).

[150] Dale v. Town of Elsmere, 702 A.2d.1219 (Del. 1997) (the statutory exceptions are narrowly construed); Heaney v. New Castle County, 672 A. 2d 11 (Del. 1995) (the statute's grant of immunity is broad); Carr v. Town of Dewey Beach, 730 F. Supp. 591, 601 (D. Del 1990) (the types of actions and injuries excepted from the statute are narrowly defined).

[151] Boulden v. Turner, C.A. No. 04C-10-031-CLS, 2005 Del. Super. LEXIS 350, at *6 (Del. Super. Oct. 12, 2005) (citing 10 Del. C. § 4011(c)); Batiste v. Lee, No. 04C-07-001WLC, 2004 Del. Super. LEXIS 348, at *5-6 (Del. Super. Oct. 14, 2004).

## CONCLUSION

For the reasons set forth in the brief above, Defendants request that their Motion to Dismiss be granted and Plaintiff's Complaint be dismissed in its entirety.

Respectfully submitted,

*/s/ Barry M. Willoughby*
Barry M. Willoughby, Esquire (No. 1016)
Margaret M. DiBianca, Esquire (No. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6666; 5008
Facsimile: (302) 576-3345; 3476
E-mail: bwilloughby@ycst.com; mdibianca@ycst.com
Attorneys for Defendants New Castle County and
Christopher A. Coons and David W. Singleton, in their
official capacities

Date: March 24, 2008

DB02:6466548.1                                             045581.1053