# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS S. NEUBERGER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A.No. 05-916 TNO |
| | : | |
| THOMAS P. GORDON, individually; SHERRY | : | |
| L. FREEBERY, individually; CHRISTOPHER | : | |
| A. COONS, in his official capacity as County | : | |
| Executive; DAVID W. SINGLETON, in his | : | |
| official capacity as Chief Administrative Officer; | : | |
| and NEW CASTLE COUNTY, a municipal | : | |
| corporation, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS

**LAW OFFICE OF JOHN M. LaROSA**
**JOHN M. LaROSA, ESQ.**
Delaware Bar No. 4275
Two East Seventh Street, Suite 302
Wilmington, DE  19801-3707
(302) 888-1290
JLR@LaRosaLaw.com

**THE NEUBERGER FIRM, P.A.**
**STEPHEN J. NEUBERGER, ESQ.**
Delaware Bar No. 4440
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
SJN@NeubergerLaw.com

**OF COUNSEL:**

**THE RUTHERFORD INSTITUTE**
**JOHN W. WHITEHEAD, ESQ.**
**DOUGLAS R. McKUSICK, ESQ.**
P.O. Box 7482
Charlottesville, VA 22906
(434) 978-3888
JohnW@Rutherford.org
DouglasM@Rutherford.org

Dated: April 25, 2008                           Attorneys for Plaintiff

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    Plaintiff's Protected First Amendment Activity . . . . . . . . . . . . . . . . . . . . . . 3

        1.    Speech to the Media and the Public Challenging
              Government Corruption and Illegality . . . . . . . . . . . . . . . . . . . . . . . . . 3

            a.    Defendants Were Enraged by this Speech to the Media
                 and the Public . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2.    Filing of Numerous Lawsuits Challenging Government Corruption . . . . . 4

            a.    Defendants Were Enraged by the Filing of These Lawsuits . . . . . 5

    D.    Defendants Retaliate Against Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    The Release of Neuberger's Private and Confidential Medical
              Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            a.    Release to the Media . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            b.    Release Throughout County Government . . . . . . . . . . . . . . . . . . 6

            c.    Defendants' Intent in Releasing This Private and
                Confidential Medical Information . . . . . . . . . . . . . . . . . . . . . . . 6

        2.    The Defamatory Newspaper Attack Ads . . . . . . . . . . . . . . . . . . . . . . . . 6

            a.    These Accusations are False . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            b.    Defendants' Intent in Publishing These False Accusations . . . . . 7

    E.    The First Amendment Rights of Plaintiff and His Clients Have Been
        Chilled by the Defense Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    Rule 8(a)(2)'s "Extremely Lenient" Notice Pleading Standards . . . . . . . . 8

            1.    Fair Notice is All That is Required . . . . . . . . . . . . . . . . . . . . . . 8

                  a.    The Supreme Court's Illustration of Fair Notice . . . . . . . 9

                  b.    This Simplified Pleading System is Intended
                        To Focus Litigation On the Merits of a Claim . . . . . . . . 10

            2.    A Plaintiff Need Not Plead Facts to Match the Evidentiary
                  Elements of His Legal Theory . . . . . . . . . . . . . . . . . . . . . . . . . 10

            3.    A Plaintiff Need Not Plead a Legal Theory At All . . . . . . . . . . 11

            4.    All a Complaint Must Do is State the Conduct, Time,
                  Place and Persons Responsible . . . . . . . . . . . . . . . . . . . . . . . . . 12

            5.    These "Extremely Lenient" Pleading Standards Apply
                  In the Civil Rights Context . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      C.    Rule 12(b)(6) Motion to Dismiss Standards . . . . . . . . . . . . . . . . . . . . 14

      D.    If a Complaint Fails to State a Claim, the District Court Must
            Allow Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      E.    Matters Outside the Pleadings May Not Be Considered . . . . . . . . . . . . 14

      F.    Novel Theories of Law Should Not Be Addressed at the
            Motion to Dismiss Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.   PLAINTIFF HAS PROPERLY PLED THE CONDUCT, TIME,
      PLACE AND PERSONS INVOLVED IN HIS CLAIMS TO
      PLACE DEFENDANTS ON NOTICE OF THE CLAIMS
      AGAINST THEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      A.    The Core of Operative Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      B.    The Many Legal Claims that Flow From These Facts . . . . . . . . . . . . . . 17

            1.    Fourteenth Amendment - Right to Privacy . . . . . . . . . . . . . . . 18

|   |   | a. | Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage ........................ 18 |
|   |   | b. | The Conduct, Time, Place and Persons Responsible .................................... 19 |
|   | 2. |   | First Amendment Retaliation - Speech, Petition and Association ....................................... 19 |
|   |   | a. | Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage ........................ 21 |
|   |   | b. | The Conduct, Time, Place and Persons Responsible .................................... 21 |

III.   DEFENDANTS GORDON AND FREEBERY ARE NOT ENTITLED TO QUALIFIED IMMUNITY ....................................... 21

    A.   Introduction ................................................. 21

    B.   The Facts Show That Defendants Violated Plaintiff's Constitutional Rights ......................................... 22

        1.   Fourteenth Amendment Right to Privacy .................. 22

            a.   The Basics ................................... 22

            b.   Plaintiff Has a Strong Privacy Interest in the Confidentiality of His Personal Medical Information ..................................... 23

            c.   There Was No Governmental Interest in Disclosure Outweighing Plaintiff's Privacy Interest ..................................... 25

        2.   First Amendment Retaliation .......................... 27

            a.   Overarching First Amendment Principles ............ 27

                (1).   Retaliation for the Exercise of Constitutional Rights Violates § 1983 ..................................... 27

                (2).   The Motivation for Government Action is Key ............................. 28

(3).     The Unconstitutional Conditions
Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

(4).     The First Amendment Retaliation Test . . . . . . . 29

b.     Plaintiff's Speech to the Media and the Public
Challenging Government Corruption and Illegality . . . . . 30

c.     Plaintiff's Vigorous Advocacy of Unpopular
Causes, Association With His Clients and Filing
of Lawsuits Challenging Government Wrongdoing . . . . 32

(1).     Litigation Has Long Been Recognized as
a Means for Achieving Equality of
Treatment for All . . . . . . . . . . . . . . . . . . . . . . . . 32

(2).     The Attorney Retaliation Line of Cases . . . . . . . . 33

(a).     The Sole Case Upon Which the
Defense Rests . . . . . . . . . . . . . . . . . . . . . . 35

(3).     In Order to Protect the Citizen's Right of
Access to the Courts and Other Precious
First Amendment Rights, it is Necessary
To Protect Their Ability to Seek Out
Independent and Courageous Legal Counsel
Willing to Challenge the Powers That Be . . . . . . 39

(a).     The Collective First Amendment
Right to Counsel . . . . . . . . . . . . . . . . . . . 40

(b).     The Individual First Amendment
Right to Counsel . . . . . . . . . . . . . . . . . . . 41

(c).     Defendants' Actions Have Chilled
the First Amendment Rights of
Plaintiff's Clients . . . . . . . . . . . . . . . . . . . 42

(d).     Defendants' Actions Also Have
Chilled Plaintiff's First Amendment
Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

d.     The Retaliatory Actions Taken Against Plaintiff
Would Deter a Person of Ordinary Firmness From
Exercising Their First Amendment Rights . . . . . . . . . . . 43

        (1).    The Person of Ordinary Firmness Standard . . . . . 44

        (2).    Defendants' Retaliatory Actions Would
              Deter a Person of Ordinary Firmness From
              Exercising their First Amendment Rights . . . . . . 46

  C.    Plaintiff's Rights Were Clearly Established . . . . . . . . . . . . . . . . . . . . . . 49

      1.    Plaintiff's Long Established Right to Privacy . . . . . . . . . . . . . . 52

      2.    Plaintiff's Long Established Rights Against
           First Amendment Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

          a.    Right to Be Free of Retaliation For Speech to
              the Media Challenging Government
              Corruption and Illegality . . . . . . . . . . . . . . . . . . . . . . . . . 53

          b.    Right to Be Free of Retaliation for Advocacy
              of Unpopular Causes, Association With His
              Clients and Filing of Lawsuits Challenging
              Government Wrongdoing . . . . . . . . . . . . . . . . . . . . . . . . 54

IV.    PLAINTIFF HAS STANDING BECAUSE HE HAS SUFFERED AN
      INJURY IN FACT AND A FAVORABLE DECISION WILL REDRESS
      THE HARM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

  A.    The Basics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

  B.    Plaintiff Has Suffered an Injury In Fact . . . . . . . . . . . . . . . . . . . . . . . . 58

  C.    Plaintiff's Injuries Can Be Redressed by the Requested Relief . . . . . . . . 59

      1.    Compensatory and Punitive Damages . . . . . . . . . . . . . . . . . . . . 59

          a.    Compensatory Damages Are Recoverable in
              § 1983 Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

      2.    Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

      3.    Declaratory Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

  D.    Plaintiff Also Has Standing to Assert the Rights of His Clients . . . . . . . 64

V.    PLAINTIFF'S STATE LAW DEFAMATION AND INVASION OF
      PRIVACY CLAIMS AGAINST GORDON AND FREEBERY
      INDIVIDUALLY ARE NOT BARRED BY THE TORT IMMUNITY
      STATUTE BECAUSE DEFENDANTS ACTED AS PRIVATE
      CITIZENS, FAR OUTSIDE THE SCOPE OF THEIR JOB DUTIES
      AND DID SO WITH EXPRESS MALICE AND INTENT TO INJURE . . . . . . 65

VI.   COONS AND SINGLETON ARE PROPER OFFICIAL CAPACITY
      DEFENDANTS IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

      A.    Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

      B.    Attorneys' Fees and Costs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

A.D. Bedell v. Phillip Morris Inc, 263 F.3d 239 (3d. Cir 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Abu-Jamal v. Price, 154 F.3d 128 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

ACLU v. Nat'l Sec. Agency, 493 F.3d 644 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 57-58

Agosto-de-Feliciano v. Aponte-Rogue, 889 F.2d 1209 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . 44

Al Makaaseb General Trading Co. v. U.S. Steel International, Inc.,
      412 F.Supp.2d 485 (W.D.Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Allah v. Al-Hafeez, 226 F.3d 247 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Allah v. Seiverling, 229 F.3d 220 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28,44

Am. Airways Charters, Inc. v. Regan, 746 F.2d 865 (D.C.Cir. 1984) . . . . . . . . . . . . . . . . . . . . 42

Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997) . . . . . . . . . . . . . 19-20,28-30,33,38,43,53,55

Andrews v. City of Phila., 895 F.2d 1469 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 46,48

Anderson v. Creighton, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Assaf v. Fields, 178 F.3d 170 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Aversa v. U.S., 99 F.3d 1200 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Baca v. Sklar, 398 F.3d 1210 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Baldassare v. St. of N.J., 250 F.3d 188 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570 (5th Cir. 2003) . . . . . . . . . . . . . . 45

Bart v. Telford, 677 F.2d 622 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44,47

Bates v. State Bar of Ariz., 433 U.S. 350 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40-41, 54

Bd. of County Comm'rs, Wabaunsee County v. Umbehr, 518 U.S. 668 (1996) . . . . . . . . . . 19,29

Bechtel v. Robinson, 886 F.2d 644 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,17

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11

Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

Bennett v. Murphy, 120 Fed.Appx. 914 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Bennett v. Spear, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Bennis v. Gable, 823 F.2d 723 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43,51,53-54

Bibbins v. City of Baton Rouge, 489 F.Supp.2d 562 (M.D.La. 2007). . . . . . . . . . . . . . . . . . 12

Bieregu v. Reno, 59 F.3d 1445 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52,55

Bloch v. Ribar, 156 F.3d 673 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44,47

Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75 (3d Cir. 1980) . . . . . . . . . . . . . . . . . 12-13,18

Branch v. Fed. Deposit Ins. Corp., 825 F.Supp. 384 (D.Mass. 1993) . . . . . . . . . . . . . . . . . . . 17

Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46,48,55

Brosseau v. Haugen, 543 U.S. 194 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Brotherhood of R.R. Trainmen v. Va. Bar, 377 U.S. 1 (1964) . . . . . . . . . . . . . . . . . . 40,43,54-55

Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155 (3d Cir. 1988) . . . . . . . 55

Buckhead Am. Corp. v. Reliance Capital Group, Inc., 178 B.R. 956 (D.Del. 1994) . . . . . . . . . 17

Bullen v. Chaffinch, 336 F.Supp.2d 342 (D.Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159 (3d Cir. 2005) . . . . . . . . . . . . . . . . 18,23,26,52

Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) . . . . . . . . . . . . . . . . . 55

Caplin & Drysdale, Chartered v. U.S., 491 U.S. 617 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 64

Carey v. Piphus, 435 U.S. 247 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60-61

Carroll v. Pfeffer, 262 F.3d 847 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Cipriani v. Lycoming County Hous. Auth., 177 F.Supp.2d 303 (M.D.Pa. 2001) . . . . . . . . . . . 42

Citizens for Health v. Leavitt, 428 F.3d 167 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cooper v. Kearney, 2005 WL 3312823 (D.Del. Dec. 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 23

Compaq Computer Corp. v. Inacom Corp., 2001 WL 789408
  (D. Del. July 12, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11,17-18

Connecticut General Life Insur. Co. v. Universal Insur. Co., 838 F.2d 612  (1st Cir. 1988) . . . 11

Connick v. Myers, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474 (4th Cir. 2005) . . . 45

Crawford-El v. Britton, 523 U.S. 574 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

DeLoach v. Bevers, 922 F.2d 618 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . 41,54-55

Denius v. Dunlap, 209 F.3d 944 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41,54

Doe v. Borough of Barrington, 729 F.Supp. 376 (D.N.J. 1990) . . . . . . . . . . . . . . . . . . . . . 23-24

Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,23-24,50-51,53

Doe v. District of Columbia, 697 F.2d 1115 (D.C.Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 42

Doe v. SEPTA, 72 F.3d 1133 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Eichenlaub v. Twp. of Indiana, 385 F.3d 274 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 29,39

Elrod v. Burns, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11-13,18

Faison v. Parker, 823 F.Supp. 1198 (E.D.Pa.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

First Defense Legal Aid v. City of Chicago, 209 F.Supp.2d 935 (N.D.Ill. 2002) . . . . . . . . . . . 42

Flickinger v. Harold C. Brown & Co., 947 F.2d 595 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . 11

Foraker v. Chaffinch, 501 F.3d 231(3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Fraternal Order of Police, Lodge No. 5 v. City of Phila,, 812 F.2d 105 (3d Cir. 1987) . . 23,25,53

Freeman and Bass, P.A. v. State of N.J. Comm'n of Investigation,
  359 F.Supp. 1053 (D.N.J. 1973) . . . . . . . . . . . . . . . . . . . . . . . . 20,33,37,41,43,56,63-65

Garcetti v. Ceballos, 547 U.S. 410 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Garcia v. City of Trenton, 348 F.3d 726 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 45-46

Good v. Dauphin County, 891 F.2d 1087 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 50-51

Guthridge v. Pen-Mod, Inc., 239 A.2d 709 (Del.Super. 1967) . . . . . . . . . . . . . . . . . . . . . . . . 60

Hall v. Pa. State Police, 570 F.2d 86 (3d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,18

Harlow v. Fitzgerald, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50,53

Hartman v. Moore, 547 U.S. 250 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,21,30,34

Healy v. James, 408 U.S. 169 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Herndon v. Lowry, 301 U.S. 242 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,32,54

Herr v. Pequea Township, 274 F.3d 109 (3d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Hicks v. Finney, 770 F.2d 375 (3d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 31,55

Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Holder v. City of Allentown, 987 F.2d 188 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 30,53

Hope v. Pelzer, 536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Hutto v. Finnery, 437 U.S. 678 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Izen v. Catalina, 382 F.3d 566 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 20,34,37,43,56

Izen v. Catalina, 398 F.3d 363 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 20,34,37,43,56

In re Freebery, 930 A.2d 928 (Del. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

In re Freebery, 2008 WL 1801980 (Del. April 21, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

In re Primus, 436 U.S. 412 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40,43,54-55

In re TI.B., 762 A.2d 20 (D.C.App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Jones v. Sheahan, 2002 WL 959814 (N.D.Ill. May 9, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 42

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994) . . . . . . . . . . . . . . 15

Jordan v. Hutcheson, 323 F.2d 597 (4th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

Keenan v. Tejeda, 290 F.3d 252 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Kentucky v. Graham, 473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

Keyishian v. Bd. of Regents of Univ. of the State of N.Y., 385 U.S. 589 (1967) . . . . . . . . . . . 29

King v. Knoll, 399 F.Supp.2d 1169 (D.Kan. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35,56

Kirkpatrick v. Merit Behavioral Care Corp., 128 F.Supp.2d 186 (D.Vt. 2000). . . . . . . . . 11-12

Kowalski v. Tesmer, 543 U.S. 125 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

Lapinski v. Bd. of Educ. of the Brandywine Sch. Dist., 2006 WL 167443
    (3d Cir. Jan. 24, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
    507 U.S. 163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157 (3d Cir. 1993) . . . . . . . 16

Leveto v. Lapina, 258 F.3d 156 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Lewis v. Casey, 518 U.S. 343 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52,55

Lewter v. Kannensohn, 159 Fed.Appx. 641 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 37-38

Losch v. Borough of Parkesburg, Pa., 736 F.2d 903 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . 55

Mariana v. Fisher, 338 F.3d 189 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Martin v. Lauer, 686 F.2d 24 (D.C.Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42,55

McCormick v. City of Lawrence, Kansas, 253 F.Supp.2d 1156 (D.Kan. 2003) . . . . . . . . . 35,56

McDonald v. Smith, 472 U.S. 479 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Meese v. Keene, 481 U.S. 465 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 15

Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299 (1986) . . . . . . . . . . . . . . . . . . . . . 60-61

Mezibov v. Allen, 411 F.3d 712 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 31-32,35-39,47,56

Mitchell v. Street, 415 F.Supp.2d 490 (E.D.Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30,53

Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 57

Morrison v. Ayoob, 627 F.2d 669 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Mothershed v. Justices of the Supreme Court, 410 F.3d 602 (9th Cir. 2005) . . . . . . . . . . . 41,54

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) . . . . . . . . . 19,28-30,53

NAACP v. Button, 371 U.S. 415 (1963) . . . . . . . . . . . . . . . . . . . . . . . . 20,32-33,35,40,54-56

New York Times Co. v. Sullivan, 376 U.S. 254 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Nicholas v. Pa. State Univ., 227 F.3d 133 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Nike, Inc. v. Kasky, 539 U.S. 654 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 44-47

O'Donnell v. Yanchulis, 875 F.2d 1059 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 30,53

O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712 (1996). . . . . . . . . . . . . . 19-20,29

Olmstead v. United States, 232 F.3d 190 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994) . . . . . . . . . . . . . 16

Owens v. Rush, 654 F.2d 1370 (10th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35,56

Paff v. Kaltenback, 204 F.3d 425 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Pekin v. County of San Benito, 2006 WL 2474334 (N.D.Cal. Aug. 25, 2006) . . . . . . . . . . . . 39

Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192
    (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Perry v. Sinderman, 408 U.S. 593 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,29,42

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . 8-11,13-14

Pickering v. Bd. of Educ., 391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30,38,53

Poole v. County of Otero, 271 F.3d 955 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Power v. Summers, 226 F.3d 815 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Price v. Carroll, 2008 WL 170530 (D.Del. Jan. 17, 2008). . . . . . . . . . . . . . . . . . . . . . 12-13,18

Price v. Chaffinch, 2006 WL 131378 (D.Del. May 12, 2006) . . . . . . . . . . . . . . . . . . . . 44-46,48

Price v. Chaffinch, C.A.No. 04-956 (D.Del. May 15, 2006) (slip op.) . . . . . . . . . . . . . . . . . . 42

Putnam v. Adams Communication Corp., 1987 WL 13262 (D.Mass. June. 15, 1987) . . . . . . . 33

Relational Funding Corp. v. TCIM Services, Inc., 2002 WL 655479
        (D.Del. April 18, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Republic of the Philippines v. Westinghouse Elec. Co., 949 F.2d 653 (3d Cir. 1991) . . . . . . . 16

Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Riggs v. City of Albuquerque, 916 F.2d 582 (10th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . 61

Rivera-Jimenez v. Pierluisi, 362 F.3d 87 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Rizzo v. Dawson, 778 F.2d 527 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35,56

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30,53

Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U.S. 47 (2006). . . . . . . . 29

Rutan v. Republican Party, 497 U.S. 62 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-45

San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Saucier v. Katz, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Sec'y of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947 (1984) . . . . . . . . . . . . . . . 64

Skehan v. Bd. of Trustees of Bloomsburg State Coll., 590 F.2d 470 (3d Cir. 1978) . . . . . . . . . 66

Smith v. Plati, 258 F.3d 1167 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,34,44

Springer v. Henry, 435 F.3d 268 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 57-58

Sterling v. Borough of Minersville, 232 F.3d 190 (3d Cir. 2000) . . . . . . . . . . 18,22-23,25-26,53

Stillman v. C.I.A., 319 F.3d 546 (D.C.Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

<u>Stillman v. Dept. of Def.</u>, 209 F.Supp.2d 185 (D.D.C. 2002)  . . . . . . . . . . . . . . . . . . . . . . . 41-42

<u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . 51

<u>Suppan v. Dadonna</u>, 203 F.3d 228 (3d Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44-46,48

<u>Swartzwelder v. McNeilly</u>, 297 F.3d 228 (3d Cir. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . 48,63

<u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002)  . . . . . . . . . . . . . . . . . . . . . . . . 8-11,17-18

<u>Taylor v. Ky. State Bar Assoc.</u>, 424 F.2d 478 (6th Cir. 1970) . . . . . . . . . . . 33-34,36-37,39,43,55

<u>Thomas v. Collins</u>, 323 U.S. 516 (1945)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,32

<u>Thomas v. Ind. Township</u>, 463 F.3d 285 (3d Cir. 2006)  . . . . . . . . . . . . . . . . . . . . . . . . 13,22,54

<u>Tillman v. Pepsi Bottling Group, Inc.</u>, 2005 WL 2127820 (D.Del. Aug. 30, 2005) . . . . . . . . . . 8

<u>Tolle v. Carroll Touch, Inc.</u>, 977 F.2d 1129 (7th Cir.1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Trade Waste Mgmt Ass'n, Inc. v. Hughey</u>, 780 F.2d 221 (3d Cir. 1985)  . . . . . . . . . . . . . . . . . 25

<u>U.S. v. American Library Ass'n., Inc.</u>, 539 U.S. 194 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>U.S. v. Lanier</u>, 201 F.3d 842 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36,39

<u>U.S. v. Lanier</u>, 520 U.S. 259 (1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51-52

<u>U.S. v. Smith</u>, 73 F.3d 1414 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36,39

<u>U.S. v. Westinghouse Elec. Corp.</u>, 638 F.2d 570 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . 23,25,53

<u>United Artists Theatre Circuit, Inc. v. Twp. of Warrington</u>, 316 F.3d 392 (3d Cir. 2003)  . . . . . 55

<u>United Mine Workers of America, Dist. 12 v. Ill. State Bar Ass'n</u>,
    389 U.S. 217 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29,40,54-55

<u>United Transp. Union v. State Bar of Mich.</u>, 401 U.S. 576 (1971)  . . . . . . . . . . . . . . . . 40-41,54

<u>Valley Forge Christian Coll. v. Ams. United for Sep. of Church & State, Inc.</u>,
    454 U.S. 464 (1982)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

<u>Walters v. Nat'l Assoc. of Radiation Survivors</u>, 473 U.S. 305 (1985)  . . . . . . . . . . . . . . . . . . . 40

<u>Warth v. Seldin</u>, 422 U.S. 490 (1975)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Washington v. County of Rockland, 373 F.3d 310 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 44

Watters v. Churchill, 511 U.S. 661 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Watts v. Day, 129 Fed.Appx. 227 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

We, Inc., v. City of Phila., 174 F.3d 322 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Weston v. Pa., 251 F.3d 420 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10,13,18

White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Wilson v. Layne, 526 U.S. 603 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22,51

Woodruff v. Hamilton Twp. Pub. Schs., 2007 WL 1876491 (D.N.J. June 26, 2007) . . . . . . . . 17

Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,34

Wright v. City of Phila., 409 F.3d 595 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Zamboni v. Stamler, 847 F.2d 73 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

## **Constitution, Statutes, and Rules**

U.S. Const, Amend I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Const, Amend XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

10 Del. C. § 4010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,65

10 Del. C. § 4011(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

10 Del. C. § 4011(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

Fed.R.Civ.P. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed.R.Civ.P. 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed.R.Civ.P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed.R.Civ.P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed.R.Civ.P. 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed.R.Civ.P. 84. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sixth Cir. R. 206(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36,39

## **Other Authorities**

F. Harper & F. James, Law of Torts § 25.1 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

## **NATURE AND STAGE OF THE PROCEEDINGS**

This is a civil action for compensatory and punitive damages and for injunctive relief for violation of plaintiff's right to the privacy of his personal medical information under the Fourteenth Amendment, as well as retaliatory violations of plaintiff's rights under the First Amendment of the United States Constitution.  Plaintiff exercised his First Amendment rights to (1) speak out to the media and expose the illegal actions of corrupt public officials, (2) associate with his clients and file lawsuits against defendants, and (3) bring the bright light of public scrutiny upon the many misdeeds of corrupt public officials in a broken government where the system of checks and balances had failed.  Defendants immediately retaliated against him for his protected activities by releasing his personal and confidential medical information to the news media and the general public, and by attacking his integrity and character in numerous defamatory newspaper attack ads.  Plaintiff also asserts supplemental state law claims for defamation and invasion of privacy.  (Compl. at ¶ 1).

This case was filed on December 29, 2005.  (D.I. 1).  Because public corruption criminal cases then were pending against defendants Gordon and Freebery, this action was stayed on June 26, 2006.  (D.I. 15).  After defendants Gordon and Freebery entered guilty pleas to end their criminal cases in 2007, the nearly three year stay was lifted, and the parties stipulated to a briefing schedule on January 18, 2008.  (D.I. 23).  Then on March 25, 2008, defendants filed two motions to dismiss this case, asserting issues that should have been briefed three years ago.  (D.I. 26-29).

This is plaintiff's omnibus Answering Brief in opposition to defendants' motions to dismiss.

1

## SUMMARY OF THE ARGUMENT

1.  Under long established notice pleading standards, plaintiff has appropriately pled the conduct, time, place and persons involved in his claim to place the defendants on notice of the claims against them.

2.  Defendants Gordon and Freebery are not entitled to qualified immunity because they violated plaintiff's Fourteenth Amendment right to privacy as well as his First Amendment right to be free of retaliation, each of which was clearly established.

3.  Plaintiff has stated a cognizable claim for violation of his constitutional right to privacy under the Fourteenth Amendment because he possessed a strong privacy interest in his medical information, there was potential for much harm from its widespread dissemination, and there was no governmental interest in disclosure outweighing plaintiff's interest.

4.  Plaintiff also has stated a cognizable claim of retaliation for his protected activities under the First Amendment.  He criticized defendants in the news media, associated with his civil rights clients, vigorously advocated their unpopular causes and petitioned for redress of grievances through litigation.  Defendants' defamatory attack ads and widespread dissemination of plaintiff's medical information also would deter a person of ordinary firmness from engaging in such protected activity.

5.  Plaintiff has suffered an actual injury which can be redressed by his requested relief.  His claims are not moot because the damages, injunctions and declaratory judgment sought all are effective remedies.  Therefore, he has standing to bring his claims, and the Court has jurisdiction to adjudicate them.

6.  Plaintiff's state law claims for defamation and invasion of privacy against defendants Gordon and Freebery as private citizens are not barred by the County and Municipal

Tort Claims Act, 10 Del. C. § 4010 et seq., because their publishing of attack ads and dissemination of plaintiff's private medical information were acts that were not within the scope of their employment and were performed with willful and malicious intent.

7. Finally, the incumbents sued in their official capacity are proper defendants in this civil rights lawsuit because they are necessary for plaintiff to obtain both relief on the merits and attorneys' fees from the governmental defendant.

## STATEMENT OF FACTS

**A. Plaintiff.** Plaintiff Thomas S. Neuberger ("Neuberger") is a veteran civil rights attorney who has practiced law in Delaware and nationally for more than 33 years. He enjoys an excellent reputation. He recently completed a three year term on the Lawyers' Advisory Committee of the Judicial Council of the Third Circuit, a position to which he was appointed by Chief Judge Scirica. Neuberger is well known for being a dedicated civil rights attorney who represents the "little guy." He specializes in helping the small and in need stand up to the powerful and corrupt. (Compl. at ¶¶ 3, 9-17).

**B. Defendants.** Defendant Gordon was the County Executive of defendant New Castle County ("NCC"). (¶ 4). Defendant Freebery was the Chief Administrative Officer of NCC. (¶ 5). Defendants Coons and Singleton presently hold the positions of County Executive and Chief Administrative Officer, respectively, and are sued in their official capacities only. (¶¶ 6-7). Defendant NCC is a municipal corporation organized under the laws of the State of Delaware. (¶ 8).

**C. Plaintiff's Protected First Amendment Activity.**

**1. Speech to the Media and the Public Challenging Government Corruption and Illegality.** Neuberger actively and publicly spoke out to members of the news media and

3

challenged numerous instances of corruption, fraud, wrongdoing, illegality and breach of the public trust by defendants while holding public office.  In doing so, Neuberger sought to sound the alarm to the general public and electorate about defendants' illegal actions and breach of the public trust. (¶¶ 26-27).

**a. Defendants Were Enraged by this Speech to the Media and the Public.**  Defendants were humiliated, angered and enraged that Neuberger's speech to the public and the media was exposing their corrupt actions to the light of day and that they now would be held accountable by the electorate for their misdeeds.  Defendants carry a personal vendetta against plaintiff because of this and have told family, friends, political mentors, employees and others that they will do everything in their power to inflict injury on and destroy Neuberger.  (¶¶ 28-29).

**2. Filing of Numerous Lawsuits Challenging Government Corruption.**  Since the late 1990's, Neuberger also has associated with clients and filed numerous civil rights lawsuits challenging Gordon and Freebery's illegal actions and their corruption of the Executive Branch of NCC government.  (¶¶ 18-19).  Those lawsuits include the following (¶ 19):

- Downs v. Gordon, Freebery and New Castle County, C.A. No.99-210-MMS (D.Del.) (First Amendment free speech retaliation lawsuit by President of the Fraternal Order of Police challenging retaliation against him for refusal to engage in illegal activities at defendants' direction).

- Reyes and Hernandez v. Freebery, Cunningham and New Castle County, C.A. No.02-1283-KAJ (D.Del.) (Fourteenth Amendment discrimination lawsuit challenging institutional racism and racial profiling in the NCC Police Department and First Amendment retaliation against two Hispanic police officers).[1]

- Maloney and Rendina v. Gordon, Freebery and New Castle County, C.A. No.03-999-KAJ (D.Del.) (First Amendment retaliation lawsuit on behalf of two former high ranking administrative aids to defendants who (1) reported

_____

[1]  The docket in the Reyes case is attached at Tab C.

defendants' criminal activity in county government, (2) went to the FBI, IRS and U.S. Attorney, (3) wore the wire for the FBI and U.S. Attorney, and (4) testified truthfully before the criminal grand jury investigating defendants' corruption of county government).

- Riddell v. Gordon, Freebery, Cunningham, McAllister and New Castle County, C.A. No. 04-1201-KAJ (D.Del.) (First Amendment retaliation lawsuit on behalf of a County police officer and union official who challenged defendants and stood in the way of their illegal shenanigans).

- Tobin v. Gordon, Freebery, Cunningham, McAllister and New Castle County, C.A. No. 04-1211-KAJ (D.Del.) (First Amendment retaliation lawsuit on behalf of a County police officer who blew the whistle to the U.S. Attorney and grand jury about defendants' corruption of the police department and other illegal defense actions).

- Jamison v. Gordon, Freebery, Cunningham, McAllister and New Castle County, C.A.No. 04-1568 -KAJ (D.Del.) (First Amendment retaliation and age discrimination lawsuit on behalf of a police officer who refused to cover-up illegal activities in the police department).

### a. Defendants Were Enraged by the Filing of These Lawsuits.

Defendants were humiliated, angered and enraged by Neuberger's representation of these many clients and by the fact that he filed these lawsuits against defendants and their handpicked corrupt police chiefs. These lawsuits revealed widespread illegal activity by defendants and their corruption of the NCC Police Department, which only angered defendants even more.

Defendants carry a personal vendetta against plaintiff because of the filing of these lawsuits and have told family, friends, political mentors, employees and others that they will do everything in their power to inflict injury on and destroy Neuberger.  (¶¶ 22-25).

### D.  Defendants Retaliate Against Plaintiff.

### 1.  The Release of Neuberger's Private and Confidential Medical

**Information.**  During the course of a court proceeding in the Reyes case on January 15, 2004, defendants became aware of certain confidential and hitherto private medical information about

Neuberger.  Defendants were immediately barred by the U.S. District Court from disclosing, discussing or circulating this information in any way, shape or form.  Despite and in violation of this Court Order, defendants immediately widely disclosed, disseminated and circulated plaintiff's private confidential medical information throughout the State of Delaware.  (¶¶ 43-45).

          **a.  Release to the Media.**  For example, defendants released this information to the Delaware media and advised them that Neuberger was dying of a brain tumor and that this brain tumor was causing him to act erratically.  Neuberger subsequently received humiliating inquiries from members of the Delaware news media about this false statement.  At least one reporter told Neuberger that he had learned of this information only after defendants told him about it.  However, Neuberger was barred from responding by a Court Order in the <u>Reyes</u> case, the same Court Order which defendants chose to ignore and instead violated.  (¶¶ 46-48).

          **b.  Release Throughout County Government.**  Defendants also widely discussed and circulated Neuberger's private and confidential medical information throughout NCC government and with numerous other individuals.  For example, defendants regularly discussed Neuberger's private and confidential health information at County-wide Manager's Meetings.  (¶¶ 48-50).

          **c.  Defendants' Intent in Releasing This Private and Confidential Personal Medical Information.**  In releasing plaintiff's private and confidential medical information, defendants intended to intimidate, punish, prevent and deter Neuberger from engaging in the First Amendment protected activity discussed above.  (¶¶ 51, 82-84).

          **2.  The Defamatory Newspaper Attack Ads.**  As part of their calculated effort to retaliate against, intimidate and injure Neuberger, in January 2004, defendants also took out

numerous full page attack ads in local Delaware newspapers.  In these ads, defendants accused

Neuberger of a host of misconduct, including, *inter alia*, violating federal court orders, unethical

behavior and other wrongdoing.  Several local newspapers subsequently wrote stories about the

false accusations made against Neuberger in these ads.  As a result, these false accusations were

published to an audience of hundreds of thousands of readers. (¶¶ 34-35, 52).

> **a.  These Accusations Are False.**  Defendants published these accusations

despite actual knowledge of their falsity.  (¶¶ 36-38, 53-60).

> **b.  Defendants' Intent in Publishing These False Accusations.**  In

publishing these false accusations, defendants intended to intimidate, punish, prevent and deter

Neuberger from engaging in the First Amendment protected activity discussed above.  (¶¶ 39, 82-

84).

> **E.  The First Amendment Rights of Plaintiff and His Clients Have Been Chilled by**

**the Defense Retaliation.**  Because of defendants' retaliation, plaintiff has been chilled in his

ability to exercise his First Amendment rights.  As explicitly pled in the Complaint, plaintiff's

ability to advocate his viewpoint has been significantly affected by defendants' retaliation against

him.   In the same way, the rights of plaintiff's clients also have been injured and chilled by

defendants' retaliation against plaintiff. (¶¶ 75-78, 80-81).

<u>ARGUMENT</u>

I.     <u>STANDARD OF REVIEW</u>

> **A.  Introduction.**  The defense motions betray a fundamental misunderstanding of the

procedural posture of this case as well as the standard of review under which the Complaint must

be examined.  We are not in any post-trial briefing stage of the case, analyzing the most minute

detail of evidence in a trial record.  <u>Cf.</u> Fed.R.Civ.P. 59.  We are not at the summary judgment

stage, scouring the discovery record for evidence to match the prongs of our legal theories.  Cf.
Fed.R.Civ.P. 56.  Instead, we are at the motion to dismiss stage under Rule 12(b)(6) where Rule
8(a)(2)'s notice pleading standards apply.  As our District has repeatedly explained, "[w]hen
deciding a motion to dismiss for failure to state a claim, one must read Fed.R.Civ.P. 12(b)(6) in
conjunction with Fed.R.Civ.P. 8(a), which establishes the requirements for adequately pleading a
claim in federal court." Tillman v. Pepsi Bottling Group, Inc., 2005 WL 2127820, *6 (D.Del.
Aug. 30, 2005); Relational Funding Corp. v. TCIM Serv., Inc., 2002 WL 655479, *3 (D.Del.
April 18, 2002).  In a comprehensive, recent opinion, the Third Circuit recognized the same.
Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008).  Reading Rule 12 in conjunction
with Rule 8 is fatal to the defense claim that plaintiff has not adequately pled the elements of his
legal theories.

**B.  Rule 8(a)(2)'s "Extremely Lenient" Notice Pleading Standards.**

    **1.  Fair Notice is All That is Required.**  For more than fifty years, the United
States Supreme Court has repeatedly and explicitly rejected the heightened pleadings standards
defendants seek to foist upon the Court and instead unanimously has reaffirmed its long time
holding that Fed.R.Civ.P. 8(a)(2) indeed means what it very clearly says and that the Complaint
must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon
which it rests." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002); accord Bell Atl. Corp.
v. Twombly, 127 S.Ct. 1955, 1974 (2007); Leatherman v. Tarrant County Narcotics Intelligence
and Coordination Unit, 507 U.S. 163, 165-68 (1993);  Evancho v. Fisher, 423 F.3d 347, 351-353
(3d Cir. 2005).  The Third Circuit has explained that this is an "extremely lenient" standard.
Weston v. Pa., 251 F.3d 420, 430 (3d Cir. 2001).  As the Third Circuit recently noted, motion to
dismiss pleading standards "can be reduced to this proposition: Rule 8(a)(2) has it right."

Phillips, 515 F.3d at 234.  The same Court warned against taking "an unduly crabbed reading of [a plaintiff's] complaint."  Id. at 237.

       **a.  The Supreme Court's Illustration of Fair Notice.**  The nature and extent of these "extremely lenient," Weston, 251 F.3d at 430, standards of notice pleading are best illustrated by review of the example cited by the Supreme Court itself in the context of addressing a Rule 12(b) motion to dismiss.  In Swierkiewicz, the Court explained that Rule 8(a)'s simplified notice pleading standards are "exemplified by the Federal Rules of Civil Procedure Forms" which are "sufficient under the rules" in all respects.  534 U.S. at 513 n.4; accord Fed.R.Civ.P. 84.  The Supreme Court looked to Form 9, which sets forth a form complaint for negligence which states in relevant part:

> On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway.

Swierkiewicz, 534 U.S. at 513 n.4.  Under Rule 8(a)'s notice pleading standard, this one sentence allegation on liability is sufficient to withstand a Rule 12(b) motion to dismiss.  Id.  In the same way, the first paragraph of plaintiff's Complaint herein is itself sufficient to withstand the defense motion.  It states:

> This is a civil action for compensatory and punitive damages and for injunctive relief for violation of plaintiff's right to the privacy of his personal medical information under the Fourteenth Amendment, as well as retaliatory violations of plaintiff's rights to freedom of association, free speech and to petition the government for redress of grievances under the First Amendment of the United States Constitution.  Plaintiff exercised his First Amendment rights to (1) associate with his clients, (2) speak out and expose the illegal actions of corrupt public officials, and (3) bring the bright light of public scrutiny upon the many misdeeds of corrupt public officials in a broken government where the system of checks and balances had failed.  Defendants then immediately retaliated against plaintiff for his protected activities by releasing his personal and confidential medical information to the news media and the general public, and by attacking his integrity and character in numerous defamatory newspaper attack ads.  (¶ 1).

These allegations alone are sufficient to withstand the defense motions.

        **b. This Simplified Pleading System is Intended to Focus Litigation on the Merits of a Claim.**  As the <u>Swierkiewicz</u> Court explained, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," 534 U.S. at 514, rather than move to dismiss as occurred <u>Swierkiewicz</u>, <u>id.</u> at 508 n.1, the proper approach is to instead "move for a more definite statement under Rule 12(e) before responding." <u>Id.</u> at 514.  Once the defendant is on notice of the claims against them, "claims lacking merit may be dealt with through summary judgment under Rule 56." <u>Id.</u>

    As the Supreme Court explained, this is the proper approach because the "liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." <u>Id.</u>  Notice pleading "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." <u>Id.</u> at 512.

        **2. A Plaintiff Need Not Plead Facts to Match The Evidentiary Elements of His Legal Theory.**  As the Third Circuit held earlier this year, "[s]tandards of pleading are not the same as standards of proof." <u>Phillips</u>, 515 F.3d at 246.  As the same Court has previously explained, "[c]omplaints need not plead law or match facts to every element of a legal theory." <u>Weston</u>, 251 F.3d at 429.  In our District's words, "the federal rules do not require the plaintiffs to plead law or match facts to every element of a legal theory." <u>Compaq Computer Corp. v. Inacom Corp.</u>, 2001 WL 789408, at *3 (D.Del. July 12, 2001) (internal punctuation omitted).  The Supreme Court has held the same.  <u>See</u> <u>Swierkiewicz</u>, 534 U.S. at 511-12 (rejecting the defense claim that a plaintiff need even plead the elements of a prima facie employment

discrimination claim, because that is an evidentiary standard, not a pleading standard).[2]  In the

same way, plaintiff is not required to plead each prong of any relevant evidentiary paradigms

required to prove his case.  Rather than plead evidentiary elements, the Third Circuit has "held

that a civil rights complaint is adequate where it states the conduct, time, place, and persons

responsible." Evancho, 423 F.3d at 353.  In other words, all that is required is fair notice of the

claim asserted which the Complaint clearly and abundantly provides.

> **3.  A Plaintiff Need Not Plead a Legal Theory At All.**  In the same way, "Rule

8(a)(2) does not require a claimant to set forth any specific legal theory justifying the relief

sought on the facts alleged." Compaq, 2001 WL 789408, *3; accord Kirkpatrick v. Merit

Behavioral Care Corp., 128 F.Supp.2d 186, 191 (D.Vt. 2000). "Under the federal rules, as long

as the issue is pled, a party does not have to state the exact theory of relief in order to obtain a

remedy." Bechtel v. Robinson, 886 F.2d 644, 649 (3d Cir. 1989).[3]  This is because a "pleading is

a vehicle to facilitate a proper decision on the merits and not a game of skill in which one

misstep by counsel may be decisive." Id.  As one court has explained -

> a complaint sufficiently raises a claim even if it points to no legal
> theory or even if it points to the wrong legal theory as a basis for
> that claim, as long as relief is possible under any set of facts that
> could be established consistent with the allegations.

---

[2]  Notably, in Twombly, 127 S.Ct. at 1973, the Supreme Court declined to overrule Swierkiewicz and its application in the civil rights context.  In so holding, the Court explained that Swierkiewicz reaffirmed the longstanding rules of pleadings by rejecting the use of "heightened pleading standard[s]" in civil rights cases.  Id.  As the Third Circuit later explained, even after Twombly, "the notice pleading standard of Rule 8(a)(2) remains intact." Phillips, 515 F.3d at 233.

[3]  Accord Al Makaaseb General Trading Co. v. U.S. Steel International, Inc., 412 F.Supp.2d 485, 500 (W.D.Pa. 2006); see Connecticut General Life Ins. Co. v. Universal Ins. Co., 838 F.2d 612, 622 (1st Cir. 1988) ("Under Rule 8 ... [it] is not necessary to set out the legal theory on which the claim is based."); Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 600 (2d Cir.1991) (federal pleading is by statement of claim, not by legal theory).

Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir.1992) (internal punctuation omitted). In light of this, it is not surprising that "claims need not specify in exact detail every possible theory of recovery, so long as they give fair notice of the claims to the defendants." Bibbins v. City of Baton Rouge, 489 F.Supp.2d 562, 577 (M.D.La. 2007).  Key here is fair notice of the claim.  The legal theories themselves may change or develop during the discovery process as the facts play out.  "The legal theories upon which a plaintiff will rely at trial may be developed during the discovery process, refined at pretrial conferences, and tested by motion for summary judgment." Kirkpatrick, 128 F.Supp.2d at 191.

**4. All a Complaint Must Do is State the Conduct, Time, Place and Persons Responsible.**  As stated above, rather than plead specific facts and legal theories, our Circuit has repeatedly "held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." Evancho, 423 F.3d 347; see, e.g. Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pa. State Police, 570 F.2d 86, 89 (3d Cir. 1978); Price v. Carroll, 2008 WL 170530, *9 (D.Del. Jan. 17, 2008).

In Hall, the Third Circuit reversed the district court's Rule 12(b)(6) dismissal of a civil rights complaint.  570 F.2d at 88.  The Court held that the complaint was sufficient to withstand the 12(b)(6) attack because -

> the plaintiff has alleged the conduct violating his rights (racially discriminatory activity), time (March 17, 1976), place (King of Prussia) and those responsible (various state and bank officials).

Id. at 89.  As a result, the Court held that the complaint "is sufficiently precise to give notice of the claims asserted and withstand the defendants' challenge to its filing." Id.  Similarly, in Boykins, the Third Circuit affirmed this precedent, holding that a civil rights complaint which alleged the conduct (racially motivated expulsion from the drill team), the time (1975), the place

12

(Ambridge Area School District high school) and the persons responsible (the coach and school administrators), was legally sufficient and that "no more is required." 621 F.2d at 80. This is still the law today. See Evancho, 423 F.3d 347 (citing Hall and Boykins); Price, 2008 WL 170530, *9 (same). Accordingly, as the Evancho opinion makes clear, to provide fair notice under Rule 8(a), a civil rights complaint merely must state the "conduct, time, place and persons involved. 423 F.3d at 553.

### 5. These "Extremely Lenient" Pleading Standards Apply in the Civil Rights Context.

As the Third Circuit has explained, "[d]iscrimination and other civil rights claims are clearly subject to notice pleading." Weston, 251 F.3d at 429. Less than three months ago, our Circuit applied these notice pleading standards in the civil rights context. See Phillips, 515 F.3d 224. "[I]n federal civil rights cases, a claimant does not have to set out in detail the facts upon which a claim is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim." Weston, 251 F.3d at 428; see Evancho, 423 F.3d at 351-353 (surveying the law and rejecting the defense claim that Rule 8 requires heightened pleadings standards for civil rights cases).

> The marching orders of the Supreme Court in both Leatherman and Swierkiewicz are clear: the notice pleading standard of Rule 8(a) applies in all civil actions, unless otherwise specified in the Federal Rules or statutory law. There is no federal rule or statute that prescribes a heightened pleading standard in § 1983 civil rights actions in which the defendant pleads a qualified immunity defense. Hence, we now make clear that which was implied in Evancho: a civil rights complaint filed under § 1983 against a government official need only satisfy the notice pleading standard of Rule 8(a), *regardless of the availability of a qualified immunity defense*.

Thomas v. Ind. Twp., 463 F.3d 285, 295 (3d Cir. 2006) (emphasis added). Once again, notice is the key.

**C. Rule 12(b)(6) Motion to Dismiss Standards.** In light of this, defendants clearly have a substantial burden to carry in seeking dismissal of the Complaint under Fed.R.Civ.P. 12(b)(6). Courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 233. "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (internal punctuation omitted). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. As the Third Circuit explained, motion to dismiss pleading standards "can be reduced to this proposition: Rule 8(a)(2) has it right." Id.

**D. If a Complaint Fails to State a Claim, the District Court Must Allow Amendment.** "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Id. at 236; accord id. at 245. "Moreover, we have instructed that a district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." Id. at 245. The "court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." Id. As our Circuit recently explained, not doing so is reversible error. Id. at 246.

**E. Matters Outside the Pleadings May Not Be Considered.** Nearly all of defendants' Statement of Facts consists of citations to documents or other purportedly factual matters not contained in or relied upon in the Complaint. Such items are improper and may not be

14

considered in deciding a motion to dismiss. "It is black-letter law that a motion to dismiss for failure to state a claim ... is to be evaluated only on the pleadings." Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 257 (3d Cir. 2004) (internal punctuation omitted). In the 12(b)(6) context, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). An exception to this general rule is that a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). In this regard, plaintiff does not object to the inclusion of one of the several newspaper advertisements that defendants attached as Exhibit 2 to their motion because a portion of plaintiff's claims are based upon it.

Plaintiff however objects to the remainder of the defense exhibits and other documents with which they have attempted to supplement the record. Although an interesting and well-written newspaper article about defendants' many crimes, Exhibit 1 is entirely irrelevant to any issue in our present briefing and was not relied upon in the Complaint. Exhibit 2 is merely a list of lawsuits that plaintiff has filed in U.S. District Court. Indeed, the list would be even longer if the dockets of the State of Delaware court system are reviewed. That an attorney files lawsuits should come as no surprise to anyone. Its inclusion is merely an attempt to inject selective factual materials into the record while avoiding the apparent unpleasantness of mutual discovery. Again, it was not relied upon and is irrelevant to the issues in the Complaint. Exhibit 4 is yet another well-written newspaper article, this one a profile on plaintiff which was written one year after the events in our case took place. Again, it is irrelevant and yet another effort to distort the Standard of Review and inject highly selective fact based materials into the Complaint.

15

Continuing, defendants improperly cite to and rely heavily upon documents and pleadings filed in the Reyes case. However, they have not attached any of these documents to their motion. As defendants have failed to mention, none of those documents are part of the public record in Reyes due to the fact that, following defendants' request, the District Court ordered nearly the entire substantive docket in that case sealed from December 2003 until the present. (See Tab C - Reyes docket).[4] Thus, given that all of those documents are sealed, they are not a matter of public record and so fall outside the scope of the exception upon which the defense seeks to rely. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)("We may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."). More importantly, because these matters arise in a different court case, they may not be considered in this court case, a separate legal action. Id.[5]

**F. Novel Theories of Law Should Not Be Addressed at the Motion to Dismiss Stage.** Even if the Court finds any of plaintiff's legal theories to be novel, the defense motion should be denied. As Chief Judge Robinson has explained, "courts should be reluctant to grant a

---

[4] Defendants' highly selective quotations from plaintiff's affidavit in that case violate the very sealing order in Reyes which they themselves initiated. In light of this, plaintiff expects defendants will now move to hold themselves in contempt in the Reyes case.

[5] As to the defense claim that plaintiff somehow violated a court Order in Reyes, first, despite more than five years of litigation on this very issue, several district court judges, two Third Circuit appeals and several written opinions, defendants have yet to convince any judge that plaintiff violated any court Order. Five years later, it is clear that defendant high public officials continue to be unhappy that the press was alert enough to exercise their common law and First Amendment rights of access to summary judgment judicial records on file with the district court. See, e.g. Republic of the Philippines v. Westinghouse Elec. Co., 949 F.2d 653, 661 (3d Cir. 1991) ("papers filed in connection with a motion for summary judgment are not entitled to be shielded from public access."); Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 164 (3d Cir. 1993) ("there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith.").

motion to dismiss when the claim in question asserts a novel legal theory of recovery.  Novel

theories of recovery are best tested for legal sufficiency in light of actual, rather than alleged

facts." Buckhead Am. Corp. v. Reliance Capital Group, Inc., 178 B.R. 956, 961 (D.Del. 1994);

accord Woodruff v. Hamilton Twp. Pub. Schs., 2007 WL 1876491, *5 (D.N.J. June 26, 2007);

Branch v. Fed. Deposit Ins. Corp., 825 F.Supp. 384, 397 (D.Mass. 1993).

## II.    PLAINTIFF HAS APPROPRIATELY PLED THE CONDUCT, TIME, PLACE AND PERSONS INVOLVED IN HIS CLAIMS TO PLACE THE DEFENDANTS ON NOTICE OF THE CLAIMS AGAINST THEM.

**A.  The Core of Operative Facts.**  The Counts of Plaintiff's Complaint arise from the

same protected activity and adverse actions.  His claims can be briefly summarized as follows:

> Since 1999, plaintiff has filed numerous lawsuits against
> defendants, challenging their corrupt reign over NCC government.
> Plaintiff also has repeatedly exposed and spoken out to the
> Delaware media about defendants' illegal actions and breach of the
> public trust.  Defendants were angered and displeased by plaintiff's
> actions and subsequently retaliated against him by: (1) widely
> disseminating his personal confidential medical information; (2)
> falsely telling numerous persons that he was dying of a brain tumor
> which was the cause of purportedly erratic behavior; and (3) taking
> out full page attack ads in local newspapers, falsely accusing him
> of a host of wrongdoing.

Review of defendants' lengthy briefs makes it clear that although they do not like or agree with

plaintiff's claims, they clearly have "fair notice of what the plaintiff's claim is and the grounds

upon which it rests." Swierkiewicz, 534 U.S. at 512.

**B.  The Many Legal Claims That Flow From These Facts.**  Although it is not

necessary under the standard of review, see Compaq, 2001 WL 789408, *3 ("Rule 8(a)(2) does

not require a claimant to set forth any specific legal theory justifying the relief sought on the facts

alleged."); Bechtel, 886 F.2d at 649 n.9 ("[u]nder the federal rules, as long as the issue is pled, a

party does not have to state the exact theory of relief in order to obtain a remedy."), given the

17

sheer number of billable hours and taxpayer dollars that went into crafting the defense's opening briefs in this time of tight County purse strings, plaintiff will briefly touch upon the wide range of legal theories that are implicated by the undisputed set of factual allegations at issue in this case.

      **1. Fourteenth Amendment - Right to Privacy.** "The right not to have intimate facts concerning one's life disclosed without one's consent is a venerable right whose constitutional significance we have recognized in the past." C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 179 (3d Cir. 2005) (internal punctuation omitted) (citing cases). "We have long recognized the right to privacy in one's medical information." Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001). Our Circuit has held that "medical information is well within the ambit of materials entitled to privacy protection, in part because it concerns intimate facts of a personal nature." Sterling v. Borough of Minersville, 232 F.3d 190, 195 (3d Cir. 2000) (internal punctuation omitted) (quoting U.S. v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980)).

      **a. Evidentiary Standards Do Not Apply at the Motion to Dismiss Stage.** As explained in Argument **I.B.2** above, a plaintiff is not required to plead the evidentiary elements of his cause of action. See Phillips, 515 F.3d at 246 ("Standards of pleading are not the same as standards of proof"); Swierkiewicz, 534 U.S. at 511-12 (a plaintiff need not plead the elements of a prima facie case); Weston, 251 F.3d at 429 ("[c]omplaints need not plead law or match facts to every element of a legal theory."); Compaq, 2001 WL 789408, *4 ("the federal rules do not require the plaintiffs to plead law or match facts to every element of a legal theory."). In the same way, a civil rights complaint will withstand a 12(b)(6) attack when it states the conduct, time, place and persons responsible. See Evancho, 423 F.3d at 353; Boykins, 621 F.2d at 80; Hall, 570 F.2d at 89; Price, 2008 WL 170530, *9.

**b. The Conduct, Time, Place and Persons Responsible.**  The conduct and time frame at issue involve the defendants' widespread dissemination in January 2004 of plaintiff's private, personal and confidential medical information to the Delaware news media and at County-wide Manager's Meetings.  (¶¶ 42-51).  The place is New Castle County, Delaware.  The persons responsible for all of these actions are Gordon and Freebery.  (¶¶ 44-46, 48-50).  Accordingly, the claim for violation of the constitutional right to privacy is adequately pled, and defendants are on notice of this claim against them.

**2.  First Amendment Retaliation - Speech, Petition and Association.**[6]

Plaintiff's right to be free of retaliation for the exercise of his First Amendment rights is well recognized.  In the Supreme Court's words, "[o]fficial reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right."  Hartman v. Moore, 547 U.S. 250, 256 (2006). "The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).  It has long been the law that "an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." Id. at 161.  This is known as the "unconstitutional conditions" doctrine. Id. at n.12.[7]  As far as it relates to the First Amendment,

---

[6]  Given the interconnected and sometimes overlapping nature of many of the First Amendment freedoms, this section addresses Counts II-IV.  See, e.g. Healy v. James, 408 U.S. 169, 181 (1972) (noting that the freedom to associate arises from the freedoms of speech, assembly and petition).

[7]  See, e.g. Perry v. Sinderman, 408 U.S. 593, 597 (1972); Bd. of County Commissioners, Wabaunsee County v. Umbehr, 518 U.S. 668, 674 (1996); O'Hare Truck Service, Inc. v. City of

"motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual." Id. at 161.

For at least forty-five years, the Court has held that "the First Amendment ... protects vigorous advocacy, certainly of lawful ends, against governmental intrusion." NAACP v. Button, 371 U.S. 415, 429 (1963)(citing Thomas v. Collins,323 U.S. 516, 537 (1945); Herndon v. Lowry, 301 U.S. 242 (1937)).  Numerous courts have held that attorneys may bring First Amendment claims arising from retaliation against them because of their vigorous advocacy of unpopular causes that challenge the powers that be.  As Judge Garth explained prior to his elevation to the Third Circuit, retaliatory actions taken by government officials against a law firm and its attorneys "to harass and intimidate [them] for their advocacy of unpopular causes ... constitute[s] a violation of [their] First Amendment rights."  Freeman and Bass, P.A. v. State of N.J. Comm'n of Investigation, 359 F.Supp. 1053, 1056 (D.N.J. 1973).  In the Fifth Circuit's repeated words -

> [s]ubjecting an attorney to criminal investigation and prosecution with the substantial motivation of dissuading him from associating with and representing clients opposing the IRS would violate the First Amendment.

Izen v. Catalina, 398 F.3d 363, 367 (5th Cir. 2005); Izen v. Catalina, 382 F.3d 566, 571 (5th Cir. 2004).  In the Tenth Circuit's words, "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."  Smith v. Plati, 258 F.3d 1167, 1176 (10th Cir. 2001) (quoting Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)).  As the Supreme Court recently explained, it is clear that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for

_____

Northlake, 518 U.S. 712, 717 (1996).

speaking out." <u>Hartman</u>, 547 U.S. at 256.

      **a.  Evidentiary Standards Do Not Apply at the Motion to Dismiss**

**Stage.**  As explained above, a plaintiff is not required to plead the evidentiary elements of his

cause of action.  Instead, a civil rights complaint will withstand 12(b)(6) attack when it states the

conduct, time, place and persons responsible.

      **b.  The Conduct, Time, Place and Persons Responsible.**  Here, the

conduct and time frame at issue involve plaintiff: (1) speaking out against defendants and their

illegal actions in the Delaware media; (2) associating with numerous NCC employees, taking

them on as clients; and (3) filing public corruption and other lawsuits against defendants, all from

1999 to 2004.  The conduct also includes the retaliatory actions of defendants who in January

2004: (1) widely disclosed plaintiff's private, personal and confidential medical information to

the Delaware media; (2) falsely claimed that plaintiff was dying of a brain tumor that was

purportedly causing him to act erratically; and (3) took out defamatory attack ads in numerous

local newspapers falsely accusing plaintiff of violating federal court Orders, unethical conduct

and other wrongdoing. (¶¶ 18-54). Again, the place is New Castle County, Delaware, and the

persons responsible for all of these actions are Gordon and Freebery.  (¶¶ 44-46, 48-50).

Accordingly, the claims for First Amendment retaliation are adequately pled, and defendants are

on notice of these claims against them.

**III.  DEFENDANTS GORDON AND FREEBERY ARE NOT ENTITLED TO
QUALIFIED IMMUNITY.**

      **A.  Introduction.**  Qualified immunity is a two part inquiry.  <u>Atkinson v. Taylor</u>, 316

F.3d 257, 261 (3d Cir. 2003).  First, "[t]aken in the light most favorable to the party asserting the

injury, do the facts alleged show the [defendants'] conduct violated a constitutional right?"  <u>Id.</u>

Next, the court must next decide whether the right allegedly violated was a clearly established

21

one.  Wilson v. Layne, 526 U.S. 603, 609 (1999).

**B.  The Facts Show That Defendants Violated Plaintiff's Constitutional Rights.**  As

explained in Arguments I and II above, under the Standard of Review, plaintiff has properly pled

the conduct, time, place and persons responsible for the constitutional violations against him.

Without waiver of the aforementioned arguments, out of an abundance of caution, plaintiff will

proceed to address the merits of his legal theories, even though federal notice pleading standards

do not require it.  See Thomas v. Ind. Twp., 463 F.3d 285, 295 (3d Cir. 2006) ("a civil rights

complaint filed under § 1983 against a government official need only satisfy the notice pleading

standard of Rule 8(a), regardless of the availability of a qualified immunity defense.").

**1.  Fourteenth Amendment Right to Privacy.**

**a.  The Basics.**  "[T]he privacy right [is] the right to be let alone–the most

comprehensive of rights and the right most valued by civilized men." Sterling, 232 F.3d at 193

(quoting Olmstead v. United States, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting) (internal

punctuation omitted)).  Accordingly -

> [o]ur jurisprudence takes an encompassing view of information
> entitled to a protected right to privacy.  The right not to have
> intimate facts concerning one's life disclosed without one's
> consent is a venerable one whose constitutional significance we
> have recognized.

Id. at 195 (internal punctuation omitted).  Thus, "[t]o protect that right, every unjustifiable

intrusion of the government upon the privacy of an individual ... must be deemed a constitutional

violation." Id. at 193 (internal punctuation omitted). The Third Circuit has recognized that "the

state has a significant interest in protecting the venerable privacy right ... not to have intimate

facts concerning one's life disclosed without one's consent."  Id. at 195 (internal punctuation

omitted).  This particular subset of the right to privacy also is known as the constitutional "right

22

to confidentiality." Doe, 257 F.3d at 317 n.5.

"An individual has a constitutional right to privacy which protects the individual interest in avoiding disclosure of personal matters." Id. at 315. "When the information is inherently private, it is entitled to protection." Fraternal Order of Police, Lodge No. 5 v. City of Phila., 812 F.2d 105, 116 (3d Cir. 1987). "The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." Sterling, 232 F.3d at 195. As our District has held, "[a]n improper disclosure by state actors of properly obtained confidential information may support a § 1983 invasion of privacy claim." Cooper v. Kearney, 2005 WL 3312823, at *1 (D.Del. Dec. 7, 2005) (emphasis added) (citing Faison v. Parker, 823 F.Supp. 1198, 1201 n.3 (E.D.Pa.1993); Doe v. Borough of Barrington, 729 F.Supp. 376, 383-85 (D.N.J.1990)).

**b.  Plaintiff Has a Strong Privacy Interest in the Confidentiality of His Personal Medical Information.** "[M]edical information is 'well within the ambit of materials entitled to privacy protection,' in part because it concerns intimate facts of a personal nature." Sterling, 232 F.3d at 195 (quoting Westinghouse Elec., 638 F.2d at 577). Thus, "the right to medical privacy ... is legally cognizable under the Due Process Clause[.]" Citizens for Health v. Leavitt, 428 F.3d 167, 177 (3d Cir. 2005). Therefore, "it is undisputed that a violation of a citizen's right to medical privacy rises to the level of a *constitutional* claim ... when that violation can properly be ascribed to the government." Id. (emphasis in original); see C.N., 430 F.3d at 179 (citing numerous cases where the Third Circuit has found medical information to be protected by the right to privacy).

The privacy interest in medical information "is particularly strong [where there is a] stigma, potential for harassment, and 'risk of much harm from non-consensual dissemination of

23

the information.'" <u>Doe v. Delie</u>, 257 F.3d at 315 (quoting <u>Doe v. Southeastern Pa. Transp. Auth.</u>, 72 F.3d 1133, 1140 (3d Cir. 1995)). In <u>Doe v. Delie</u>, the Third Circuit held that "[i]t is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information." 257 F.3d at 317.

Here too, the existence of plaintiff's brain tumor was information of the most personal kind. Though defendants now flip-flop and characterize it as a "mundane malad[y,]" (<u>see</u> NCC OB at 28), they previously advised members of the Delaware news media that plaintiff was dying from the brain tumor, with the express intent to injure plaintiff and retaliate against him. (¶¶ 46, 51). Thus, such a potentially terminal illness clearly was a serious medical condition that no reasonable physician would characterize as unimportant or mundane.

Furthermore, the thought of a tumor affecting such a vital organ as the brain certainly carries with it a severe stigma for an attorney in private practice whose very livelihood depends upon members of the public thinking enough of him to come to him for advice. This stigma was magnified by the fact that defendants falsely told the media that plaintiff's tumor was causing him to act erratically. (¶ 46). While the public may accept an attorney with a less serious ailment affecting a less vital part of the body, such as a back problem or a limp from a childhood fall, most consumers would neither seek out nor retain a lawyer with a serious medical condition such as a brain tumor that is allegedly caused him to act erratically. Thus, there was a risk of much harm from non-consensual dissemination of its existence, and plaintiff has a paramount interest in protecting against this dissemination.

The defense efforts to blame plaintiff's honorable co-counsel in the <u>Reyes</u> case, Martin Haverly, Esquire, for the disclosure do not hold up to scrutiny. First, Mr. Haverly informed the

Court in <u>Reyes</u> of plaintiff's then recent health problems during a teleconference which the Court

Ordered sealed, on the record, and explicitly warned the parties to ensure that none of what had

been discussed or revealed therein ended up in the press.  The docket reflects the sealing. (<u>See</u>

Tab C - <u>Reyes</u> Docket at D.I. 86).  More fundamentally, it was not Mr. Haverly who called up

numerous reporters from throughout the Delaware media and falsely told them that plaintiff was

allegedly dying of a brain tumor that was causing him to act erratically. It was not Mr. Haverly

encouraging those reporters to make intrusive and unwelcome calls to plaintiff during that time

of personal challenge.  It was not Mr. Haverly who jumped up in front of County-Wide Managers

meetings and expressed overwhelming joy that plaintiff was dying.  Instead, as the Complaint

alleges (¶¶ 44-50), and discovery will reveal, that was defendants.

**c. There Was No Governmental Interest in Disclosure Outweighing**

**Plaintiff's Privacy Interest.**  Of course, "the right is not absolute." <u>Sterling</u>, 232 F.3d at 195.

Rather, "[d]isclosure may be required if the government interest in disclosure outweighs the

individual's privacy interest." <u>Fraternal Order of Police</u>,, 812 F.2d at 109 (citing <u>Trade Waste</u>

<u>Mgme. Ass'n, Inc. v. Hughey</u>, 780 F.2d 221, 234 (3d Cir. 1985); <u>Westinghouse Elec.</u>, 638 F.2d

at 577)); <u>accord</u> <u>Sterling</u>, 232 F.3d at 195.  Thus, under this balancing test,

> [t]he factors which should be considered in deciding whether an
> intrusion into an individual's privacy is justified are [1] the type of
> record requested, [2] the information it does or might contain, [3]
> the potential for harm in any subsequent nonconsensual disclosure,
> [4] the injury from disclosure to the relationship in which the
> record was generated, [5] the adequacy of safeguards to prevent
> unauthorized disclosure, [6] the degree of need for access, and [7]
> whether there is an express statutory mandate, articulated public
> policy, or other recognizable public interest militating toward
> access.

<u>Fraternal Order of Police</u>, 812 F.2d at 110.  "[T]he first five factors of the test .... account for the

individual's privacy expectation while the final two factors account for the governmental interest

in disclosure." <u>C.N.</u>, 430 F.3d at 181.  When this test is applied, "[p]ublic health or like public

concerns may justify access to [medical] information an individual may desire to remain

confidential." <u>Sterling</u>, 232 F.3d at 195.

   Not surprisingly, defendants have utterly failed to identify any public concern that

justified any disclosure of plaintiff's personal and confidential medical information.  The

information at issue is the existence of plaintiff's brain tumor, information of the most personal

and private kind which carried with it a great potential for harm by any subsequent disclosure.

As described above, the injury from the disclosure is apparent.  Moreover, plaintiff's relationship

with defendants Gordon and Freebery has gone from bad to worse as a result of their

unauthorized disclosure of his medical information.  Indeed, this very lawsuit stems from their

actions.  There clearly were adequate safeguards in place to prevent unauthorized disclosure

because the information only arose during a private teleconference with the presiding Judge and

the attorneys, the transcript of which the Court immediately ordered sealed.  Plaintiff did not

consent to the information being disclosed beyond the non-public teleconference.

   It is undisputed that defendants released and widely circulated plaintiff's personal and

confidential medical information in January 2004.  But, ignoring the apparently inconvenient

Standard of Review, defendants now claim that because plaintiff responded to a reporter's

questions about the status of his health one year later during a January 2005 interview, somehow

they are absolved of their violation of plaintiff's right to privacy twelve months earlier.  Yet the

defense fails to address the fact that they are the ones who let the cat out of the bag in January

2004, and were the cause of numerous unpleasant and unwelcome telephone calls over the next

twelve months from reporters asking about his private health problems.  But for defendants'

release of his personal and confidential medical information in January 2004, the reporter would

not have known of it to ask questions about it one year later in January 2005. That plaintiff

eventually sought, as is his duty, to mitigate the damage being done to him by addressing the

matter head on in response to a reporter's questioning in January 2005, is irrelevant to the issue

of whether defendants violated his constitutional right to privacy in January 2004, by their

widespread circulation of this previously unknown information throughout the State of Delaware.

Defendants also claim that plaintiff discussed his personal medical problems and a reporter wrote

a newspaper article about them in December 2003. (NCC OB at 27 n. 135). Not surprisingly,

defendants neglected to attach the cited article containing this purportedly key evidence. To aid

in the Court's inquiry, plaintiff has tracked down the article in question and it is attached at Tab

D. Not surprisingly, review of the article reveals no such discussion.

      Finally and most significantly, defendants have offered nothing on their side of the scale.

They have abandoned the field. Defendants have failed to point to any articulated public policy

or recognizable public interest militating toward access to the confidential and highly personal

information regarding plaintiff's brain tumor. So there was no need whatsoever for access to

plaintiff's medical information, and plaintiff's privacy interest clearly outweighed the non-

existent governmental interest in disclosure.

      Accordingly, plaintiff has stated a cognizable claim of invasion of privacy under the

Fourteenth Amendment.

### 2.  First Amendment Retaliation.

#### a.  Overarching First Amendment Principles.

##### (1).  Retaliation for the Exercise of Constitutional Rights

**Violates § 1983.**  It has long been established that "[r]etaliation for the exercise of

constitutionally protected rights is itself a violation of rights secured by the Constitution

actionable under section 1983." <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990). Thus, "official retaliation for the exercise of *any* constitutional right creates an actionable claim under Section 1983." <u>Anderson</u>, 125 F.3d at 162 (emphasis in original). "The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." <u>Id.</u> at 160 (citing <u>Mt. Healthy</u>, 429 U.S. 274).

**(2). The Motivation For the Government Action is Key.** "[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." <u>Id.</u> at 161. As far as it relates to the First Amendment, "motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual." <u>Id.</u> "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000). Motives are key.

**(3). The Unconstitutional Conditions Doctrine.** For decades, the Supreme Court has repeatedly and consistently emphasized the applicability of the unconstitutional conditions doctrine in the First Amendment context.

> For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. *It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests - especially, his interest in freedom of speech.* For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. *This would allow the*

> *government to produce a result which it could not command*
> *directly. Such interference with constitutional rights is*
> *impermissible.*

Perry, 408 U.S. at 597 (internal citation and punctuation omitted) (emphasis added); see, e.g.

O'Hare, 518 U.S. at 717; Umbehr, 518 U.S. at 674; Rumsfeld v. Forum for Academic and Inst.

Rights, Inc., 547 U.S. 47, 59 (2006);  U.S. v. American Library Ass'n, Inc., 539 U.S. 194, 210

(2003); Anderson, 125 F.3d at 161.  As the Supreme Court stated 41 years ago, "It is too late in

the day to doubt that the liberties of religion and expression may not be infringed by the denial of

or placing conditions upon a benefit or privilege."  Keyishian v. Bd. of Regents of Univ. of the

State of N.Y., 385 U.S. 589, 606 (1967).

> **(4).  The First Amendment Retaliation Test.**  First Amendment

retaliation claims are analyzed under a three part test.  A plaintiff must prove: (1) that he engaged

in constitutionally protected activity;[8] (2) that the government responded with retaliation against

them;[9] and (3) that the protected activity caused the retaliation.[10]  Eichenlaub, 385 F.3d at 282;

---

[8]  The public concern requirement of Connick v. Myers, 461 U.S. 138, 146 (1983), does not apply to speech outside of the public employee arena.  Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282-84 (3d Cir. 2004).  In other words, even private concern speech by non-public employee citizens is protected from retaliation by state actors.  Id.; see United Mine Workers of America, Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217, 223 (1967) ("the First Amendment does not protect speech and assembly only to the extent it can be characterized as political.  'Great secular causes, with small ones, are guarded.  The grievances for redress of which the right of petition was insured, and with it the right of assembly, are not solely religious or political ones.  And the rights of free speech and a free press are not confined to any field of human interest.'").

[9]  The standards governing First Amendment adverse action are discussed in Argument **III.B.2.d.** below.

[10]  The two part Mt. Healthy paradigm for proving causation applies to all types of First Amendment retaliation.  Anderson, 125 F.3d at 163.  Accordingly, following a determination that the speech is protected by the First Amendment, Mt. Healthy requires the plaintiff to demonstrate that his speech was a substantial or motivating factor in the adverse action.  The burden of proof then shifts to the defendants to prove that they would have made the same decision anyway, even in the absence of the protected activity.  Mt. Healthy, 429 U.S. at 287; Nicholas v. Pa. State Univ., 227 F.3d 133, 144 (3d Cir. 2000); Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006).

Anderson, 123 F.3d at 161.

**b. Plaintiff's Speech to the Media and the Public Challenging Government Corruption and Illegality.** In the Supreme Court's words, "[o]fficial reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right." Hartman, 547 U.S. at 256.

In our present case, the Complaint clearly and unequivocally states that Neuberger actively and repeatedly spoke out to the Delaware media and challenged numerous instances of defendants' corruption, fraud, wrongdoing, illegality and breach of the public trust while holding high public office, all with the intent to sound the alarm to the general public and the electorate about defendants' abuse of governmental power. (¶¶ 26-27). The cases are legion that hold speech to the news media receives First Amendment protection. See, e.g. Pickering v. Bd. of Educ., 391 U.S. 563 (1968) (newspaper); Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) (radio); O'Donnell v. Yanchulis, 875 F.2d 1059 (3d Cir. 1989) (television); Holder v. City of Allentown, 987 F.2d 188 (3d Cir. 1993) (newspaper); Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) (newspaper); Mitchell v. Street, 415 F.Supp.2d 490 (E.D.Pa. 2005) (radio).[11] Accordingly, it is clear that Neuberger's speech to the Delaware media criticizing the wrongdoing of the defendant high government officials is protected by the First Amendment.

Contrary to defense claims, the Complaint does not allege that plaintiff's speech to the media was conducted on behalf of his clients. Indeed, review of the Complaint itself reveals that plaintiff's speech to the media criticizing defendants for their corruption of the public offices which they then held (¶¶ 26-29), is contained within a separate and distinct section of the

---

[11] If public employees with severely limited First Amendment rights are protected for their speech to the media, *a fortiori,* a private citizen without such circumscribed First Amendment rights also is protected.

Complaint from the allegations of his First Amendment activity with and on behalf of his clients. (¶¶ 18-25). Of course, even if it were not so clearly delineated in the Complaint, under the applicable Standard of Review, the result would be the same. In the analogous context of a 12(b)(6) motion to dismiss a public employee's free speech retaliation complaint, the Third Circuit has explicitly held that when a Complaint is silent as to whether a speaker is speaking as a private citizen, or is speaking as an employee pursuant to his official duties,"we read the complaint to allege that [the plaintiff] was speaking 'as a citizen.'" Hill v. Borough of Kutztown, 455 F.3d 225, 242 (3d Cir. 2006). In the same way, when a Complaint is silent as to whether an attorney plaintiff was speaking as a private citizen or speaking in his capacity as an attorney representing a client, so also should the Complaint be read as alleging speech as a private citizen.

The Complaint continues and plainly states that defendants: (1) widely released and circulated plaintiff's personal and confidential medical information; and (2) published the defamatory newspaper attack ads, both in retaliation for his protected speech to the media. (¶¶ 29, 34-51, 82-85, 110). Thus, plaintiff has properly pleaded a First Amendment free speech violation alleging two separate and distinct forms of retaliation against him because of his protected speech *to the media* criticizing government wrongdoing. Moreover, as review of the Complaint makes clear, this retaliation claim is separate and distinct from plaintiff's claim of retaliation for his vigorous advocacy on behalf of his clients.

Not surprisingly, defendants neglect to mention that the very case upon which they build their entire claim (addressed below) that plaintiff's vigorous advocacy on behalf of his clients is not protected, Mezibov v. Allen, 411 F.3d 712 (6th Cir. 2005), rather strongly supports plaintiff's well-reasoned position that speech to the media by an attorney receives protection. As the Mezibov court repeatedly explained, "an attorney's out-of-court communications with the media

31

...[are] a realm where the attorney clearly has some First Amendment rights." Id. at 718 n.2. Continuing, that court even went so far as to explain that "attorneys clearly retain some First Amendment rights outside the courtroom, *even for speech that touches upon representing their clients*." Id. at 720 n.6 (emphasis added).

Accordingly, it is clear that regardless of whether the Court looks to the precedent cited by plaintiff or that cited by defendants, plaintiff still receives treasured First Amendment protection for his speech to the media criticizing the corrupt and illegal actions of defendants while holding high public office. Moreover, the unconstitutional conditions doctrine makes clear that defendants may not condition plaintiff's ability to be free from (1) the retaliatory release of his personal medical information, and (2) defamatory attacks on his character, upon his surrender of his First Amendment rights to criticize government illegality to the media.

### c. Plaintiff's Vigorous Advocacy of Unpopular Causes, Association With His Clients and Filing of Lawsuits Challenging Government Wrongdoing.

The Complaint also clearly states that Neuberger vigorously advocated on behalf of his many civil rights clients in numerous civil rights lawsuits against defendants' corrupt regime of County government. (¶¶ 18-24). As noted above, the Supreme Court has long held that "the First Amendment ... protects vigorous advocacy, certainly of lawful ends, against governmental intrusion." Button, 371 U.S. at 429 (citing Thomas, 323 U.S. at 537; Herndon, 301 U.S. 242); see New York Times Co. v. Sullivan, 376 U.S. 254, 269 (1964).[12]

### (1). Litigation Has Long Been Recognized as a Means for

---

[12] In the same way, because the Complaint plainly states that defendants released plaintiff's personal and confidential medical information and published the defamatory newspaper attack ads in retaliation for his vigorous advocacy (¶¶ 25, 34-51, 82-85, 107, 110, 113), plaintiff has properly pleaded a First Amendment violation.

**Achieving Equality of Treatment for All.**  The Supreme Court has long recognized that "litigation is not a technique of resolving private differences; it is a means for achieving the lawful objectives of equality of treatment by all government, federal, state and local ... It is thus a form of political expression." Button, 371 U.S. at 429.  Often times, "litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." Id. at 430; accord id. at 431 (noting that for certain minority groups, "association for litigation may be the most effective form of political association."); Putnam v. Adams Communication Corp., 1987 WL 13262, *7 (D.Mass. June. 15, 1987) ("Litigation is a form of speech.  In many cases, it is the only effective speech available to individuals.").

**(2).  The Attorney Retaliation Line of Cases.**  Contrary to

defense claims, the majority of Courts to address the issue have held that attorneys may bring First Amendment actions arising from retaliation against them for their vigorous advocacy of unpopular causes that challenge the powers that be.  In Freeman and Bass, 359 F.Supp. 1053, two plaintiff's attorneys and their law firm brought a First Amendment action, alleging retaliation against them by the State of New Jersey because of their "long history of vigorous representation of poor and minority working class clients and their professional involvement in controversial causes." Id. at 1055.  Judge Garth explained that such retaliatory actions taken "to harass and intimidate [them] for their advocacy of unpopular causes ... constitute[s] a violation of [their] First Amendment rights." Id. at 1055-59; see Anderson, 125 F.3d at 160-64 (actionable First Amendment claim for government retaliation against a client and her attorney for filing a lawsuit challenging illegal police activity). Thus, this local federal district court in our Circuit and a presently presiding Third Circuit judge have recognized the viability of plaintiff's legal theory.

Similarly, in Taylor v. Ky. State Bar Assoc., 424 F.2d 478 (6th Cir. 1970), the Sixth

Circuit addressed a case involving an attorney plaintiff who had "made a career in the defense of

unpopular causes and controversial clients, among them, civil liberties organizations, civil rights

activists, the poor and the disadvantaged." Id. at 480.  That attorney plaintiff brought a retaliation

action alleging that state disciplinary

> proceedings were instituted in bad faith, with no real hope of
> ultimate success; that said proceedings are calculated to deter,
> intimidate, harass, and punish [him] for his association with and
> representation of persons and organizations advocating
> controversial ideas, and to prevent [him] and deter other Kentucky
> lawyers from representing, in futuro, controversial clients and
> advocating their ideas.

Id.  The Sixth Circuit found that the plaintiff attorney's claim that the disciplinary proceedings

had been brought against him "as an instrument for the suppression of First Amendment

activities, to-wit: the advocacy of unpopular ideas," id. at 481, "stated a claim for which relief

may be granted under 42 U.S.C. § 1983."  Id. at 482.  This U.S. Court of Appeals also has long

recognized plaintiff's legal theory.

In the same way, as the Fifth Circuit explained in a retaliation case brought by an attorney

challenging government harassment in retaliation for his representation of certain clients -

> [s]ubjecting an attorney to criminal investigation and prosecution
> with the substantial motivation of dissuading him from associating
> with and representing clients opposing the IRS would violate the
> First Amendment.

Izen, 398 F.3d at 367; Izen, 382 F.3d at 571.[13]  Thus, yet another U.S. Court of Appeals has twice

recognized plaintiff's legal theory.  Accordingly, it is clear that Neuberger's vigorous advocacy

---

[13]  These holdings are not surprising given that, "[a]ny form of official retaliation for
exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith
investigation, and legal harassment, constitutes an infringement of that freedom." Smith, 258
F.3d at 1176 (quoting Worrell, 219 F.3d at 1212).  In the Supreme Court's words, it is clear that
"the First Amendment prohibits government officials from subjecting an individual to retaliatory
actions, including criminal prosecutions, for speaking out." Hartman, 547 U.S. at 256.

of unpopular causes receives First Amendment protection.[14]

> **(a). The Sole Case Upon Which The Defense Case**

**Rests.**  In light of the well-reasoned legal authority cited above, it is clear that defendants are

once again mistaken in their false claim that the Circuits are "unanimous" in their rejection of

First Amendment protection for attorneys taking on controversial causes.  (NCC OB at 14).

    The primary case cited by the defense is a divided opinion by a Sixth Circuit panel in

Mezibov v. Allen, 411 F.3d 712 (6th Cir. 2005).[15]  Factually, in Mezibov, an attorney brought a

lawsuit against the prosecutor who had just convicted his criminal client.  Following the

conviction, the prosecutor went on television and harshly attacked the performance of the defense

attorney in the lawsuit.  The prosecutor was admittedly angered by in-court arguments and

motions filed by the defense attorney in the case who had sought the prosecutor's

disqualification.  The defense attorney promptly brought a First Amendment retaliation lawsuit,

---

    [14]  Of course, protection from government retaliation for pursuing the vindication of civil rights and helping others seek legal redress has never been limited to attorneys alone.  See Owens v. Rush, 654 F.2d 1370, 1379 (10th Cir. 1981) (public employee who assisted his wife in vindicating her civil rights and seeking legal redress and was subsequently retaliated against protected by the First Amendment in light of Button, supra.); Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985) (prisoner who was retaliated against for assisting fellow prisoners in vindicating their legal rights and pursuing legal remedies stated an actionable First Amendment claim under Button); McCormick v. City of Lawrence, Kansas, 253 F.Supp.2d 1156, 1169-70 (D.Kan. 2003) (noting that "First Amendment associational protection is afforded to activities involving the assistance of litigation aimed at vindicating civil rights."); King v. Knoll, 399 F.Supp.2d 1169, 1182 (D.Kan. 2005) (same).  Instead, such protection is well-recognized in the case law.

    [15]  Much to the defense's chagrin, as noted above, this opinion strongly supports plaintiff's argument that his separate and distinct speech to the media, criticizing defendants' well-known troubles at staying within the bounds of the law despite an overabundance of taxpayer financed legal advice, receives First Amendment protection.  See Mezibov, 411 F.3d at 720 n.6 ("attorneys clearly retain some First Amendment rights outside the courtroom, even for speech that touches upon representing their clients."); id. at 718 n.2 (noting that "an attorney's out-of-court communications with the media ...[are] a realm where the attorney clearly has some First Amendment rights.").

claiming protection for his in-court arguments and the filing of his motions to disqualify. Over a vigorous and thoughtful dissent, the divided Sixth Circuit panel issued an admittedly limited holding, finding that an attorney does not have any constitutional protection in "*filing motions and making courtroom statements* on behalf of his client." Id. at 717; accord id. (framing the issue as addressing "[a]n attorney's speech *in court and in motion papers*."); id. at 718 (noting that an attorney does not "possess any First Amendment right to speak up or otherwise present a point of view *in the courtroom*."); id. at 719 (noting that an attorney's "*advocacy in the courtroom and in filings* cannot honestly be characterized as 'free' speech."); id. at 720 ("*the instant case involves only speech in the courtroom*..."). (emphasis added to all).

Mezibov is distinguishable and inapplicable for a number of reasons. First and most importantly, the Mezibov court noted that it had been unable to find any Circuit Court that had ever recognized an attorney's claim of retaliation in this regard. Id. at 717. Unfortunately, it appears that the attorneys in that case failed to identify one of the Sixth Circuit's own binding and precedential opinions from 35 years prior which had done just that.

Sixth Circuit Rule 206(c) explicitly states -

> **Published Opinions Binding.** Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court en banc consideration is required to overrule a published opinion of the court.

"It is firmly established that one panel of this court cannot overturn a decision of another panel; only the court sitting en banc can overturn such a decision." U.S. v. Lanier, 201 F.3d 842, 846 (6th Cir. 2000). "The Sixth Circuit has long adhered to this venerable principle." U.S. v. Smith, 73 F.3d 1414, 1418 (6th Cir. 1996).

As discussed above, in Taylor v. Ky. State Bar Ass'n, 424 F.2d 478, 480-82 (6th Cir.

1970), the Sixth Circuit itself previously recognized that an attorney who claims First Amendment protection from retaliation because of his association with and representation of controversial clients and causes "stated a claim for which relief may be granted under 42 U.S.C. § 1983." Id. at 482. Accordingly, it is clear that Mezibov panel opinion (at least the reading to which the defense ascribe it) flatly conflicts with and contradicts the holding of the prior panel opinion in Taylor. Under venerable, firmly established Sixth Circuit case law and local appellate rules, the divided Mezibov panel does not overrule Taylor, which governs in the Sixth Circuit and which plainly supports plaintiff in our present action.

Even if one were to assume arguendo that Mezibov still had some limited vitality,[16] the majority clearly limited its holding to speech taking place in the courtroom itself or in motions filed with the court, which argued the client's legal position. The court honed in and focused upon the words themselves used and the legal arguments made by the attorney in arguing his motion. The Court did not address the issue which was previously and squarely addressed by the Sixth Circuit itself in Taylor v. Ky. State Bar Ass'n, 424 F.2d 478, 482 (6th Cir. 1970), twice by the Fifth Circuit in Izen v. Catalina, 398 F.3d 363, 367 (5th Cir. 2005), and Izen v. Catalina, 382 F.3d 566, 571 (5th Cir. 2004) and in Judge Garth's thoughtful opinion in Freeman and Bass, P.A. v. State of N.J. Comm'n of Investigation, 359 F.Supp. 1053, 1056 (D.N.J. 1973), each of which recognized and addressed the broader issue applicable to our case that an attorney states a claim for First Amendment retaliation when he alleges he has been retaliated against for taking on

---

[16] Plaintiff notes the difficulty of ascribing a more limited reading to Mezibov given that Judge Moore's dissent in the same case attacks it for its dramatic overbreadth. Mezibov, 411 F.3d at 723-26. The opinion has continued to attract vigorous dissents from Sixth Circuit judges. See Lewter v. Kannensohn, 159 Fed.Appx. 641, 648 (6th Cir. 2005) (Keith, J., dissenting) (attacking the divided Mezibov opinion as "an unwarranted extension of prior law.").

cases and causes that challenge the powers that be.[17]  Those courts did not focus on the words

used or the nitty, gritty of the arguments made by the attorneys in arguing particular discrete legal

issues, but instead focused on the larger constitutional concepts and concerns at stake, those

which the Supreme Court comprehensively addressed in <u>Button</u> and its long line of sister

opinions discussed throughout this brief - protecting the ability of the citizenry to find and retain

attorneys willing to serve as vigorous advocates in legal actions and legal causes which upset the

status quo, from taking on civil rights matters to advocating controversial ideas to representing

controversial clients.  As Judge Moore explained in his thoughtful dissent in <u>Mezibov</u> -

> the ability and willingness of persons to serve as advocates for their
> clients, particularly in matters adverse to the government, will be
> severely hampered if persons acting under color of state law are
> permitted to retaliate with impunity against attorneys who exercise
> their First Amendment rights on behalf of their clients.

411 F.3d at 725.

    The two remaining cases cited by defendants in support of their claim in this regard are

similarly flawed.  <u>Lewter v. Kannensohn</u>, 159 Fed.Appx. 641 (6th Cir. 2005), is yet another

flawed case from the Sixth Circuit which, like <u>Mezibov</u>, makes no mention of <u>Taylor</u> and so fails

for the same reasons.  Moreover, <u>Lewter</u> is merely a typical public employee free speech

retaliation action where the plaintiff happens to be an attorney, and is analyzed under the well

known paradigm of <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563 (1983).[18]  After rejecting the case

---

    [17]  Although the Third Circuit has not addressed this precise issue, it has already
recognized that a client-plaintiff has an actionable First Amendment retaliation claim against the
government for retaliation directed against she and her attorney.  See <u>Anderson</u>, 125 F.3d at 160-
64.

    [18]  Public employee attorney cases are not uncommon.  See, e.g. <u>Garcetti v. Ceballos</u>, 547
U.S. 410 (2006). Importantly however, such public employee cases are analyzed under a different
legal rubric than applies to cases involving private citizens. See, e.g. <u>Waters v. Churchill</u>, 511
U.S. 661, 674 (1994) ("constitutional review of government employee decisions must rest on

upon traditional public employee free speech grounds, the court continued and applied the faulty and divided <u>Mezibov</u> opinion as an additional reason to deny protection to the public employee attorney in that case. As already noted, Judge Keith in dissent "strongly disagree[d] with the majority opinion's reliance on <u>Mezibov</u>" because of its "unwarranted extension of prior law." <u>Lewter</u>, 159 Fed.Appx. at 648. Lastly, defendants cite to <u>Pekin v. County of San Benito</u>, 2006 WL 2474334 (N.D.Cal. Aug. 25, 2006), which is flawed in the same was as <u>Lewter</u> because of its misplaced reliance upon <u>Mezibov</u> as the basis of its holding.

Thus, it is clear that the cornerstone opinion of the entire defense case is fatally flawed. Putting to the side its divided nature, the opinion directly and openly conflicts with earlier binding Sixth Circuit precedent. In such a situation, Sixth Circuit case law and that Circuit's own Local Rules mandate that the earlier opinion controls. Sixth Circuit Rule 206(c); <u>U.S. v. Lanier</u>, 201 F.3d at 846; <u>U.S. v. Smith</u>, 73 F.3d at 1418. Thus, <u>Taylor</u>, 424 F.2d at 482, remains the law of the Sixth Circuit and Sixth Circuit law supports plaintiff.

**(3). In Order to Protect the Citizen's Right of Access to the Courts and Other Precious First Amendment Rights, it is Necessary To Protect Their Ability to Seek Out Independent and Courageous Legal Counsel Willing to Challenge the Powers That Be.** Citing historical examples of those who fought the system to aid their fellow citizens (Veasey, C.J., 12/15/03 Speech - Tab A at 6-9), the Delaware Supreme Court regularly implores newly minted Delaware attorneys to display the qualities of "independence and courage" (<u>id.</u> at 2), to not "march slavishly to the client's drumbeat to fulfill the client's every wish on tactics" out of "desperat[ion] to keep a real live, paying client happy" (<u>id.</u> at 10) and lose

_____

different principles than review of speech restraints imposed by the government as sovereign." ); <u>Eichenlaub</u>, 385 F.3d at 284 (explaining that different tests apply to public employees retaliation cases versus retaliation cases brought by citizens outside of the public employment context).

one's "integrity and ethical principles" in the process. (Id. at 5). Unfortunately, as evidenced by the barrage of factual inaccuracies, the litany of meritless arguments and the overall tone of defendants' briefs, not all subscribe to this theory. Nevertheless, "the function of the independent lawyer as a guardian of our freedom ... [and] the citizen's right to consult an independent lawyer and to retain that lawyer to speak on his or her behalf is an aspect of liberty that is priceless." Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 371 (1985) (Stevens J., dissenting) (quoted by Veasey, C.J. - Tab A at 4). "[T]he citizen's right of access to the independent, private bar is itself an aspect of liberty that is of critical importance in our democracy." Id. Representation by "independent and courageous" attorneys such as plaintiff, attorneys who are not afraid to confront the powers that be in the face of personal attacks by corrupt government officials and their taxpayer financed lawyers, gives tangible meaning to the liberty interest of private citizens who dare to challenge our broken County government and enables those same citizens to seek vindication of their treasured First Amendment rights.

                    **(a). The Collective First Amendment Right to Counsel**.

It is for this reason that the Supreme Court has long protected the ability of citizens to band together and exercise their inviolate First Amendment associative and petition clause right to be represented by counsel of their choosing for the advocacy of their cause. See Button, 371 U.S. at 429-30; Brotherhood of R.R. Trainmen v. Va. Bar, 377 U.S. 1, 8 (1964); United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 223 (1967); United Transp. Union v. State Bar of Mich., 401 U.S. 576, 585 (1971); In re Primus, 436 U.S. 412, 424-32 (1978). These cases established the now long settled legal precept that "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." Bates v. State Bar of Ariz., 433 U.S. 350, 376 n.32 (1977); accord In re Primus, 436 U.S. at 426;

United Transp. Union, 401 U.S. at 585. In these cases, the Supreme Court "speaks ... of an

inviolate First Amendment right to be represented by counsel[.]"  Freeman and Bass, 359

F.Supp. at 1056. Underlying these opinions "was the Court's concern that the aggrieved receive

information regarding their legal rights and the means of effectuating them." Bates, 433 U.S. at

376 n.32.

> **(b).  The Individual First Amendment Right to Counsel**.

Importantly, this right is not limited to groups alone. Instead the Supreme Court has held that

"[t]his concern applies with at least as much force to aggrieved individuals as it does to groups."

Id.; accord Denius v. Dunlap, 209 F.3d 944, 954 (7th Cir. 2000) ("the First Amendment protects

the right of an individual or group to consult with an attorney on any legal matter"); Freeman and

Bass, 359 F.Supp. at 1057 ("the existence of the associational *group* right necessarily implies a

like right for individuals.") (emphasis in original); Stillman v. Dept. of Def., 209 F.Supp.2d 185,

215 (D.D.C. 2002) ("an individual's ability to consult with counsel on legal matters is

constitutionally grounded.") (overruled on other grounds by Stillman v. C.I.A., 319 F.3d 546

(D.C.Cir. 2003)).

Thus, in addition to political parties, unions and advocacy organizations, individual

citizens also have an indisputable First Amendment right to consult with and retain legal counsel

for the vigorous advocacy of their cause. "The right to hire and consult an attorney is protected

by the First Amendment's guarantee of freedom of speech, association and petition." Denius,

209 F.3d at 953; accord Mothershed v. Justices of the Supreme Court, 410 F.3d 602, 611 (9th Cir.

2005). Similarly, in the Tenth Circuit's words, "[t]he right to retain and consult with an attorney

... implicates ... clearly established First Amendment rights of association and free speech."

DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990); accord Poole v. County of Otero, 271

F.3d 955, 961 (10th Cir. 2001).  As the D.C. Circuit has observed, individuals "have an undeniable right to retain counsel to ascertain their legal rights."  Martin v. Lauer, 686 F.2d 24, 32 (D.C.Cir. 1982); American Airways Charters, Inc. v. Regan, 746 F.2d 865, 873 (D.C.Cir. 1984); see Doe v. District of Columbia, 697 F.2d 1115, 1119 (D.C.Cir. 1983) ("every litigant has a powerful interest in being able to retain and consult freely with an attorney").[19]

**(c).  Defendants' Actions Have Chilled The First Amendment Rights of Plaintiff's Clients**.  Accordingly, it is clear that government officials such as defendants cannot directly prevent individual citizens or groups of citizens from consulting with legal counsel of their choosing for the vigorous advocacy of their cause.  It is equally clear that the unconstitutional conditions doctrine prohibits the government from indirectly taking action which infringes upon these same First Amendment rights when such an action could not be taken directly.  See, e.g. Perry, 408 U.S. at 597.

By retaliating against the attorney retained by public employee clients exercising their First Amendment rights to counsel and association, defendants are chilling those same cherished rights and seeking to prevent those clients from exercising them by driving away one of the very few attorneys willing to challenge the system.  As the Complaint explicitly states, this has already occurred as the rights of plaintiff's clients "to engage in expressive First Amendment activity have been chilled by defendants actions." (¶ 78).

**(d).  Defendants' Actions Also Have Chilled Plaintiff's**

---

[19]  Other courts, including our District, have held the same.  See Price v. Chaffinch, C.A.No. 04-956 (D.Del. May 15, 2006) (slip op. at 7 n.4) (Tab B); Cipriani v. Lycoming County Hous. Auth., 177 F.Supp.2d 303, 323-24 (M.D.Pa. 2001); Stillman, 209 F.Supp.2d at 214-16; Jones v. Sheahan, 2002 WL 959814, *3 (N.D.Ill. May 9, 2002); First Defense Legal Aid v. City of Chicago, 209 F.Supp.2d 935, 940 (N.D.Ill. 2002); In re TI.B., 762 A.2d 20, 28 (D.C.App. 2000).

**First Amendment Rights**.  In addition to the courts cited in Argument **III.B.2.c.(2).** above, all of which have recognized an attorney's First Amendment right to be free of retaliation for taking on unpopular cases and causes, the Supreme Court itself has recognized the same right.  As part of its holdings protecting the rights of unions and their members to consult with attorneys and obtain legal advice in the face of the efforts of various states and others to stifle the same, see, e.g. Brotherhood, 377 U.S. at 8, the Supreme Court held that

> of course, lawyers accepting employment under this constitutionally protected plan have a like protection which the State cannot abridge.

Id.; accord In re Primus, 436 U.S. at 426; see Taylor, 424 F.2d at 482; Izen, 398 F.3d at 367; Izen, 382 F.3d at 571; Anderson, 125 F.3d at 160-64; Freeman and Bass, 359 F.Supp. at 1056. Thus, it is clear that plaintiff has a First Amendment right to be free of retaliation for taking on such unpopular causes.  As the Complaint explicitly states, plaintiff's First Amendment right to do this has been "significantly affected" and "chilled" by the defendants campaign of retaliation against him.  (¶¶ 76-77).  Accordingly, it is clear that plaintiff has been deprived of his treasured constitutional rights.

> **d.  The Retaliatory Actions Taken Against Plaintiff Would Deter a Person of Ordinary Firmness From Exercising Their First Amendment Rights.**  The defense mistakenly claims that no adverse action was taken against plaintiff.  But in the First Amendment context, "the constitutional violation is not in the harshness of the sanction applied, but in the imposition of *any* disciplinary action for the exercise of permissible free speech."  Bennis v. Gable, 823 F.2d 723, 731 (3d Cir. 1987) (emphasis added).  It "is implicated whenever a government employee is disciplined for his speech."  Id.  The breadth of its protection is demonstrated by the Supreme Court, Third Circuit and District of Delaware's repeated

recognition that it "protects state employees not only from patronage dismissals but also from even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights." Suppan v. Dadonna, 203 F.3d 228, 234 (3d Cir. 2000) (quoting Rutan v. Republican Party, 497 U.S. 62, 76 n.8 (1990)) (internal punctuation omitted); accord O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006); Price v. Chaffinch, 2006 WL 131378, *3 (D.Del. May 12, 2006). "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." Suppan, 203 F.3d at 235 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)).

   **(1).  The Person of Ordinary Firmness Standard.**  Accordingly, adverse action is found if  "retaliatory conduct [is] *sufficient to deter a person of ordinary firmness* from exercising his First Amendment rights." Suppan, 203 F.3d at 235 (citing Bart, 677 F.2d at 625) (internal punctuation omitted) (emphasis added); accord O'Connor, 440 F.3d at 128; Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); see Lapinski v. Bd. of Educ. of the Brandywine Sch. Dist., 2006 WL 167443, *2 (3d Cir. Jan. 24, 2006) (reversing the district court for failing to apply the person of ordinary firmness standard in a First Amendment retaliation case).[20]  Put another way, the retaliatory actions must be sufficient to "cause reasonably hardy individuals" to refrain from protected activity. Agosto-de-Feliciano, 889 F.2d at 1217.[21]

---

  [20]  Numerous other courts have adopted this standard.  See, e.g. Bennett v. Hendrix, 423 F.3d 1247, 1254-55 (11th Cir. 2005); Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004); Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002); Carroll v. Pfeffer, 262 F.3d 847, 850 (8th Cir. 2001); Smith v. Plati, 258 F.3d 1167, 1176 (10th Cir. 2001); Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998); Agosto-de-Feliciano v. Aponte-Rogue, 889 F.2d 1209, 1217 (1st Cir. 1989) (en banc); Bart, 677 F.2d at 625.

  [21]  The person of ordinary firmness standard is an easier standard to meet than the statutorily based adverse employment action test under Title VII.  See Rivera-Jimenez v.

Contrary to defense wishes, this is an objective test, not a subjective one.  Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003).  Because this is an objective standard, a plaintiff need not demonstrate that he actually was deprived of his First Amendment rights. Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005).  The defense claim that plaintiff must have been actually silenced is mistaken.  Indeed, "[s]peech can be chilled, even when not completely silenced." Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005); see Constantine, 411 F.3d at 500 ("The cause of action targets conduct that tends to *chill* such activity, not just conduct that *freezes* it completely").  This is because "[t]here is no reason to 'reward' government officials for picking on unusually hardy speakers." Bennett, 423 F.3d at 1252.

As the Third Circuit has explained, a "First Amendment retaliation claim will lie for any individual act which meets this 'deterrence threshold,' *and that threshold is very low*." O'Connor, 440 F.3d at 127-28 (emphasis added); accord Price, 2006 WL 131378, *3.  "First Amendment retaliation claims are always individually actionable, *even when relatively minor*." O'Connor, 440 F.3d at 127-28 (emphasis added).  As the Supreme Court, Third Circuit and District of Delaware have repeatedly noted, the person of ordinary firmness standard may be satisfied even for acts of "retaliation as trivial as failing to hold a birthday party for a public employee if intended to punish her for exercising her free speech rights."  Id. (internal

---

Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004) ("the standard for showing an adverse employment action is lower in the First Amendment retaliation context than it is in other contexts (such as Title VII)."); Baca v. Sklar, 398 F.3d 1210, 1220 (10th Cir. 2005) ("we have repeatedly concluded that a public employer can violate an employee's First Amendment rights by subjecting an employee to repercussions that would not be actionable under Title VII."); Power v. Summers, 226 F.3d 815, 820-21 (7th Cir. 2000) (noting that the explicit Title VII statutory language upon which Title VII adverse action law is based is not present in 42 U.S.C. § 1983); Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 580 (5th Cir. 2003) (recognizing that "§ 1983's definition of adverse employment action may be broader than Title VII's definition").

punctuation omitted); <u>accord</u> <u>Rutan</u>, 497 U.S. at 76 n.8; <u>Suppan</u>, 203 F.3d at 234-35; <u>Price</u>, 2006

WL 131378, *3.  As our District has explained, this is "an extremely low hurdle to overcome."

<u>Price</u>, 2006 WL 131378, *2.

"Determining whether a plaintiff's First Amendment rights were adversely affected by

retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of

the retaliator, the relationship between the speaker and the retaliator, and the nature of the

retaliatory acts." <u>Brennan v. Norton</u>, 350 F.3d 399, 419 (3d Cir. 2003); <u>see</u> <u>Andrews v. City of</u>

<u>Phila.</u>, 895 F.2d 1469, 1484 (3d Cir. 1990) ( "A play cannot be understood on the basis of some

of its scenes but only on its entire performance, and similarly, a [retaliation] analysis must

concentrate not only on individual incidents, but on the overall scenario").  The retaliatory acts

must "be more than <i>de minimis</i> or trivial." <u>Brennan</u>, 350 F.3d at 419.  Importantly however,

liability also may be established "based upon a continuing course of conduct even though some

or all of the conduct complained of would be <i>de minimis</i> by itself or if viewed in isolation." <u>Id.</u> at

419 n.16; <u>see</u> <u>Suppan</u>, 203 F.3d at 235 (noting that what is "trivial in detail may have been

substantial in gross"); <u>O'Connor</u>, 440 F.3d at 128.  In other words, acts of retaliation which if

standing alone do not meet this standard may nevertheless satisfy this standard when considered

together with and in the context of other retaliatory actions.

**(2).  Defendants' Retaliatory Actions Would Deter a Person of**

**Ordinary Firmness From Exercising Their First Amendment Rights.**  The adverse action at

issue in this case involves: (1) defendants' release of plaintiff's personal and confidential medical

information to the Delaware media and throughout NCC (an action which in and of itself violates

the Fourteenth Amendment); (2) the public spreading of false rumors that plaintiff was dying of a

brain tumor and was acting erratically; and (3) taking out of full page defamatory attack ads in

local newspapers, attacking plaintiff's ethics and integrity and falsely accusing him of violating court orders.[22]

First, the law makes clear that this "very low" threshold standard, O'Connor, 440 F.3d at 127-28, is satisfied by even "relatively minor" retaliatory actions against a citizen.  Id.  For example, the issuance of $35 parking tickets to a citizen would chill a person of ordinary firmness from exercising their free speech rights, Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003), as would a "campaign of petty harassments."  Bart, 67 F.2d at 624-25.   Similarly, as the numerous attorney retaliation cases cited above make clear, a campaign of harassment intended to discourage an attorney from taking on controversial causes clearly satisfies these First Amendment requirements.  As the Sixth Circuit has held in the attorney retaliation context, the loss of

> the opportunity to represent indigent clients solely because [the attorneys] challenged the existing power structure within [the government] ... would most definitely give pause to a person of ordinary firmness before engaging in such speech.

Watts v. Day, 129 Fed.Appx. 227, 232 (6th Cir. 2005).  Lastly, in Bloch v. Ribar, 156 F.3d 673, 680-81 (6th Cir. 1998), the Court held that a public official's release of personal and confidential information about a citizen's rape was sufficiently adverse to chill a person of ordinary firmness. In the same way, the release of plaintiff's personal and confidential medical information about his brain tumor and related health issues similarly would chill a person of ordinary firmness from exercising their First Amendment rights.  Not surprisingly, there is no constitutional right for public officials to release a person's most private medical information to the media and

---

[22] As to the ironic defense concern with defendants' own First Amendment rights, once again their cornerstone case of Mezibov addresses this issue and draws the proper adverse action line between non-defamatory statements (which are not actionable) and defamatory statements (which are actionable).  411 F.3d at 722.

throughout the state.  To the contrary, as explained above, the Fourteenth Amendment explicitly forbids this.

Second, as discussed above, by taking these actions against plaintiff, defendants have chilled the First Amendment rights of both he and his clients and deprived them of the same.  As then Judge, now Justice Alito explained, "[t]he loss of First Amendment freedoms ... unquestionably constitutes irreparable injury," Swartzwelder v. McNeilly, 297 F.3d 228, 241 (3d Cir. 2002), and such irreparable injury constitutes adverse action.

Third, in the same way that depriving a citizen of his First Amendment freedoms would deter a person of ordinary firmness from exercising those same freedoms again, so also violating a citizen's Fourteenth Amendment right to privacy also would deter such a person from speaking out.

Finally, to the extent the Court believes that any one part of the retaliation against plaintiff, standing alone, would not satisfy this standard, the Third Circuit has repeatedly made clear that liability also may be established "based upon a continuing course of conduct even though some or all of the conduct complained of would be *de minimis* by itself or if viewed in isolation." Brennan, 350 F.3d at 419 n.16; see Suppan, 203 F.3d at 235 (noting that what is "trivial in detail may have been substantial in gross"); Andrews, 895 F.2d at 1484 ( "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a [retaliation] analysis must concentrate not only on individual incidents, but on the overall scenario").   Thus, to the extent the Court believes that any one part may not independently satisfy the "extremely low hurdle," Price, 2006 WL 131378, *2, which is the First Amendment adverse action standard, it is clear that when viewed together as part of a continuing

course of retaliation, the standard is plainly satisfied.[23]

      **C. Plaintiff's Rights Were Clearly Established.**  To return to the second qualified

immunity prong, "[o]nce it is determined that evidence of a constitutional violation has been

adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to

determine whether the constitutional right was clearly established." Bennett v. Murphy, 274 F.3d

133, 136 (3d Cir. 2002) ("Bennett I").

> That is, *in the factual scenario established by the plaintiff*, would a
> reasonable officer have understood that his actions were
> prohibited.  *The focus in this step is solely upon the law.*  If it
> would not have been clear to a reasonable officer what the law
> required *under the facts alleged*, he is entitled to qualified
> immunity.  If the requirements of the law would have been clear,
> the officer must stand trial.

Id. at 136-37 (emphasis added)); accord Bennett v. Murphy, 120 Fed.Appx. 914, 916-17(3d Cir.

2005) (Bennett II); Wright v. City of Phila., 409 F.3d 595, 600 (3d Cir. 2005); Saucier v. Katz,

533 U.S. 194, 201 (2001).  Defendants simply ignore this aspect of the law which analyzes the

factual scenario alleged by plaintiff, not one wished for by defendants.

      Here, the prong two question becomes would a reasonable public official be put on notice

that the constitutional violation already established under prong one runs afoul of clearly

established law.[24]

---

    [23]  Thus, the contested defense claim that retaliatory defamation by public officials can
never alone constitute First Amendment adverse action is insufficient given that in addition to
retaliatory defamation, defendants also spread false rumors that plaintiff was dying of a brain
tumor and acting erratically, and also released his personal and confidential medical information
to the Delaware media in violation of the Fourteenth Amendment.

    [24]  The reasonableness of an official's conduct is not a separate question from whether the
law was clearly established.  Instead, these are two sides of the same coin.  The "relevant,
dispositive inquiry in determining whether a right is clearly established is whether it would be
clear to a reasonable officer that his conduct was unlawful in the situation he confronted."
Saucier, 533 U.S. at 202.  This is because "[i]f the law was clearly established, the immunity

If there was any doubt on what is needed to put a reasonable public official on notice of clearly established law, the short answer is found in the U.S. Supreme Court case of <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002). <u>Hope</u> held that "officials can still be on notice that their conduct violates established law even in *novel factual circumstances*." <u>Id.</u> at 741 (emphasis added). The Supreme Court unanimously agreed on this issue. <u>Id.</u> at 753-54 (Thomas, J. dissenting with whom Rehnquist, C.J. and Scalia, J. join) (agreeing that "officials can still be put on notice that their conduct violates established law even in novel factual circumstances"). This holding is in accord with a plethora of preexisting Third Circuit and Supreme Court law, discussed in much greater length below, and puts to rest in our present case any conceivable uncertainty regarding the level of factual correspondence needed between the right asserted and prior cases.

Even prior to the <u>Hope</u> decision, the law was the same as is demonstrated by many other Third Circuit and Supreme Court opinions. "[Q]ualified immunity applies if 'reasonable officials in the defendants' position at the relevant time could have believed, *in light of what was in the decided case law*, that their conduct would be lawful.'" <u>Doe v. Delie</u>, 257 F.3d 309, 318 (3d Cir. 2001) (emphasis added) (quoting <u>Good v. Dauphin County</u>, 891 F.2d 1087, 1092 (3d Cir. 1989)). Continuing -

> Thus, having determined that Doe has alleged a violation of a constitutional right, we must determine whether Doe's right [ ] was "clearly established" in a "particularized" sense. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Id.</u> *We do not require precise factual correspondence between the right asserted*

_____

defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 591 (1998) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818-19 (1982)). In other words, the law presumes that reasonably competent public officials are aware of clearly established law. Thus, if the law is clearly established, a reasonably competent public official would have known of it. <u>Id.</u>

> *and prior case law.* Good, 891 F.2d at 1092. Whether an official
> may be protected by qualified immunity turns on the "objective
> legal reasonableness of the action, assessed in light of the legal
> rules that were clearly established at the time it was taken." Wilson
> v. Layne, 526 U.S. 603, 614 (1999) (internal quotes omitted). The
> issue is whether, given the established law and the information
> available to Defendants, reasonable [] officials in Defendants'
> positions could have believed that their conduct was lawful. See
> Paff v. Kaltenback, 204 F.3d 425, 431 (3d Cir. 2000).

Doe, 257 F.3d at 318 (emphasis added). The Third Circuit also has explained that the "clearly

established" language test requires "some but not precise factual correspondence and [demands]

that officials apply general, well-developed legal principles." Bennis v. Gable, 823 F.2d 723, 733

(3d Cir. 1987); see also Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989)

("the general legal principles governing analogous factual situations, if any, and a subsequent

determination whether the official should have related this established law to instant situations"

are the basis for the court's inquiry); accord Hicks v. Finney, 770 F.2d 375, 380 (3d Cir. 1985).[25]

The Supreme Court in U.S. v. Lanier, 520 U.S. 259, 271 (1997), also stated that a "general

constitutional rule already identified in the decisional law" may give fair warning to a public

official if the rule applies "[w]ith obvious clarity to the specific conduct in question" even though

the specific issue has not been previously addressed. Finally, in the Third Circuit, a law may be

clearly established even if the Court has not ruled on an issue and even if there is some

---

[25]  Additionally as indicated by the Supreme Court, all that is required to defeat a
qualified immunity claim is a "consensus of cases of persuasive authority." Wilson, 526 U.S. at
604. Note that this says nothing of a consensus of binding authority. This is the point made as
far back as 1989, by the Third Circuit in Good, 891 F.2d at 1092, that precise factual
correspondence is not needed between the right asserted and prior cases. "A right may be clearly
established even if there is no 'previous precedent directly in point.'" Leveto v. Lapina, 258 F.3d
156, 162 (3d Cir. 2001)(quoting Good, 891 F.2d at 1092); see also Assaf v. Fields, 178 F.3d 170,
177 (3d Cir. 1999). This point was reiterated by the Third Circuit in 1999, that a court need not
have ruled on a case bearing a "precise factual correspondence" with the one under consideration.
Assaf, 178 F.3d at 177.

disagreement among other Circuits, as long as "[n]o gaping divide has emerged in the jurisprudence" which would lead a party to "reasonably expect" the Courts in this Circuit to rule other than one way. Bieregu v. Reno, 59 F.3d 1445, 1459 (3d Cir. 1995) (overruled on other grounds by Lewis v. Casey, 518 U.S. 343 (1996)).

Thus, government officials will not be granted immunity if they fail to make obvious inferences from a generally established right and apply the right in particular situations. So it was unreasonable in our case for defendants to believe that they could, for example, maliciously retaliate against plaintiff because he (1) spoke out to the news media, (2) associated with numerous County employees as his clients, and (3) filed lawsuits against defendants Gordon, Freebery and New Castle County, challenging Gordon and Freebery's corruption and illegal actions while holding high government office. Do defendants believe they operate in Soviet Russia or Communist China where corrupt public officials can retaliate against those who speak out against their illegal actions and where attorneys who advocate for government whistleblowers also can be silenced and sent to the Gulag? "There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [ ] liability." U.S. v. Lanier, 520 U.S. at 271 (internal punctuation omitted).

**1. Plaintiff's Long Established Right to Privacy.** Defendants cannot reasonably claim ignorance of the plethora of long established cases setting forth the contours of the right to privacy. Instead, as explained in Argument **III.B.1.** above, the right to privacy has existed for decades. In the Third Circuit's words, the "right not to have intimate facts concerning one's life disclosed without one's consent is a venerable right whose constitutional significance we have recognized in the past." C.N., 430 F.3d at 179 (internal punctuation omitted) (citing

cases).  There is an overabundance of preexisting Third Circuit cases, specifically addressing the privacy of medical information, which is more than sufficient to place defendants on notice that their conduct was illegal in 2004.  See, e.g. Westinghouse Elec., 638 F.2d 570; Fraternal Order of Police, 812 F.2d 105; Doe v. SEPTA, 72 F.3d 1133 (3d Cir. 1995); Sterling, 232 F.3d 190; Doe v. Delie, 257 F.3d 309.  Defense claims to the contrary are frivolous.

### 2.  Plaintiff's Long Established Rights Against First Amendment Retaliation.

"The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." Anderson, 125 F.3d at 160 (citing Mt. Healthy, 429 U.S. 274).

### a.  Right to be Free of Retaliation For Speech to the Media Challenging Government Corruption and Illegality.

"Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right."  Hartman, 547 U.S. at 256.  The preexisting cases before 2004 are legion that hold speech to the news media receives First Amendment protection against government retaliation.  See, e.g. Pickering, 391 U.S. 563; Mt. Healthy, 429 U.S. 274; O'Donnell, 875 F.2d 1059; Holder, 987 F.2d 188; Rode, 845 F.2d 1195; Mitchell, 415 F.Supp.2d 490.

In 1987, the Third Circuit held that as of 1982, it was clearly established that a public official could not retaliate against citizens for opposing their actions in public office.  Bennis v. Gable, 823 F.2d 723 (3d Cir. 1987).

> [W]e cannot in good conscience, conclude that in 1982 a reasonably active politician would not have believed that it would be impermissible to demote an employee in retaliation for his political speech and/or associations.

Id. at 733.[26]  As the Third Circuit explained, it was clearly established in 1982 that a public

official could not punish a police officer for exercising his free speech rights.  Id.  To the extent

defendants claim that Bennis was a hybrid speech/association case and is somehow inapplicable,

six years later in the 'pure' speech context, the Third Circuit again stated that the law in this

regard has been clearly established since 1982.  Zamboni v. Stamler, 847 F.2d 73, 80 n.7 (3d Cir.

1988) (citing Bennis, 823 F.2d at 733); accord Baldassare, 250 F.3d at 201 (noting the same in

2001 in the law enforcement context).  This closely analogous precedent is more than sufficient

to put defendants on notice.

**b.  Right to be Free of Retaliation for Advocacy of Unpopular Causes,**

**Association With His Clients and Filing of Lawsuits Challenging Government**

**Wrongdoing.**  As explained at length in Argument **III.B.2.c.** above, by 2004, it was clearly

established for decades that "the First Amendment ... protects vigorous advocacy, certainly of

lawful ends, against governmental intrusion." Button, 371 U.S. at 429 (citing Thomas, 323 U.S.

at 537; Herndon, 301 U.S. 242).

The First Amendment collective right of groups to associate with and retain attorneys for

the advocacy of their cause has long been recognized by the Supreme Court. See Button, 371

U.S. at 429-30; Brotherhood, 377 U.S. at 8; United Mine Workers, 389 U.S. at 223; United

Transp. Union, 401 U.S. at 585; In re Primus, 436 U.S. at 424-32.  Similarly, the correlative First

Amendment right to counsel for individuals is similarly well and universally recognized.  Bates,

433 U.S. at 376 n.32; see, e.g. Denius, 209 F.3d at 953; Mothershed, 410 F.3d at 611; DeLoach,

---

[26]  Of course, defendant Freebery is held to an even higher standard given that she was a
Delaware attorney at the time.  Importantly, the actions at issue in this case took place prior to
her suspension, In re Freebery, 930 A.2d 928 (Del. 2007) (Table) (text on Westlaw at 2007 WL
2703156), and subsequent disbarment from the practice of law because of her crimes.  In re
Freebery, 2008 WL 1801980 (Del. April 21, 2008).

922 F.2d at 620; <u>Martin</u>, 686 F.2d at 32.

     In the same way, the related right to petition the government for redress of grievances has been clearly established for even longer than its better known cousin, the free speech clause.  A citizen's right to petition the government was part of the Magna Carta and also was such a well-recognized part of the law that it was included in Blackstone's famous works.  <u>San Filippo v. Bongiovanni</u>, 30 F.3d 424, 443 and n. 22-23 (3d Cir. 1994).  In the U.S., the right to petition the government has been clearly established under decades of Supreme Court precedent.[27]  Similarly, the Third Circuit repeatedly and exhaustively has discussed the right to petition the government for redress of grievances.[28]

     With this backdrop, it is anti-climactic that numerous courts, from the U.S. Supreme Court, to U.S. Courts of Appeals, and to the District of New Jersey have recognized that attorneys have actionable First Amendment rights for retaliation against them for their association with and advocacy for the poor and downtrodden.  <u>See</u> <u>Brotherhood</u>, 377 U.S. at 8 ("lawyers accepting employment under this constitutionally plan have a like protection which the State cannot abridge."); <u>In re Primus</u>, 436 U.S. at 426 (same); <u>Taylor</u>, 424 F.2d at 482 (actionable

---

    [27]  <u>See, e.g.</u>, <u>Button</u>, 371 U.S. at 429-30; <u>Brotherhood</u>, 377 U.S. at 5; <u>United Mine Workers</u>, 389 U.S. at 221-225; <u>Cal. Motor Transport Co. v. Trucking Unlimited</u>, 404 U.S. 508, 510-16 (1972); <u>McDonald v. Smith</u>, 472 U.S. 479, 482-85 (1985).

    [28]  <u>See, e.g.</u>, <u>Losch v. Borough of Parkesburg, Pa.</u>, 736 F.2d 903, 909-10 (3d Cir. 1984); <u>Brownsville Golden Age Nursing Home, Inc. v. Wells</u>, 839 F.2d 155, 160 (3d Cir. 1988); <u>San Filippo</u>, 30 F.3d at 434-43; <u>Bieregu v. Reno</u>, 59 F.3d 1445, 1453 (3d Cir. 1995) (overruled on other grounds by <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996)); <u>Anderson</u>, 125 F.3d at 161-63; <u>We, Inc., v. City of Phila.</u>, 174 F.3d 322, 326-30 (3d Cir. 1999); <u>A.D. Bedell v. Phillip Morris Inc</u>, 263 F.3d 239, 250-54 (3d. Cir 2001); <u>Herr v. Pequea Township</u>, 274 F.3d 109, 115-17 (3d Cir.2001) (abrogated on other grounds by <u>United Artists Theatre Circuit, Inc. v. Twp. of Warrington</u>, 316 F.3d 392, 400 (3d Cir.2003)); <u>Mariana v. Fisher</u>, 338 F.3d 189, 197-200 (3d Cir. 2003); <u>Brennan v. Norton</u>, 350 F.3d 399, 417-18 (3d Cir. 2003); <u>Hill v. City of Scranton</u>, 411 F.3d 118, 126 (3d Cir. 2005); <u>Borough of Kutztown</u>, 455 F.3d at 242 n.24; <u>Foraker v. Chaffinch</u>, 501 F.3d 231, 235-38 (3d Cir. 2007).

First Amendment retaliation claim by attorney challenging retaliation against him for representing the poor and disadvantaged); Izen, 398 F.3d at 367 (retaliating against an attorney "with the substantial motivation of dissuading him from associating with and representing clients opposing the IRS would violate the First Amendment"); Izen, 382 F.3d at 571 (same); Freeman and Bass, 359 F.Supp. at 1056 (retaliatory actions by government against attorneys to punish them for the "advocacy of unpopular causes ... constitute[s] a violation of [their] First Amendment rights.").[29]

Courts even have extended the same protection to non-attorneys who suffer retaliation for pursuing the vindication of civil rights and helping others seek legal redress. See Owens, 654 F.2d at 1379 (public employee who assisted his wife in vindicating her civil rights and seeking legal redress and was subsequently retaliated against protected by the First Amendment in light of Button, supra.); Rizzo, 778 F.2d at 531-32 (prisoner who was retaliated against for assisting fellow prisoners in vindicating their legal rights and pursuing legal remedies stated an actionable First Amendment claim under Button); McCormick, 253 F.Supp.2d at 1167-70(noting that "First Amendment associational protection is afforded to activities involving the assistance of litigation aimed at vindicating civil rights."); King, 399 F.Supp.2d at 1182 (same).

Lastly, as the Third Circuit has specifically explained in the First Amendment context, if

---

[29] Notably, neither the flawed 2005 Mezibov opinion or either of its two progeny had yet been issued at the time the January 2004 events at issue in this case took place. Accordingly, defendants cannot rely any of these three flawed, but subsequent opinions in support of their claim that it was not clearly established in January 2004 that they could not retaliate against attorneys for their vigorous advocacy for and association with their clients in support of unpopular civil rights and other controversial causes. See Brosseau v. Haugen, 543 U.S. 194, 200 n.4 (2004) (per curiam) (cases which post-date the events at issue "are of no use in the clearly established inquiry."); Aversa v. U.S., 99 F.3d 1200, 1214 (1st Cir. 1996) (qualified immunity "must be decided according to the law in effect at the time of the alleged violation."). Accordingly, the uncontroverted case law that was on the books in January 2004 clearly established plaintiff's right to be free of retaliation for such protected activity.

defendants acted with an intent to stifle plaintiff's First Amendment rights, qualified immunity must be denied because "*it can never be objectively reasonable for a government official to act with the intent that is prohibited by law*." Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006) (emphasis added). Similar to the wrongdoing public official in Monteiro who was "motivated by anger and personal animosity" id. at 405, our record reveals that defendants also were similarly motivated by both anger and antagonism as they sought to injure plaintiff in retaliation for his actions and words. (¶¶ 24-25, 28-29, 39, 51, 54, 92, 97-99). Thus, qualified immunity must be denied because "*it can never be objectively reasonable for a government official to act with the intent that is prohibited by law*." Id. at 404 (emphasis added).

Accordingly, defendants cannot claim lack of notice of this clearly established law, and all their arguments fail. They must undergo discovery and stand trial for their corrupt actions. It matters not whether any of the other legal theories supporting plaintiff's claim are clearly established. Defendants must stand trial even if just this one legal theory was clearly established.

## IV.    PLAINTIFF HAS STANDING BECAUSE HE HAS SUFFERED AN INJURY IN FACT AND A FAVORABLE DECISION WILL REDRESS THE HARM.

**A. The Basics.** Plaintiff has standing because he has suffered an actual injury in fact, and a favorable decision will redress the harm. "Article III [of the Constitution] requires a litigant to have 'standing'- i.e., to show that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to actions of the opposing party, and that a favorable decision will likely redress the harm." Nike, Inc. v. Kasky, 539 U.S. 654, 667 (2003) (quoting Bennett v. Spear, 520 U.S. 154, 162 (1997)). "This [so called] 'irreducible constitutional minimum' applies to every claim sought to be litigated in federal court." ACLU v. Nat'l Sec. Agency, 493 F.3d 644, 659 (6th Cir. 2007). More succinctly, "'[t]he irreducible constitutional minimum of standing contains three requirements': '[1] injury in fact, [2] causation, and [3] redressability.'" Id. (quoting Steel Co. v.

Citizens for a Better Env't, 523 U.S. 83, 102-03 (1998)).  Because he has a suffered an injury in fact and a favorable decision by the Court likely will redress the harm, plaintiff has standing to bring his claims here.[30]

**B.  Plaintiff Has Suffered an Injury in Fact.** "'Injury in fact'" is a harm suffered by the plaintiff that is 'concrete and actual or imminent, not conjectural or hypothetical."  ACLU, 493 F.3d at 659.  "[T]he party who invokes the court's authority [must] show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'"  Valley Forge Christian Coll. v. Ams. United for Sep. of Church & State, Inc., 454 U.S. 464, 472 (1982) (quotation marks omitted).[31]

Anticipating just such a defense claim, the damages plaintiff suffered are pled in great detail in the Complaint.  (¶¶ 55-60, 74, 76-78, 86).   For example, by releasing plaintiff's personal and confidential medical information to the Delaware media and the general public, plaintiff "was hurt, wounded, distressed, shocked, anguished, stunned, appalled, floored, taken aback, offended, traumatized, scandalized and otherwise outraged." (¶ 74).  Continuing, by taking out full page newspaper advertisements falsely accusing plaintiff of violating federal court orders, engaging in sanctionable misconduct, unethical misconduct and a host of other wrongdoing, defendants, *inter alia*, "harmed plaintiff's reputation," "deterred third persons from associating or dealing with him," and caused him to be "hurt, wounded, distressed, shocked,

---

[30]  Notably, defendants do not challenge the second requirement of constitutional standing, causation.  Therefore, only the first and third requirements, injury in fact and redressability, are discussed herein.

[31]  Though defendants wrongly inject the word "present" into the legal concept of injury in fact, (see Gordon and Freebery OB at 3), the injury suffered need only be actual or imminent, not continuing or re-occurring as defendants imply by addition of the word "present."  Under the newly contrived defense approach, a pedestrian who suffered a broken leg after being hit by a car would lose his standing to sue once the bone healed.

anguished, stunned, appalled, floored, taken aback, offended, traumatized, scandalized and otherwise outraged." (¶¶ 57, 55; see 55-60). The Complaint continues and specifically states that as a result of defendants' actions, "plaintiff has suffered and is suffering from humiliation, injury to his reputation and garden variety emotional distress." (¶ 86). Accordingly, plaintiff has suffered numerous actual injuries in fact and has standing to bring this lawsuit.

**C. Plaintiff's Injuries Can Be Redressed By the Requested Relief.** Plaintiff's claims are redressable because a favorable decision by the Court together with a jury verdict and the granting of both legal and equitable relief will remedy the harm.[32]

Redressability is "a likelihood that the requested relief will redress the alleged injury." Warth v. Seldin, 422 U.S. 490, 505 (1975). In essence, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court[.]" Steel Co., 523 U.S. at 107. Thus, redressability requires "that prospective relief will remove the harm," Warth, 422 U.S. at 505, and the plaintiff must show "that he personally would benefit in a tangible way from the court's intervention[.]" Id. at 508.

Here, plaintiff's requested relief includes compensatory and punitive damages (¶ 1, Wherefore Cl. at §§ C, D); injunctions (¶ 1, Wherefore Cl. at §§ F-I); and a declaratory judgment. (Wherefore Cl. at § B). As explained below, these requested forms of relief will redress plaintiff's many injuries.

**1. Compensatory and Punitive Damages.** Plaintiff is at a loss at defendants' unabashedly false and repeated statement that "Plaintiff does not seek damages." (See, e.g., Gordon and Freebery OB at 6). As even a cursory review of plaintiff's Complaint makes clear,

---

[32] While defendants loosely toss around the concepts of "jurisdiction," "mootness" and the "case or controversy" requirement, (see Gordon and Freebery OB at 3, 5), again, the issue is one of constitutional standing - specifically whether plaintiff's claims can be redressed.

plaintiff seeks compensatory damages against defendants Gordon, Freebery and NCC, jointly and severally, for emotional distress, humiliation, embarrassment, and injury to reputation.  (¶ 1, Wherefore Cl. at § C).  Furthermore, plaintiff also seeks punitive damages against defendants Gordon and Freebery, both jointly and severally.  (¶ 1, Wherefore Cl. at § D).

**a. Compensatory Damages are Recoverable in § 1983 Actions.**  The defense claim that such damages for emotional distress, humiliation, embarrassment and punitive damages are exclusively recoverable as 'defamation damages' again is mistaken.[33]

"It is well settled that compensatory damages under § 1983 are governed by general tort-law compensation theory."  Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000); see also Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986) ("when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts").  "Rights ... do not exist in a vacuum.  Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect."  Carey v. Piphus, 435 U.S. 247, 254 (1978). "Our legal system's concept of damages reflects this view of legal rights."  Id.  "The cardinal principle of damages in Anglo-American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty."  Id. at 254-55 (quoting F. Harper & F. James, Law of Torts § 25.1, p. 1299 (1956) (emphasis in original).  "To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering."  Stachura, 477 U.S. at 307 (internal punctuation omitted); accord Allah, 226 F.3d at 250.

---

[33]  Plaintiff notes that general compensatory damages also are available for the separate and distinct common law tort of invasion of privacy pled in Count VI of the Complaint.  See Guthridge v. Pen-Mod, Inc., 239 A.2d 709, 714 (Del.Super. 1967).

In <u>Bullen v. Chaffinch</u>, 336 F.Supp.2d 342, 356 (D.Del. 2004), the District of Delaware

upheld the jury's award of $300,000 to compensate those plaintiffs for "injury to reputation ...

humiliation and emotional distress." The Supreme Court has noted that the word "distress"

includes "mental suffering or emotional anguish." <u>Carey</u>, 435 U.S. at 264 n.20. This then

encompasses the concept of pain and suffering, but also implicitly recognizes that humiliation

and injury to reputation are separate and distinct elements of compensatory damages. <u>See</u>

<u>Stachura</u>, 477 U.S. at 307 (recognizing these separate elements).[34]

Furthermore, as occurs in virtually all civil cases at law where legal relief is sought (as

opposed to cases at equity where only equitable relief is requested), compensatory damages will

redress the injuries alleged by plaintiff. Thus, based upon plaintiff's prayer for damages alone,

there is a redressable claim for the Court to adjudicate.

    **2. Injunctive Relief.** In addition to his prayer for damages, plaintiff also seeks

several injunctions, including "a reparative injunction directing that defendants Gordon,

Freebery, NCC, Coons and Singleton take out full page advertisements in the News Journal and

the Community News family of papers, apologizing for their illegal actions which violated

plaintiff's constitutional and common law rights." (Wherefore Cl. at § H). So despite defense

implications to the contrary, plaintiff's prayer for injunctive relief is not directed solely at

defendants Gordon and Freebery. Furthermore, plaintiff seeks "a permanent injunction,

enjoining all the defendants from retaliating against plaintiff now or in the future."(Wherefore Cl.

---

[34] The injury to plaintiff's reputation caused by defendants' retaliatory actions is itself sufficient to confer standing upon plaintiff. <u>See, e.g.</u> <u>Meese v. Keene</u>, 481 U.S. 465, 472-77 (1987) (holding that harm to reputation is a cognizable injury for standing in First Amendment retaliation cases); <u>Riggs v. City of Albuquerque</u>, 916 F.2d 582, 584-86 (10th Cir.1990) (recognizing standing where the plaintiffs were the actual targets of illegal surveillance and where they alleged harms to their personal and professional reputations).

at § G).

Here, defendants Gordon, Freebery and the County, through its current officials, defendants Coons and Singleton, can continue to harm plaintiff by further widespread circulation and dissemination of his private and confidential medical information. Indeed, defendants' cavalier attitude as conveyed in their briefs is an unremorseful one in which they boldly claim a First Amendment right to falsely tell the world that plaintiff is "dying of a brain tumor." That the individual defendants are no longer in office does not prevent them from again distorting the confidential information about plaintiff they gained while in office to again defame him. Indeed, given their recent criminal pleas, convictions and legal disbarment, it is plainly apparent that they have no respect for either the law or the Constitution which they both falsely swore to uphold and defend. Indeed with at least three federal lawsuits filed by plaintiff still pending against the County and defendants Gordon and Freebery, the original retaliatory incentive remains for defendants to continue in their illegal ways against plaintiff. However, the prospective relief of the aformentioned permanent injunction enjoining all defendants will remove this harm. Further, plaintiff personally would benefit in a tangible way from the court's intervention with a reparative injunction directing that all defendants take out full page newspaper advertisements apologizing for their illegal actions which violated his constitutional and common law rights. Few things can be more effective than an apology issued in the same manner and with the same scope as the initial retaliatory attack. Therefore, plaintiff's prayer for injunctive relief also makes his claims redressable.

      **3. Declaratory Relief.** Finally, the declaratory relief sought also will redress plaintiff's injuries. Here, plaintiff seeks a "declaratory judgment declaring the acts of the defendants Gordon, Freebery and NCC to be a violation of [his] constitutional and common law

rights." (Wherefore Cl. at § B).  "Where First Amendment rights are at stake, and no state criminal prosecution is pending, plaintiffs with standing have the right to seek declaratory and/or injunctive relief before the federal courts." Freeman and Bass, P.A., 359 F.Supp. at 1061 (citing, inter alia, Jordan v. Hutcheson, 323 F.2d 597 (4th Cir. 1963)).  Once again, defendants distort plaintiff's Complaint by stating that "the alleged harm has already occurred and is not alleged to have continued[.]" (See Gordon and Freebery OB at 9).  Thus, they argue, plaintiff is not entitled to declaratory relief.  Id.

However, plaintiff clearly alleges a continuing harm.  For example, plaintiff specifically avers that defendants'

> false accusations have harmed [his] reputation and lowered him in the estimation of the community or deterred third persons from associating or dealing with him[,] isolated [him] from society[, he] may never know the extent of his lost opportunities to relate and associate with others because he c[an] be avoided without knowing the reason and without having a chance to rebut the false accusations against him[, and t]hese false accusations have exposed [him] to public contempt or ridicule in the minds of right thinking persons or among a considerable and respectable class of people.

(¶¶ 57-59).  After waiting three long years for the stays to be lifted while defendants Gordon and Freebery faced federal indictments, pled guilty and were convicted of their crimes, finally criminal prosecution is no longer pending.  Therefore, plaintiff now has the right to seek declaratory and injunctive relief before this federal court.

Lastly, in addition to this continuing harm, plaintiff's precious First Amendment rights of association, speech and petition are at stake.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Swartzwelder, 297 F.3d at 241 (citing Elrod v. Burns, 427 U.S. 347, 373 1976); Abu-Jamal v. Price, 154 F.3d 128, 136 (3d Cir. 1998)).  Those rights must be vindicated by a declaratory judgment by the Court that

defendants violated plaintiff's rights.

In sum, plaintiff has an actual injury in fact which can be redressed by his requested relief. His claims are not moot because the damages, injunctions and declaratory judgment sought all are effective remedies. Therefore, plaintiff has standing to bring his claims, and the Court has jurisdiction to adjudicate them.

**D. Plaintiff Also Has Standing to Assert the Rights of His Clients.** Another source of standing is that which plaintiff has to assert the rights of his clients. The Supreme Court has held on several occasions that an attorney has standing to assert the rights of his current clients. Caplin & Drysdale, Chartered v. U.S., 491 U.S. 617, 623 n.3 (1989); Kowalski v. Tesmer, 543 U.S. 125, 130 (2004).

A showing of third party standing has two requirements. The first is whether the party asserting the right has a close relationship with the person who possess the right. Kowalski, 543 U.S. at 130. The Supreme Court has twice recognized that "an attorney-client relationship as sufficient to confer third-party standing." Id.; see Caplin & Drysdale, Chartered, 491 U.S. at 623 n.3 (holding that an attorney had standing to assert the rights of his client).

The second question is whether there is a hindrance to the possessor's ability to protect his own interests. Kowalski, 543 U.S. at 130. Importantly however, the Supreme Court has repeatedly recognized that a lower threshold standard of standing applies in the First Amendment context. See Sec'y of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 956-57 (1984); Kowalski, 543 U.S. at 130. In Freeman and Bass, Judge Garth explained that if the plaintiff civil rights attorneys were harassed into ceasing to handle civil rights cases, "the impact on those clients would be great. Their access to legal address may be seriously impaired or impeded." 359 F.Supp. at 1059. When combined with the injury to reputation suffered by the attorney as a

result of the retaliatory actions against him for advocating such causes, id., that Court found "a sufficient nexus between the plaintiffs and the rights of the clients they seek to assert to afford them standing to assert those rights in th[e] action." Id.

This same rationale applies in our present case. Plaintiff has standing to assert the rights of his numerous civil rights clients who will suffer irreparable injury if defendants succeed in harassing him into ceasing to handle their civil rights lawsuits against wrongdoing government officials. Given the dearth of attorneys with the fortitude to stand up to corrupt government officials such as defendants and their taxpayer financed lawyers, plaintiff's clients will be stripped of their ability to effectively challenge government wrongdoing and remedy the civil rights violations against them.

For the aforementioned reasons, plaintiff also has standing to assert the rights of his civil rights clients who will be irreparably injured if they lose their only advocate.

**V.  PLAINTIFF'S STATE LAW DEFAMATION AND INVASION OF PRIVACY CLAIMS AGAINST GORDON AND FREEBERY INDIVIDUALLY ARE NOT BARRED BY THE TORT IMMUNITY STATUTE BECAUSE DEFENDANTS ACTED AS PRIVATE CITIZENS, FAR OUTSIDE THE SCOPE OF THEIR JOB DUTIES AND DID SO WITH EXPRESS MALICE AND INTENT TO INJURE.**

Plaintiff's state law claims for defamation and invasion of privacy against defendants Gordon and Freebery are not barred by the County and Municipal Tort Claims Act, 10 Del. C. § 4010 et seq. Generally, "all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." 10 Del. C. § 4011(a). However, "[a]n employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent." Id. at § 4011(c).

65

Here, defendants Gordon and Freebery's widespread circulation of plaintiff's personal and confidential medical information and publication of attack ads were clearly not actions taken within the scope of their employment as County Executive and Chief Administrative Officer. Instead, these were actions taken in their private capacities as private citizens. Defense citation of cases addressing the immunity of municipal government entities are unavailing because only Gordon and Freebery are defendants to these claims. Moreover, it is clearly pled that defendants' challenged actions were performed with willful and malicious intent to injure and destroy plaintiff and punish him in violation of his constitutional rights. (¶¶ 25, 29, 38, 52, 90, 93, 97, 131, 140). Accordingly, plaintiff's state law claims should not be dismissed.

## VI.    COONS AND SINGLETON ARE PROPER OFFICIAL CAPACITY DEFENDANTS IN THIS CASE.

Furthermore, the incumbent County officials sued in their official capacity are proper defendants in this civil rights lawsuit.

**A. Injunctive Relief.** As explained in Argument IV above, the official capacity defendants are necessary parties for the injunctive relief requested in this case. (See Wherefore Cl. at § F, G, H, I).

**B. Attorneys' Fees and Costs.** Additionally, as the Complaint specifically states (¶¶ 6-7), they are properly joined as defendants so that plaintiff may recover attorneys' fees on his § 1983 claims. "[W]hether or not state agencies are named as defendants in a § 1983 action, [§ 1988] contemplates that the prevailing plaintiff may recover [attorneys'] fees from the individual defendants in their official capacities or directly from the state agencies." Morrison v. Ayoob, 627 F.2d 669, 673 (3d Cir. 1980)(citing Skehan v. Bd. of Trustees of Bloomsburg State Coll., 590 F.2d 470, 496 (3d Cir. 1978), cert. denied, 444 U.S. 832 (1979); see also Hutto v. Finnery, 437 U.S. 678, 699-700 (1978)). Furthermore, "[o]nly in an official-capacity action is a plaintiff

who prevails entitled to look for relief, both on the merits and for fees, to the governmental entity." Kentucky v. Graham, 473 U.S. 159, 171 (1985). Here, Plaintiff has named in his § 1983 suit both the current County Executive and current Chief Administrative Officer in their official capacities so that he can recover on the merits and for his attorneys' fees.[35] Accordingly, they are proper defendants here.

## **CONCLUSION**

Through an onslaught of confusing and misleading factual and legal assertions, the defendants would have this Court misstate the law governing motions to dismiss, notice pleading, qualified immunity, the First and Fourteenth Amendments, standing, statutory tort immunity and relief in the hope that they can avoid their day of reckoning in Court for their abuse of governmental power to harass and intimidate plaintiff. In sum, the defense arguments are totally without merit and are frivolous. Their motions should be denied in their entirety.

---

[35] This was necessary after Gordon stepped down and Freebery was rejected by the voters following their criminal indictments, to which they later pled guilty and were convicted.

**LAW OFFICE OF JOHN M. LaROSA**

/s/ John M. LaRosa
**JOHN M. LaROSA, ESQ.**
Delaware Bar No. 4275
Two East Seventh Street, Suite 302
Wilmington, DE  19801-3707
(302) 888-1290
JLR@LaRosaLaw.com

**OF COUNSEL:**

**THE RUTHERFORD INSTITUTE**
**JOHN W. WHITEHEAD, ESQ.**
**DOUGLAS R. McKUSICK, ESQ.**
P.O. Box 7482
Charlottesville, VA 22906
(434) 978-3888
JohnW@Rutherford.org
DouglasM@Rutherford.org

Dated: April 25, 2008

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ.**
Delaware Bar No. 4440
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
SJN@NeubergerLaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

April 25, 2008, I electronically filed this Pleading with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:

> Barry M. Willoughby, Esq.
> Margaret M. DiBianca, Esq.
> Young Conaway Stargatt & Taylor LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899
>
> Charles E. Butler, Esq.
> 1224 North King Street
> Wilmington, DE 19801

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER**

Neuberger (NCC)  05-5301\Briefs \ MtoD AB.final

69