# Tab A

Delaware Bar Admission Ceremony
December 15, 2003
Response for the Court

by E. Norman Veasey
Chief Justice of Delaware

The Court warmly welcomes these new members to the "best Bar in the nation" serving the "best Judiciary."  We all like to hear that said by others to the point where we actually believe it!  I have been a member of the Delaware Bar over  45 years, including nearly 12 years as Chief Justice.  Based on that experience, I do believe it!

### *The "Best Bar"*

As I near the end of my 12-year term as Chief Justice, I have paused to reflect on what it is that makes our Bench and Bar so highly regarded.  First, I think it is a culture of competence that began with the Delaware statesmen of colonial days who were lawyers, and it continues to this day.  Second, is that ingrained integrity that permeates the morals of Delaware judges and nearly all Delaware lawyers.

So, competence and integrity establish the baseline. One would hope that judges and lawyers in all states should adhere to that baseline. Indeed, one would hope that would be taken for granted. Alas, one does not take such things for granted—even in Delaware. But in Delaware, competence and integrity are expected. Today, I would like to emphasize two other related qualities that make judges and lawyers—especially Delaware lawyers and judges—great: those qualities are independence and courage.

### *The Rule of Law and Independence of Judges*

In the proper order of things, we need to observe first the foundation of our free society. It is that we live under the Rule of Law implemented by an independent judiciary. That is what we fought wars about.

In 1776, the Declaration of Independence listed the many complaints of the colonists against King George III, including these:

> He has obstructed the Administration of Justice, by refusing his Assent to Laws for establishing Judicial Powers. He has made Judges dependent on his Will alone, for the tenure of their offices and the payment of their salaries.

Alexander Hamilton's persuasive views expressed in *The Federalist No. 78* led to judicial independence at the federal level as the Constitution was drafted and ratified by the states, Delaware being the First State to ratify, on December 7, 1787. Quoting Montesquieu, Hamilton said:

There is no liberty if the power of judging be not separated from legislative and executive powers....

The Supreme Court under Chief Justice John Marshall gave force to judicial independence by establishing in *Marbury v. Madison* the power of judicial review of the legality of the acts of the executive and legislative branches.  Thus, we live under a rule of law administered and enforced by an independent judiciary of federal and state judges.

Justice Stephen Breyer of the United States Supreme Court has colorfully contrasted our independent judiciary with a system of what he called "telephone justice" that prevailed in the old Soviet Union and perhaps still prevails elsewhere.  Under "telephone justice" the Commissar or some other political leader would call the judge and tell the judge how a particular matter should be decided.  Not in our nation of independent judges!   The Code of Judicial Conduct for American Judges contemplates, in essence, that judges must make decisions independently, on the merits, without outside interference, and without fear or favor.

### The Independence of Lawyers

Today it is clear that *both* judges and lawyers must be independent.  For example, what if Hitler had won World War II?  We know from the historian Kenneth Willig in his article *The Bar in the Third Reich* of Hitler's condemnation of lawyers. Willig notes that Hitler had

> [e]mbarked upon ... the gradual elimination of the lawyer's role ... as an independent servant of justice .... The whole strategy of Nazi policy towards the Bar was aimed at its extinction.

> Kenneth C.H. Willig, *The Bar in the Third Reich*, 20 AM. J. LEGAL HIST. 1 (1976).

Justice John Paul Stevens has eloquently described the role and responsibility of lawyers:

> [T]he function of the independent lawyer [is] as a guardian of our freedom. ... [And] the citizen's right to consult an independent lawyer ... to speak on his or her behalf is an aspect of liberty that is priceless.

> *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 371 (1985) (Stevens J., dissenting.)

Justice Stevens illustrates that point by referencing Shakespeare. You will recall in *The Second Part of King Henry the Sixth*, Dick the Butcher's famous statement, "The first thing we do, let's kill all the lawyers." Jack Cade and Dick in that play were rebels. Indeed, they were would-be anarchists, not friends of liberty. As Justice Stevens noted:

> As a careful reading of that text will reveal, Shakespeare insightfully realized that disposing of lawyers is a step in the direction of a totalitarian form of government.

> *Walters*, 473 U.S. at 371 n. 24.

4

But when we speak of lawyer independence, we must ask ourselves the fundamental law school inquiry: Independent from whom and for what purpose? Stanford Professor Robert W. Gordon reminds us that independent lawyers:

> can, within the confines of their need to make a living, structure their own time, choose among their commitments, and be selective about the people they work with and for and the causes to which they lend their talents ....
>
> Yet lawyers naturally seek to justify professional independence on broader grounds that it's a good deal for lawyers. Independence, one argument runs, facilitates more efficient and effective client service... One often hears as well that to assure effective representation the lawyer must be able to "control the client"—to assert exclusive or final decision-making authority on strategic or tactics peculiarly within the lawyer's areas of professional competence and to ensure that the client follows instructions on how to behave in public.
>
> Robert W. Gordon, *The Independence of Lawyers*, 68 B.U. L. REV. 1, 9-10 (1988).

For one thing, the nature of the profession is that a practicing lawyer often has some independent flexibility in what she chooses to do and when. Of course, there are constraints on that flexibility, but we tend to enjoy more than many in other walks of life. But that is not the kind of independence I am talking about. I think our most precious attribute is that we have the freedom to do the right thing—in representing a client or in performing public service. We are not owned by our clients or our supervisors, but we are wed to our integrity and ethical principles.

### *Historical Heroes of Independence*

5

Legal history abounds with examples of the independence and courage of great lawyers and judges. We all recall that wonderful 1960 novel by Harper Lee, *To Kill a Mockingbird*, where the fictional lawyer, Atticus Finch, in a mostly white community defended an African-American, Tom Robinson, who had been accused of rape. Not only did Atticus Finch defend Tom Robinson with skillful courtroom zeal in an environment of racial prejudice, but he also had to confront an angry lynch mob.

There are many real examples in history. I will mention names of just a few courageous and independent lawyers and judges who were prominent in Delaware and nationally: John Adams, Thomas McKean, James A. Bayard, Daniel Webster, John M. Clayton, Robert Taft, Chancellor Collins Seitz, Louis Redding, Judge Murray Schwartz, Judge Roxanna Arsht, and Justice Penny White.

•     John Adams, who later became the second President of the United States, was a Boston lawyer, deeply in sympathy with the goal of independence. Indeed, his cousin Samuel Adams was a leader of the Sons of Liberty. In 1770, as a consequence of the "Boston Massacre," which resulted in the deaths of several colonists, the British Captain, Thomas Preston, and other British soldiers were charged with murder. John Adams was asked to represent Captain Preston, and he provided Preston with such a skillful representation that Preston was

acquitted of the charge. That professional, independent, courageous act of a lawyer was contrary not only to the sentiments of his cousin, Sam, but also to John Adams' popularity and his prospects for a successful law practice.

- In his Introduction to *The Delaware Bar in the Twentieth Century*, the excellent book he edited, Justice Holland reminds us that in 1776 Thomas McKean was a lawyer who was a delegate to the Continental Congress. McKean sent an urgent dispatch to Caesar Rodney to come to Philadelphia to break the tie in the Delaware delegation that resulted in the Declaration of Independence being approved unanimously.

- James A. Bayard was a lawyer and the lone Delaware Congressman who voted in Thomas Jefferson's favor in the House of Representatives to break the tie in the 1800 presidential election between Jefferson and Aaron Burr. Bayard was a member of the opposite political party from Jefferson, but he was patriotically motivated by what he called the "imperious necessity" to avoid the disunion that would endure if the deadlock continued.

- Daniel Webster successfully used his great oratorical skills in the United States Senate to support Henry Clay's 1850 Compromise on slavery that held the Union together. Although it turned out that the Union was to be saved for only

ten more years, Webster's accomplishment was extraordinary, but it came at great political and personal cost to him.

- John M. Clayton was a Delaware lawyer, United States Senator and Secretary of State under President Zachary Taylor. In 1850 he successfully negotiated the Clayton-Bulwar Treaty that, at least temporarily, resolved the controversy over the Isthmian Canal. That Treaty effectively kept the British out of Central America. When other Senators later tried to undo the Treaty, Clayton sought and won re-elected to the Senate where he vindicated not only the treaty but also the administration of President Taylor.

- President John F. Kennedy's book, *Profiles in Courage*, reminds us that Robert A. Taft, Jr., of Ohio—the lawyer-senator who was known as "Mr. Republican"—risked his political career and presidential ambitions by having the courage, in the heat of the 1946 post-war Congressional elections, to criticize as an unconstitutional ex post facto law the then politically-popular War Crimes trials of the Nazis at Nuremberg.

- Delaware Chancellor and later Federal Circuit Judge Collins J. Seitz, is a Delaware icon —and always will be. In the racially tense and dangerous era of the early 1950s, his judicial decrees desegregated not only the University of

8

Delaware but also the Delaware public schools—all *before* the historic 1954

United States Court decision in *Brown v. Board of Education.*

•    Louis L. Redding, the first African American lawyer in Delaware had the

independence and courage to represent successfully the plaintiffs in those

desegregation cases.

•    Delaware Federal Judge, Murray M. Schwartz, many years later disregarded

personal risk to enter a decree designed to end de facto school segregation in

New Castle County by requiring the unpopular remedy of busing.

•    Delaware Family Court Judge, Roxana Cannon Arsht, who died quite recently,

was the first woman judge in Delaware.  She courageously and independently

blazed a trail with her pleasing assertiveness not only for the advancement of

women but also for equal rights for Family Court litigants.  Later her

philanthropy and that of her husband, Sam, significantly benefitted Delaware

educational and medical institutions.

•    Justice Penny White of the Tennessee Supreme Court was denied retention on

the Court in a contested election where she was pilloried for her independence

and courage in concurring in a well-reasoned opinion of another justice

reversing a death penalty conviction.  This case is a prime example of why the

election of judges is often a problematic threat to judicial independence.

Fortunately, Delaware's unique and successful judicial bipartisan merit-selection system does not present these problems.

Why do I cite such a perhaps unduly tedious string of examples of these heros of history? It is because I do not believe that the concept of judicial and lawyer independence and courage is dead, although I do think it is in constant peril. Why is it in constant peril? Because, in the case of judges who are elected, there is an obvious and constant threat to their independence which many have overcome with real courage. In the case of lawyers, there is too much commercialization in the profession and too much of a tendency of some lawyers to march slavishly to the client's drumbeat to fulfill the client's every wish on tactics that should be the lawyer's prerogative.

In some cases the client will have the lawyer embark on "Rambo tactics" or other problematic, unprofessional or even illegal conduct. This often happens, of course, because some lawyers are desperate to keep a real live, paying client happy to avoid losing the client and the hoped-for financial rewards expected from the representation. This is a temptation that must be resisted if the integrity of our profession is to survive. In speaking to lawyers at a Mergers & Acquisitions Conference, former Chancellor Allen said the following which is particularly relevant:

> I wish to refer to the special role of the lawyer. I do not mean to be
> moralistic, but I do wish to remind you that lawyers are not engaged in

a strictly commercial enterprise.  You have accepted an obligation that transcends the obligations of investment bankers or businessmen or women.  That obligation is to justice.

While such a grand word may seem quaint at the close of the decade of self-promotion and the mega-deal, it *is* in pursuit of that concept that laws are made, courts established, and lawyers trained and licensed.  And a lawyer, no matter in what setting she functions ... has an obligation that courts will be bound to review and enforce, to pursue her special task in a way consistent with the pursuit of systematic justice.

William T. Allen, *Independent Directors in MBO Transactions: Are They Fact or Fantasy?* 45 BUS. LAW. 2055, 2063 (1990).

There are many profound conceptions of lawyer independence and courage.

Lawyers have great opportunities to serve not only in the effective representation of

a client in a manner that serves the client's best interests without being "owned" by the

clients but also in a higher calling.  That higher calling is as a lawyer-statesperson.


### The Lawyer-Statesperson

In his 1993 book, *The Lost Lawyer,* Dean Anthony Kronman of the Yale Law

School laments the passing from the scene of the main protagonist of yesteryear: the

lawyer-statesman.  Kronman argues that the legal "profession now stands in danger

of losing its soul."  He notes that a great many lawyers are extremely well-paid and

tend "to dominate our public life, at all levels of government, exactly as before."

Listing his own historic examples of the lawyer-statesman, he concludes that it is the

11

quality of judgment, not technical expertise, that the lawyer-statesman values most."

And he concludes:

> Regarding its fate, I have reached a gloomy conclusion. I do not think the ideal of the lawyer-statesman can be revived, at least at an institutional level.

ANTHONY T. KRONMAN, *THE LOST LAWYER*, (Belknap Press of Harvard University Press, 1993) pp. 1-7 (1993).

Ten years later, I do not know if Dean Kronman holds those views today. I do not share—and did not ten years ago share—the pessimism he has expressed—particularly with respect to Delaware lawyers. We grow many important agricultural, chemical and financial products in Delaware, generating a value that far exceeds our tiny population. Most of all, we produce outstanding lawyers—and you now join that club.

Delaware is the First State in many respects, not only the first to ratify the United States Constitution 216 years ago. This year the Delaware Supreme Court became the first state supreme court to adopt most of the newly-minted Model Rules of Professional Conduct of the American Bar Association following the recommendations of the Ethics 2000 Commission and the ABA House of Delegates.

Those new ethics rules that became effective on July 1, 2003, will be your guideposts going forward, and you will want to consult them on a regular basis. As you read through the rules you will note many provisions, too numerous to mention,

12

emphasizing the lawyer's service as "a member of the legal profession, a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." Preamble [1]. Thus the lawyer must, when appropriate, exercise professional judgment that is independent of the client or third persons.[*] In addition, the Supreme Court has just adopted new aspirational Principles of Professionalism that you will want to consult on a regular basis.

### *Conclusion*

You are marching from this place forward into a "brave new world" where you will serve clients, the courts and society. To carry out this multi-tasking in a professional manner you must be independent in defining what you will or will not do for your client under the Delaware Lawyers' Rules of Professional Conduct and the aspirational Principles of Professionalism. You must have the courage and independence sometimes to "just say no" to the client. You must also be an independent professional in choosing how you can serve the courts and society as the lawyer-statesperson.

---

[*]See Addendum to the written version of these remarks, noting some examples in the Delaware Lawyers' Rules of Professional Conduct.

When I look out over this wonderful group of new Delaware lawyers and their families, friends and supporters, I am reassured that the glass is half-full, not half-empty. I see a fulfillment of the expectation that Delaware historically produces a new, bumper crop every year of potential lawyer-statespersons of competence, integrity, independence and courage. As you go forward to practice as newly-minted Delaware lawyers with these high values in your sights and a strong work ethic motivating you, I ask you to keep one further thing in mind—your family. Don't be totally consumed by your work. Please remember those who sacrificed to get you here and those will sacrifice to support the advancement of your career. Spend quality time with them and nourish their love and respect. The law need not be a jealous mistress!

Good luck to all of you and Godspeed!