IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS S. NEUBERGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-916-TNO |
| | ) | |
| THOMAS P. GORDON, individually; | ) | |
| SHERRY FREEBERY, individually; | ) | |
| CHRISTOPHER A. COONS, in his official | ) | |
| capacity as County Executive; DAVID W. | ) | |
| SINGLETON, in his official capacity as | ) | |
| Chief Administrative Officer; and NEW | ) | |
| CASTLE COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## THEIR MOTION TO DISMISS

Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
E-mail: ceb@cebutler.com

and

Barry M. Willoughby, Esquire (No. 1016)
Margaret M. DiBianca, Esquire (No. 4539)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6666
Facsimile: (302) 576-3345
E-mail:  bwilloughby@ycst.com

*Attorneys for Defendants*

Dated:  May 9, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iv

ARGUMENT ............................................................................................... 1

I.   PRELIMINARY MATTERS ................................................................... 1

     A.  The Post-<u>Twombly</u> 12(b) Standard ..................................... 1

     B.  Plaintiff's Complaint Fails to Allege the Personal Involvement of Each
         Defendant with the Requisite Level of Particularity................................. 2

     C.  Rule 12(e) Amendment Would Be Futile............................................. 4

     D.  The Exhibits to Defendants' Opening Brief Are Properly Considered in
         This Motion to Dismiss ...................................................................... 5

II.  PLAINTIFF'S FAILURE TO ALLEGE ANY INJURY IN FACT
     OR ANY AVAILABLE RELIEF THAT COULD ADDRESS HIS
     INJURIES REQUIRES DISMISSAL ON JURISDICTIONAL
     GROUNDS................................................................................................ 8

     A.  Plaintiff Cannot Satisfy the Injury-In-Fact Requirement By Claiming
         Defamation Damages ........................................................................ 9

     B.  The Doctrine of Prudential Standing Further Requires Dismissal of
         Plaintiff's Claims ..............................................................................10

     C.  Plaintiff's Failure to Allege Any Available Relief Further Demonstrates
         That He Does Not Have Standing to Proceed .......................................11

         1.  A Permanent Injunction Cannot Be Issued Where the
             Alleged Conduct Is Incapable of Repetition................................... 11

         2.  A Reparative Injunction In the Form of an Apology Is Not
             an Effective Nor an Available Form of Relief................................. 12

III. PLAINTIFF'S FOURTEENTH AMENDMENT PRIVACY
     CLAIMS ARE WITHOUT MERIT ............................................................13

     A.  Plaintiff Has Failed to Allege Disclosure of any Constitutionally
         Protected Information.........................................................................14

     B.  Any Reasonable Expectation of Privacy Was Lost By Plaintiff's Prior
         Disclosure to Third Parties .................................................................15

DB02:6802125.1                                                                                                      045581.1053

IV.    PLAINTIFF APPLIES THE WRONG ANALYSES TO HIS FIRST
       AMENDMENT CLAIMS ...........................................................................16

       A.  The Unconstitutional Conditions Doctrine Is Inapplicable ...................................17

       B.  The Public-Employee Retaliation Analysis Is Inapplicable ...................................17

       C.  The Defamation-Plus Standard Is Inapplicable ......................................................18

V.     PLAINTIFF FAILS TO DISPUTE THAT DEFENDANTS' SPEECH
       IS ENTITLED TO CONSTITUTIONAL PROTECTION ..........................................20

       A.  Plaintiff Has Abandoned His Petition Claim...........................................................21

       B.  The <u>Mezibov</u> Case Provides Persuasive Guidance to the Court in the
           Present Matter .........................................................................................................22

           1.   Plaintiff's Attempt to Limit the <u>Mezibov</u> Holding Is
                Unavailing ...................................................................................... 22

           2.   Plaintiff's Attempt to Mitigate the Impact of <u>Mezibov</u> Is
                Equally Unpersuasive ..................................................................... 23

       C.  Plaintiff Fails to Allege the Requisite Level of Adversity .....................................24

           1.   Plaintiff Again Applies the Wrong Standard.................................... 24

           2.   Even Under the Standard Plaintiff Adopts, His Claims Fail
                to Allege Sufficiently Adverse Action ............................................ 25

           3.   Using an Objective Standard, Plaintiff Would Not Have
                Been Deterred From Exercising His Constitutional Rights.............................. 26

VI.    PLAINTIFF FAILS TO PROVIDE ANY SUPPORT FOR HIS
       CLAIM THAT DEFENDANTS ARE NOT IMMUNE FROM HIS
       STATE LAW CLAIMS ..............................................................................................27

VII.   PLAINTIFF FAILS TO PROVIDE ANY SUPPORT FOR HIS
       CLAIM THAT DEFENDANTS ARE NOT ENTITLED TO
       QUALIFIED IMMUNITY...........................................................................................28

       A.  The Fourteenth Amendment Privacy Right Asserted by Plaintiff Was Not
           Clearly Established...................................................................................................28

       B.  The First Amendment Rights As Asserted by Plaintiff Were Not Clearly
           Established ...............................................................................................................29

CONCLUSION ..................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**

Aiello v. City of Wilmington,
    623 F.2d 845 (3d Cir. 1980)........................................................................ 24

Barber v. Winn,
    No. 95-1030-FJS,
    1997 U.S. Dist. LEXIS 4018 (S.D.N.Y. Mar. 31, 1997) .................................... 16

Barr v. City of Beaver Falls,
    No. 07-340,
    2007 U.S. Dist. 79614 (W.D. Pa. Oct. 26, 2007) ................................................ 5

Bart v. Telford,
    677 F.2d 622 (7th Cir. 1982)........................................................................ 25

Bates v. State Bar of Ariz.,
    433 U.S. 350 (1977) .................................................................................. 22

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955 (2007)................................................................................ 2

Benak v. Alliance Capital Mgmt., L.P.,
    435 F.3d 396 (3d Cir. 2006)......................................................................... 8

Bentley v. Tennis,
    No. 06-2073,
    2007 U.S. Dist. LEXIS 88174 (M.D. Pa. Nov. 30, 2007) ................................. 17

Bloch v. Ribar,
    156 F.3d 673 (6th Cir. 1998)....................................................................... 26

Chapin Furniture Outlet, Inc. v. Town of Chapin,
    No. 06-2129,
    2007 U.S. App. LEXIS 25378 (4th Cir. Oct. 20, 2007) .................................... 11

Citizens for a Better Lawnside v. Bryant,
    No. 05-4268,
    2007 U.S. Dist. LEXIS 38514 (D.N.J. May 24, 2007)...................................... 26

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983) ...............................................................................9, 11

iv

Core Care Health Servs., Inc. v. Shalala,
    No. 98-5812,
    1999 U.S. Dist. LEXIS 2799
    (E.D. Pa. Mar. 4, 1999)........................................................................... 17

DeVille v. Reg'l Transit Auth.,
    No. 07-1345,
    2008 U.S. Dist. LEXIS 4842 (E.D. La. Jan. 22, 2008)...................................... 2

Doe v. Delie,
    257 F.3d 309 (3d Cir. 2001)...................................................................... 14

Eaton v. Meneley,
    379 F.3d 949 (10th Cir. 2004).................................................................... 26

Eisai Co., Ltd. v. Mutual Pharma Co., Inc.,
    No. 06-3163-HAA,
    2007 U.S. Dist. LEXIS 93585 (D.N.J. Dec. 20, 2007)....................................... 2

Elk Grove United Sch. Dist. v. Newdow,
    542 U.S. 1 (2004) .................................................................................. 10

Evancho v. Fisher,
    423 F.3d 347 (3d Cir. 2005)........................................................................ 2

FOP, Lodge 5 v. City of Phila.,
    812 F.2d 105 (3d Cir. 1987)...................................................................... 16

Foraker v. Chaffinch,
    501 F.3d 231 (3d Cir. 2007)...................................................................... 25

Freeman & Bass v. N.J. Comm'n of Investigation,
    359 F. Supp. 1053 (D.N.J. 1973)................................................................. 18

Garcetti v. Ceballos,
    127 S. Ct. 1957 (2007)............................................................................. 18

Garcia v. City of Trenton,
    348 F.3d 726 (8th Cir. 2003)...................................................................... 25

Garrett v. McNutt,
    No. 06-01314-AWI,
    2007 U.S. Dist. LEXIS 54264, (E.D. Cal. July 26, 2007) ................................. 12

Gentile v. State Bar of Nev.,
    501 U.S. 1030 (1991) .............................................................................. 22

v

Gruenke v. Seip,
    225 F.3d 209 (3d Cir. 2000) ........................................................................... 14

Hartman v. Moore,
    547 U.S. 250 (2006) ...................................................................................... 20

Hill v. Borough of Kutztown,
    455 F.3d 225 (3d Cir. 2006) ........................................................................... 17

In re ATI Tech., Inc. Sec. Litig.,
    216 F. Supp. 2d 418 (E.D. Pa. 2002) ................................................................ 8

Izen v. Catalina,
    382 F.3d 566 (5th Cir. 2004) ........................................................................... 19

Jones v. City of Los Angeles,
    444 F.3d 1118 (9th Cir. 2006) .......................................................................... 8

Joynes v. Meconi,
    No. 05-332-GMS,
    2006 U.S. Dist. LEXIS 71296 (D. Del. Sept. 30, 2006) ..................................... 3

Keyishian v. Bd. of Regents of Univ. of N.Y.,
    385 U.S. 589 (1967) ...................................................................................... 17

Lozano v. City of Hazelton,
    496 F. Supp. 2d 477 (M.D. Pa. 2007) .............................................................. 10

Mariana v. Fisher,
    338 F.3d 189 (3d Cir. 2003) ........................................................................... 10

Mattox v. Village of Forest Park,
    183 F.3d 515 (6th Cir. 1999) ........................................................................... 27

Mazur v. Szporer,
    No. 03-00012,
    2004 U.S. Dist. LEXIS 13176 (D.D.C. June 1, 2004) ...................................... 13

McClain v. Munn,
    No. 06-278-Erie,
    2008 U.S. Dist. LEXIS 28985 (W.D. Pa. Apr. 9, 2008) ...................................... 6

McDowell v. Potter,
    No. 07-673,
    2008 U.S. Dist. LEXIS 6407 (W.D. Pa. Jan. 28, 2007) ...................................... 6

Mezibov v. Allen,
    411 F.2d 712 (6th Cir. 2005) ........................................................ 22, 23, 27, 29

DB02:6802125.1                                                                                      045581.1053

Monell v. N.Y. City Dep't of Social Servs.,
    436 U.S. 658 (1978). ........................................................................................... 4

Mraz v. County of Lehigh,
    862 F. Supp. 1344 (E.D. Pa. 1994)................................................................... 30

O'Connor v. City of Newark,
    440 F.3d 125 (3d Cir. 2006)............................................................................. 25

O'Shea v. Littleton,
    414 U.S. 488 (1974) ......................................................................................... 11

Oran v. Stafford,
    226 F.2d 275 (3d Cir. 2000).............................................................................. 6

Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County,
    271 F.3d 140 (3d Cir. 2001)............................................................................. 10

Peel v. Att'y Registration & Disciplinary Comm'n of Ill.,
    496 U.S. 91 (1990) ........................................................................................... 22

Price v. Chaffinch,
    Nos. 04-956, -1207-GMS,
    2006 U.S. Dist. LEXIS 57026 (D. Del. Aug. 14, 2006) .................................... 25

Rappa v. Hollins,
    991 F. Supp. 367 (D. Del. 1997) ..................................................................29, 30

Reyes v. Freebery, et al.,
    No. 02-1283,
    2004 U.S. Dist. LEXIS 15018 (D. Del. July 13, 2004) ...............................6, 7, 15

Ringsred v. City of Duluth,
    187 F. Supp. 2d 1141 (D. Minn. 2001)............................................................. 11

Rombom v. Weberman,
    766 N.Y.S.2d 88 (N.Y. Supr. 2003) ................................................................. 12

S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.,
    181 F.3d 410 (3d Cir. 1999)............................................................................... 7

San Filippo v. Bongiovanni,
    30 F.3d 439 (3d Cir. 1994)............................................................................... 21

Scheetz v. Morning Call, Inc.,
    946 F.2d 202 (3d Cir. 1991)............................................................................. 28

DB02:6802125.1                                                                                                        045581.1053

Smith v. Borough of Pottstown,
    No. 96-1941,
    1997 U.S. Dist. LEXIS 9178 (E.D. Pa. June 30, 1997).................................................... 18

Storino v. Borough of Point Pleasant Beach,
    322 F.3d 293 (3d Cir. 2003)........................................................................................... 10

Sutton v. Rasheed,
    323 F.3d 236 (3d Cir. 2003)........................................................................................... 3

Swartzwelder v. McNeilly,
    297 F.3d 228 (3d Cir. 2002)........................................................................................... 25

Swierkiewicz v. Sorema, N.A.,
    534 U.S. 506 (2002) ...................................................................................................... 2

Taylor v. Ky. State Bar Ass'n,
    424 F.2d 478 (6th Cir. 1970)......................................................................................... 19

Thomas v. Independence Twp.,
    463 F.3d 285 (3d Cir. 2006)........................................................................................... 5

Thompson v. Dover Downs, Inc.,
    No. 02-1360-MPT,
    2003 U.S. Dist. LEXIS 17838 (D. Del. Oct. 6, 2003) .................................................... 12

Webb v. Corr. Med. Servs.,
    No. 07-31-GMS,
    2008 U.S. Dist. LEXIS 11306 (D. Del.  Feb. 14, 2008) .................................................. 3

Weisman v. Buckingham Twp.,
    2005 U.S. Dist. LEXIS 11696 (E.D. Pa. June 14, 2005)................................................ 28

Weisser v. Med. Care Sys.,
    423 F. Supp. 1292 (E.D. Pa. 1977)................................................................................ 30

**Rules**

D. Del. LR 7.1.3 ................................................................................................................ 7

Fed. R. Evid. 201(b)(2)...................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ..............................................................................................2, 4, 6, 8

Fed. R. Civ. P. 12(e) .......................................................................................................... 5

**Statutes**

10 <u>Del. C.</u> §§ 4010-13 ............................................................................................. 27

42 U.S.C. § 1983 ............................................................................................ 9, 26

045581.1053

**ARGUMENT**

**I.    PRELIMINARY MATTERS**

      The Plaintiff in this case is an attorney who prides himself on being an outspoken critic of Defendants New Castle County, Gordon, and Freebery.  Each of his claims are based on the premise that his very public speech attacking them is constitutionally protected by the First Amendment.  Ironically, he turns the First Amendment on its head by seeking to muzzle their response to his attacks and punish them for their constitutionally protected speech.  He ignores what appears obvious – Defendants have a constitutional right to respond.

      Even if this deficiency could somehow be overcome, none of the alleged harms caused by Defendants' speech can qualify as compensable damages in a Section 1983 claim.  Because the asserted harms are no more than defamation damages, (i.e., harm to reputation, embarrassment), Plaintiff's Complaint fails to state a claim upon which relief may be granted.

      Further, Plaintiff failed to provide any support for his claim that the rights he asserts were violated were clearly established at the time of Defendants' alleged conduct.  Not only does Plaintiff fail to cite to any case that could support such a finding, but he also fails to address the cases proffered by Defendants in support of a finding of qualified immunity.  The extensive body of case law referenced by Defendants makes clear that the Individual Defendants are immune from suit.  Plaintiff does not even attempt to distinguish the cited precedent.

      Plaintiff's Complaint, therefore, should be dismissed.

    **A.    The Post-_Twombly_ 12(b) Standard**

      Plaintiff devotes a great number of pages in his Answering Brief to a discussion of the appropriate standard of review.[1]  He argues that his Complaint need not plead facts or

---

[1] (D.I. 32 at 7-17).

DB02:6802125.1                                          045581.1053

legal theories to survive dismissal and cites several cases in support of his position.  Each of the

cases he relies on, however, was decided prior to the U.S. Supreme Court's decision in <u>Bell

Atlantic Corporation v. Twombly</u>.[2]  <u>Twombly</u> clarified the appropriate standard of law in

deciding a Rule 12(b)(6) motion to dismiss and makes clear that factual allegations must be

pleaded to avoid dismissal.[3]  Similarly, the cases decided since <u>Twombly</u> conclusively

demonstrate that a complaint that fails to allege each element of the asserted claim cannot

survive dismissal.[4]  Thus, Plaintiff's claim that he "need not plead facts to match the evidentiary

elements of his legal theory" flatly conflicts with current U.S. Supreme Court precedent.[5]

      **B.**      **Plaintiff's Complaint Fails to Allege the Personal Involvement of Each Defendant with the Requisite Level of Particularity**

Plaintiff acknowledges only part of the pleadings standard required for a claim

brought pursuant to Section 1983.[6]  He asserts that the standard requires him only to "state the

conduct, time, place, and persons responsible for the alleged civil rights violations."[7]  This omits

a fundamental and essential element of the standard.  It is indisputable that he must allege

---

[2] <u>See</u> (D.I. 32 at 8-10) (<u>citing</u> repeatedly <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002)); <u>compare</u> <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007).

[3] <u>Eisai Co., Ltd. v. Mutual Pharma Co., Inc.</u>, No. 06-3163-HAA, 2007 U.S. Dist. LEXIS 93585, at *26 (D.N.J. Dec. 20, 2007) (holding that a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and that the "[f]actual allegations must be enough to raise a right to relief above the speculative level").

[4] <u>See</u> <u>DeVille v. Reg'l Transit Auth.</u>, No. 07-1345, 2008 U.S. Dist. LEXIS 4842, at *10 (E.D. La. Jan. 22, 2008) (holding that the complaint "must plead specific facts, not mere conclusional allegations" as well as each "element of a claim necessary to obtain relief" to avoid dismissal).

[5] (D.I. 32 at 10, § 2).

[6] 42 U.S.C. § 1983.

[7] <u>See</u> (D.I. 32 at 11) (<u>citing</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005)).

           

Defendants' "*personal involvement with particularity*, stating the conduct, time, place and persons responsible for the alleged civil rights violations."[8]

The Complaint fails to allege the personal involvement of any of the five defendants in any specific wrongdoing.[9] Even in describing what he contends to be the "core operative facts" of this matter, Plaintiff makes allegations only about "the defendants." Never does he associate any specific action with a specific actor.[10]

Further, Plaintiff's Complaint explicitly states that *only* Defendants Gordon and Freebery were involved in any alleged wrongdoings.[11] He then argues that Gordon and Freebery were acting exclusively in their individual capacities as private citizens, not as public employees, when they participated in the disputed conduct.[12] Following Plaintiff's logic, dismissal is required. It is not disputed that Plaintiff alleges Gordon and Freebery were the only alleged wrongdoers. If, as Plaintiff asserts, they committed the alleged wrongs not as public officials, but as private citizens, there is no state action and, therefore, no basis to assert a claim under Section 1983.

Moreover, the failure to plead any facts that allege "personal involvement" by any of the other defendants is yet another deficiency that requires the dismissal of his claim.[13] Plaintiff alleges that he has joined New Castle County, Coons, and Singleton (the "County

---

[8] Id. at *29-30.

[9] See Webb v. Corr. Med. Servs., No. 07-31-GMS, 2008 U.S. Dist. LEXIS 11306 at *10 (D. Del. Feb. 14, 2008) (quoting Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)).

[10] (D.I. 32 at 17, § A).

[11] (D.I. 32 at 21) (citing D.I. 1 at 44-46, 48-50) ("the persons responsible for all of these actions are Gordon and Freebery").

[12] (D.I. 32 at 65-66).

[13] Joynes v. Meconi, No. 05-332-GMS, 2006 U.S. Dist. LEXIS 71296, at *7-8 (D. Del. Sept. 30, 2006) (citing Evancho, 423 F.3d at 353).

3

Defendants"), for purposes of obtaining injunctive relief and attorney's fees. As discussed below, injunctive relief is simply not available here.

Further, to obtain an award of attorney's fees under Section 1983, Plaintiff must show that Coons or Singleton did something wrong, i.e., that they engaged in actionable misconduct. They cannot be joined just to give Plaintiff an avenue to seek attorney's fees. As Plaintiff concedes, adding Coons and Singleton as Defendants only in their official capacities adds nothing to his Complaint since the relief he requests is available from the County.[14] Absent some wrongdoing on their part, they are not proper parties.

The County, of course, is not liable on a *respondeat superior* basis for the alleged misconduct of its employees.[15] Plaintiff's claim against the County based on his allegations against Gordon and Freebery therefore must be dismissed.

### C.    Rule 12(e) Amendment Would Be Futile

Plaintiff argues that, if a 12(b)(6) motion would result in dismissal, the district court must permit amendment "unless such an amendment would be inequitable or futile." Not doing so, he concludes, "is reversible error."[16] Notably, Plaintiff did not request permission to amend his Complaint, should the court find dismissal to be appropriate, nor does he dispute the futility of any proposed amendment.

Leave to amend should not be granted where, as here, the amendment would be futile. Since there are no additional facts that Plaintiff could allege that would save his Complaint, dismissal is appropriate. Regardless of the content of Defendants' alleged remarks,

---

[14] (D.I. 32 at 66-67) (explaining that the prevailing party may recover attorney's fees from defendants in their official capacities or directly from the state agencies).

[15] Monell v. N.Y. City Dep't of Social Servs., 436 U.S. 658, 690 (1978).

[16] (D.I. 32 at 14, § D).

4

or of the intent with which any such remarks may have been made, Plaintiff's claims cannot survive dismissal.

An order under Rule 12(e) for a more definite statement would be appropriate only if the Court were to grant the present Motion, not on the merits of the allegations, as set forth in this and in the previously filed Opening Briefs, but merely on the basis of insufficiently pleaded information.[17]  In his Answering Brief, Plaintiff emphasizes repeatedly the low threshold required for notice pleading.  As stated above, Plaintiff goes so far as to assert that he need not assert even a legal theory as a basis for relief.  If Plaintiff's standard is correct and the allegations in his Complaint are sufficient to survive dismissal, Defendants would be unable to frame a proper qualified immunity defense because they would not know what claims are being asserted against them.[18]

### D.    The Exhibits to Defendants' Opening Brief Are Properly Considered in This Motion to Dismiss

In their Opening Brief, the County Defendants cited to certain documents outside the pleadings.  (D.I. 27).  Some of the documents were attached as exhibits, while others were not.  Defendants provided ample legal support demonstrating that the Court's consideration of the cited documents would not convert the present Motion into one for summary judgment.

In his Answering Brief, Plaintiff objects to the consideration of all but one of the submitted documents.  Plaintiff does not provide any legal support for his objections, nor does he

---

[17] See Thomas v. Independence Twp., 463 F.3d 285 (3d Cir. 2006) (explaining that, when "a complaint fashioned under the simplified notice pleading standard of the Federal Rules does not provide the necessary factual predicate for such a determination," the district court can order the plaintiff to submit a more definite statement regarding the facts underlying his claim for relief).

[18] Barr v. City of Beaver Falls, No. 07-340, 2007 U.S. Dist. 79614 (W.D. Pa. Oct. 26, 2007) (citing Thomas, 463 F.3d at 301) (granting motion to dismiss on certain counts and motion for more definite statement on the remaining claims).

attempt to distinguish the legal support cited by Defendants. For this reason, Plaintiff's request that the Court not consider the previously submitted documents should be rejected.

Each of the exhibits are properly considered as exceptions to the rule restricting the court to the "four corners" of the pleadings when deciding a motion to dismiss. The first documents at issue are pleadings from another, related case, Reyes v. Freebery, et al., (the "Reyes Matter"), that were identified and discussed in Defendants' Answering Brief.[19] It is undisputed that the Court may consider "court files, orders and records" in deciding a 12(b)(6) motion without risk of converting it to a motion for summary judgment.[20] This exception to the four-corners doctrine explains that court filings and records are documents of which a court may take judicial notice in accordance with Rule 201(b) of the Federal Rules of Evidence.[21] Judicial notice is appropriate for facts that are not subject to reasonable dispute and that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."[22]

Records and pleadings from the Reyes Matter may be considered because they are indisputably authentic documents.[23] Despite Plaintiff's protests about their admissibility, he does not contend that the documents are in any way inaccurate or otherwise unauthentic. Plaintiff served as legal counsel to the plaintiffs in the Reyes Matter. In that capacity, he filed

---

[19] No. 02-1283, 2004 U.S. Dist. LEXIS 15018 (D. Del. July 13, 2004).

[20] See, e.g., McClain v. Munn, No. 06-278-Erie, 2008 U.S. Dist. LEXIS 28985, at *5 (W.D. Pa. Apr. 9, 2008) (stating that the public-records exception to admissible documents in a Rule 12(b)(6) motion includes court files, orders, and records).

[21] Oran v. Stafford, 226 F.2d 275, 289 (3d Cir. 2000).

[22] Fed. R. Evid. 201(b)(2).

[23] See, e.g., McDowell v. Potter, No. 07-673, 2008 U.S. Dist. LEXIS 6407, at *5 (W.D. Pa. Jan. 28, 2007) (explaining that the district court may consider, among other things, "indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment") (internal citations omitted).

various pleadings and participated in court proceedings.[24]  Therefore, the Court may properly

consider the items from the Reyes Matter in deciding the present Motion without converting it to

a motion for summary judgment.

Although Plaintiff complains that Defendants did not attach the <u>Reyes</u> documents

to their Opening Brief, Defendants did so in accordance with the District Court's Local Rules.

Local Rule 7.1.3 states:

> (6)  Citation by Docket Number.  References to earlier-filed papers
> in *any civil action* shall include a citation to the docket item
> number as maintained by the Clerk in the following format: "D.I."
> followed by the docket item number of the paper.[25]

Pursuant to the Local Rules, there was no need or justification to attach court-filed documents to

Defendants' Opening Brief.

Plaintiff also advances the argument that the documents cannot be considered

because they are sealed and could not be accessed by the general public.  Although the general

public may not be able to access the documents, the court certainly has access and can refer to

the documents as it sees fit.

Plaintiff's objections to the other documents cited in Defendants' Opening Brief

are equally unavailing.  Plaintiff objects to Defendants' inclusion of a list of cases filed in this

Court in which Plaintiff is named as lead counsel.[26]  The list was generated using the Court's

electronic filing and docketing system, Public Access to Court Electronic Records ("PACER").[27]

---

[24] <u>See</u> <u>S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.</u>, 181 F.3d 410, 426
(3d Cir. 1999) (explaining that the court has the power to look at judicial proceedings).

[25] D. Del. LR 7.1.3 (emphasis supplied).

[26] (D.I. 32 at 15) (objecting to Defendants' Exhibit 3 (mistakenly referred to as Ex. 2 in
Plaintiff's Answering Brief)).

[27] Available at https://ecf.ded.uscourts.gov/cgi-bin/ShowIndex.pl, last accessed on May 2, 2008.

Plaintiff does not provide any basis for his objection, other than the general accusation that the purpose of its inclusion by Defendants was "an attempt to inject selective factual materials into the record."[28]  He does not claim that the report is inaccurate, except to the extent that there are even more cases than those identified in the list.  Nor does he address the more obvious fact that the report is publicly available.[29]  Thus, the case report is admissible as an undisputedly authentic document pursuant to the public-record exception.[30]

Plaintiff makes the same objection to the various newspaper articles attached as exhibits to Defendants' Opening Brief.  Again, Plaintiff provides no legal support for his objection.[31]  Nor does he respond to the binding Third Circuit precedent cited by Defendants, that states unequivocally that the Court may take "judicial notice of newspaper articles" in deciding a 12(b)(6) motion.[32]

## II.    PLAINTIFF'S FAILURE TO ALLEGE ANY INJURY IN FACT OR ANY AVAILABLE RELIEF THAT COULD ADDRESS HIS INJURIES REQUIRES DISMISSAL ON JURISDICTIONAL GROUNDS

The court does not have jurisdiction over Plaintiff's claims because Plaintiff is not "likely to suffer future injury" at the hands of Defendants.[33]  "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of

---

[28] (D.I. 32 at 15).

[29] "*Public* Access to Court Electronic Records."

[30] See generally, In re ATI Tech., Inc. Sec. Litig., 216 F. Supp. 2d 418, 430 (E.D. Pa. 2002).

[31] (D.I. 32 at 15) (objecting to Defendants' Exhibits 1 and 4 on the grounds that the articles are "irrelevant to any issue in our present briefing and [were] not relied upon in the Complaint").

[32] (D.I. 27 at 6, n.28) (citing Benak v. Alliance Capital Mgmt., L.P., 435 F.3d 396 (3d Cir. 2006)).

[33] Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).

the Constitution by alleging an actual case or controversy."[34]  "Abstract injury is not enough."[35]

Plaintiff has not alleged that "he has sustained or is immediately in danger of sustaining some

direct injury as a result of the challenged official conduct [or that] the injury or threat of injury

[is] both real and immediate, not conjectural or hypothetical."[36]

In his Answering Brief, Plaintiff properly identifies the three constitutional

elements of standing but he misapplies the standing analysis and fails to address Defendants'

arguments that conclusively demonstrate his lack of standing.

### A.    Plaintiff Cannot Satisfy the Injury-In-Fact Requirement By Claiming Defamation Damages

Defamation damages are not available in a claim brought under Section 1983 and,

therefore, cannot satisfy the injury-in-fact element required for jurisdictional standing.[37]

Defendants supported this proposition in their Opening Brief by citing to an extensive list of

cases from this Circuit.  Plaintiff makes no attempt to address or distinguish any of the cited

cases.[38]  Instead, he simply reiterates what is obvious from his Complaint—that he claims

standard defamation-type injuries such as "harmed reputation."[39]  Plaintiff's failure to address

the well-established precedent of this Circuit demonstrates that he has not alleged an injury in

fact and, therefore, has failed to allege the requisite standing.

---

[34] City of Los Angeles, 461 U.S. at 101 (internal citations omitted).

[35] Id.

[36] Id.

[37] 42 U.S.C. § 1983.

[38] (D.I. 27 at 7, nn.32-34) (citing to no less than thirteen cases in support of the proposition that the damages claimed by Plaintiff, including damage to reputation, do not constitute an injury in fact as a matter of law).

[39] (D.I. 32 at 58) (citing D.I. 1 at ¶¶ 55-60, 74, 76-78, 86) (claiming injuries including "hurt, wounded, distressed," "humiliation" and harm to his reputation).

Plaintiff argues that his garden-variety emotional distress damages are sufficient to support a claim. But his Complaint makes clear that his "emotional distress" allegations all relate to his claim that his reputation was injured. As noted above, under settled authorities, such defamation-type injuries are not recoverable.

### B. The Doctrine of Prudential Standing Further Requires Dismissal of Plaintiff's Claims

Even if Plaintiff had alleged an injury in fact sufficient to satisfy the threshold requirements for standing, dismissal would still be appropriate under the doctrine of prudential standing. The purpose of prudential standing is to determine whether Plaintiff is a proper party "to invoke judicial resolution of the dispute and exercise of the court's remedial powers."[40]

The Third Circuit employs a three-part test to analyze prudential standing: (1) the litigant must assert his own legal interests rather than those of a third party; (2) the court should refrain from adjudicating abstract questions of wide public significance that amount to generalized grievances; and (3) the plaintiff must demonstrate that his interests are within the "zone of interests" that are intended to be protected by the constitutional provision on which his claim is based.[41] Here, Plaintiff attempts to assert rights belonging to his clients. The third-party standing rule bars litigants from asserting the rights of others in order to obtain relief from injury

---

[40] Mariana v. Fisher, 338 F.3d 189, 204 (3d Cir. 2003) (quoting Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County, 271 F.3d 140, 145 (3d Cir. 2001)).

[41] Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 300 (3d Cir. 2003); Lozano v. City of Hazelton, 496 F. Supp. 2d 477, 499-500 (M.D. Pa. 2007); see also Elk Grove United Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (explaining the three elements of prudential standing).

to themselves.[42]  Thus, despite Plaintiff's claim to the contrary, the doctrine of prudential

standing precludes him from bringing suit by vicariously asserting the rights of others.[43]

C.     **Plaintiff's Failure to Allege Any Available Relief Further Demonstrates That He Does Not Have Standing to Proceed**

Plaintiff maintains that he is entitled to various injunctions against each of the

defendants constituting equitable relief.  Equitable remedies are "unavailable absent a showing

of irreparable injury, a requirement that cannot be met where there is no showing of any real or

immediate threat that the plaintiff will be wronged again."[44]  Here, there is no real or immediate

threat that the complained-of conduct will reoccur.  Indeed, the alleged wrongdoers, Gordon and

Freebery, are no longer in office.  The exercise of federal jurisdiction is not appropriate because

Plaintiff cannot demonstrate that it is probable that the alleged conduct will reoccur.[45]

1.     **A Permanent Injunction Cannot Be Issued Where the Alleged Conduct Is Incapable of Repetition**

Plaintiff claims that the current County administration, through Defendants Coons

and Singleton, "can continue to harm Plaintiff" by circulating his private and confidential

medical information.  Plaintiff admits that he has publicly revealed this "confidential"

information to the public through the news media.  Thus, through his own actions, the

information cannot be confidential.  Further, Plaintiff's allegation that Defendants New Castle

County, Coons, and Singleton might make public his private medical information is purely

speculative.  There is no factual basis for Plaintiff's allegations.

---

[42] Ringsred v. City of Duluth, 187 F. Supp. 2d 1141, 1163 (D. Minn. 2001).

[43] (D.I. 32 at 64-65).

[44] Lyons, 461 U.S. at 111 (quoting O'Shea v. Littleton, 414 U.S. 488, 501 (1974)).

[45] Chapin Furniture Outlet, Inc. v. Town of Chapin, No. 06-2129, 2007 U.S. App. LEXIS 25378, at *13 (4th Cir. Oct. 20, 2007).

11

Since there is no real or immediate threat that Plaintiff will be subject to further release of allegedly confidential information, Defendants cannot be enjoined. The permanent injunction Plaintiff seeks is, therefore, not an available remedy.[46]

### 2. A Reparative Injunction In the Form of an Apology Is Not an Effective Nor an Available Form of Relief

Plaintiff also claims that there is an available remedy in the form of a reparative injunction.[47] Plaintiff seeks a reparative injunction "directing that all defendants take out full page newspaper advertisements apologizing for their illegal actions."[48] Reparative injunctions are a form of equitable relief and, as such, must be "narrowly tailored to correct the alleged violations of plaintiff's right."[49]

Plaintiff's requested relief for an apology issued by Defendants is overly broad, if it can be considered a form of injunctive relief at all.[50] In Ronbom v. Weberman, the plaintiff sought injunctive relief. He requested that the defendants be required to (1) serve a copy of the injunction upon all persons who learned of the defamatory statements about plaintiff from defendants' web sites; (2) serve a written statement explaining that the defamatory statements were false; and (3) remove the statements from their web sites. The court declined the requested

---

[46] (D.I. 32 at 62).

[47] (D.I. 32 at 62).

[48] (D.I. 32 at 62).

[49] Garrett v. McNutt, No. 06-01314-AWI, 2007 U.S. Dist. LEXIS 54264, at *14 (E.D. Cal. July 26, 2007).

[50] Rombom v. Weberman, 766 N.Y.S.2d 88 (N.Y. Supr. 2003) (finding that requested relief in the form of an apology is overly broad and overly burdensome); Thompson v. Dover Downs, Inc., No. 02-1360-MPT, 2003 U.S. Dist. LEXIS 17838, at *7 (D. Del. Oct. 6, 2003) (finding that plaintiff had not requested injunctive relief where he had requested a letter of apology and punitive damages).

12

relief, reasoning that a mandatory injunction compelling a party to affirmatively act is an "extraordinary and drastic remedy."[51]

Here, Plaintiff requests similar relief. He asks that Defendants be made to (1) publicly apologize to Plaintiff; and (2) notify all persons who may have learned the allegedly "false" information of the apology. Plaintiff's requests are not feasible.[52] They are made further impractical by the undisputed fact that the conduct is not continuing.[53] Finally, an order to affirmatively act by issuing an apology is, as a matter of law, not an available remedy.[54] The requested apology, therefore, "would under no circumstance be available as a form of equitable relief."[55]

## III. PLAINTIFF'S FOURTEENTH AMENDMENT PRIVACY CLAIMS ARE WITHOUT MERIT

In contrast to the detail in which Plaintiff's Answering Brief addresses the Standard of Review, remarkably little is spent in addressing his Fourteenth Amendment Right to Privacy Claim. And, of the time that is spent, much of it is spent applying the wrong analysis by comparing the asserted governmental interest in disclosure to the plaintiff's privacy interest.[56] Plaintiff alleges that Defendants "have utterly failed to identify any public concern" to justify the

---

[51] Id. at *13.

[52] Thompson, 2003 U.S. Dist. LEXIS 17838, at *7.

[53] Id.

[54] See Mazur v. Szporer, No. 03-00012, 2004 U.S. Dist. LEXIS 13176, at *29 (D.D.C. June 1, 2004) (dismissing the plaintiff's claim for injunctive relief in the form of an apology upon the defendant's 12(b)(6) motion, finding that a claim requesting that defendants be required to publish that their previously published statements were false fails as a matter of law).

[55] Id.

[56] (D.I. 32 at 25-26).

13

claimed disclosure.[57]  Defendants did not identify a public concern because the balancing test is

not appropriate in deciding a motion to dismiss, which limits the analysis to the four corners of

the pleadings.

> **A.    Plaintiff Has Failed to Allege Disclosure of any Constitutionally Protected Information**

Not all private medical information is subject to constitutional privacy

protections, however.  Constitutional protections will be awarded only to where the medical

information carries with it a social stigma that would likely result in social ostracism or

disrepute.  The medical conditions that have been protected in this Circuit are limited to those

that invoke a stigmatized reaction by society at large.  For example, medical information as

confidential as the presence of HIV infection[58] and a minor student's pregnancy[59] have both been

found not to warrant a constitutionally protected privacy interest.

Plaintiff attempts to classify a brain tumor as one that carries a social stigma by

arguing that a lawyer who has a brain tumor will not be able to retain clients.  Without providing

any support, Plaintiff states that,

> while the public may accept an attorney with a less serious ailment
> affecting a less vital part of the body, such as a back problem or a
> limp from a childhood fall, most consumers would neither seek out
> nor retain a lawyer with a serious medical condition such as a brain
> tumor that is allegedly caused [sic] him to act erratically. [60]

---

[57] (D.I. 32 at 26).

[58] Doe v. Delie, 257 F.3d 309 (3d Cir. 2001).

[59] Gruenke v. Seip, 225 F.3d 209 (3d Cir. 2000).

[60] (D.I. 32 at 24).

Comparing a brain tumor with the diagnosis of HIV or sexually transferred disease and concluding that the brain tumor carries more of a social stigma than an HIV diagnosis is specious. Plaintiff has thus failed to allege a constitutionally protected privacy interest.

### B. Any Reasonable Expectation of Privacy Was Lost By Plaintiff's Prior Disclosure to Third Parties

Even if Plaintiff's condition were subject to the constitutional protections of the Fourteenth Amendment, it was Plaintiff who disclosed his condition. Plaintiff does not dispute that he disclosed his diagnosis to his colleague, Martin Haverly.[61] Plaintiff made the disclosure to Mr. Haverly before any alleged disclosure to Defendants. Mr. Haverly subsequently repeated the diagnosis during a teleconference in the Reyes Matter. Including Mr. Haverly, there were at least five persons present during the teleconference.[62] The presiding judge, the court reporter, and two attorneys representing the Reyes defendants were all in attendance.[63] At no time has Plaintiff alleged that any of the defendants in the present matter were present for the call and, indeed, none were.[64]

Yet, Plaintiff seeks to impose liability upon Defendants for their alleged "disclosure" when, in fact, Plaintiff's diagnosis had been circulated to numerous persons prior to any of Defendants' alleged actions. The undeniable reality is that Plaintiff disclosed information

---

[61] (D.I. 32 at 25-26).

[62] Notably and significantly, Plaintiff does not allege, either in the Complaint or in his Answering Brief, that Mr. Haverly repeated the "confidential" information only at the teleconference. Certainly it is more than feasible that Mr. Haverly disclosed Plaintiff's diagnosis to multiple persons both before and after the teleconference with the Court.

[63] (D.I. 32 at 25-26).

[64] Defendants Coon and Singleton were not even in office at that time. Gordon and Freebery were both represented by counsel at the teleconference but did not attend in person. Nor did Plaintiff attend. (D.I. 32 at Ex. C).

about his medical condition to Mr. Haverly, who repeated it to others, long before Defendants could have become aware of it.

Plaintiff's own disclosure to Mr. Haverly precludes his Fourteenth Amendment claim as a matter of law.[65]  Because Plaintiff voluntarily released the information to Mr. Haverly, subsequent release of the information "cannot constitute an adverse retaliatory action as a matter of law."[66]  This premise remains true "regardless of [Defendants'] motivation."[67]

Plaintiff argues that the teleconference was sealed and, therefore, the disclosure of any information learned during the teleconference was a constitutional violation.  The transcript was sealed to protect the *status quo* in the hotly contested Reyes Matter.  The transcript was not sealed to prevent the attendees from further discussion of topics unrelated to the litigation.

Plaintiff had no reasonable expectation of privacy once he disclosed his diagnosis with Mr. Haverly.  Indeed, Mr. Haverly was acting on Plaintiff's behalf in the teleconference when he informed the participants of Plaintiff's medical condition.  Plaintiff is therefore in no position to complain about the release of the information.

## IV.  PLAINTIFF APPLIES THE WRONG ANALYSES TO HIS FIRST AMENDMENT CLAIMS

Plaintiff flip-flops back and forth between three analyses in an attempt to save his First Amendment retaliation claims from dismissal.  None of the three analyses is the correct one.

---

[65] See, e.g., FOP, Lodge 5 v. City of Phila., 812 F.2d 105, 110 (3d Cir. 1987) (holding that, as a threshold matter, the first disclosure must have been to the defendants; finding such disclosure was a prerequisite to the assertion of a disclosure-based privacy claim).

[66] Barber v. Winn, No. 95-1030-FJS, 1997 U.S. Dist. LEXIS 4018, at *11 (S.D.N.Y. Mar. 31, 1997).

[67] Id.

A.     **The Unconstitutional Conditions Doctrine Is Inapplicable**

Plaintiff first attempts to invoke the Unconstitutional Conditions doctrine. The doctrine is inapplicable to the present case. As set forth numerous times in Plaintiff's Answering Brief, the doctrine is invoked where the government denies or conditions a benefit or privilege to a citizen in retaliation of exercise of a constitutional right.[68] Although Plaintiff correctly sets forth the basic premise of the doctrine, he fails to allege that he was, indeed, subject to the denial of any such privilege or benefit.[69]

Even if he had alleged such a denial, it could not support his First Amendment retaliation claim. The analysis employed by Plaintiff as set forth above is applicable only in the context of a substantive due process claim.[70]

B.     **The Public-Employee Retaliation Analysis Is Inapplicable**

The next test employed by Plaintiff is equally inapplicable. Plaintiff argues that the First Amendment retaliation analysis used for citizen claims and public employee claims are analogous.[71] He cites no precedent to support this strange "analogy."[72]

---

[68] See Keyishian v. Bd. of Regents of Univ. of N.Y., 385 U.S. 589, 606 (1967); (D.I. 32 at 28-29).

[69] See, e.g., Core Care Health Servs., Inc. v. Shalala, No. 98-5812, 1999 U.S. Dist. LEXIS 2799 (E.D. Pa. Mar. 4, 1999) (where the benefit at issue was Medicare).

[70] See Bentley v. Tennis, No. 06-2073, 2007 U.S. Dist. LEXIS 88174, at *9-10 (M.D. Pa. Nov. 30, 2007).

[71] (D.I. 32 at 31). Plaintiff's reference to Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006), is unavailing. Hill cannot be applied outside of the public-employee context. It addresses a question not presented in the present matter—how to determine whether a public employee is speaking as a private citizen or as an employee for the purposes of First Amendment protection. As pointed out by Plaintiff, there is no public-employee issue here. Thus, reliance on Hill is unwarranted.

[72] (D.I. 32 at 30, n.11). Plaintiff draws the incorrect conclusion that, because public employees have "severely limited First Amendment rights" but their speech to the media is "protected, *a fortiori*, a private citizen, whose rights are much broader, must also be protected in talking to the

17

Plaintiff later asserts, however, that "public employee cases are analyzed under a different legal rubric than applies to cases involving private citizens."[73]  Thus, Plaintiff's Answering Brief concedes that the two tests are not interchangeable.

### C.    The Defamation-Plus Standard Is Inapplicable

Third, Plaintiff attempts to invoke yet another analysis.  This time, he tries to apply the "defamation-plus" standard.  "Defamation-plus" is used in a due process analysis.  It is inapplicable in the present First Amendment analysis.  Also known as "reputation plus," or "stigma plus," the standard requires a plaintiff to prove more than defamation in and of itself.[74]

Before a government official risks exposure to liability for his speech, he must go beyond defamation and actually cause the citizen harm.  Cases involving criminal investigation and prosecution are the classic example of situations that meet the "defamation-plus" standard.  Plaintiff relies on cases in his Answering Brief that apply the defamation-plus standard, and are therefore inapplicable to the First Amendment retaliation analysis.[75]

For example, Freeman & Bass v. New Jersey Commission of Investigation, involved a claim of conspiracy brought pursuant to § 1985.[76]  In that case, the plaintiffs alleged that they had been subject to a baseless investigation that was conducted by the state agency

---

media."  This contention is without merit.  Public employees are not "protected" every time they speak to the media.  As Garcetti v. Ceballos and its progeny make clear, the "protection" assigned to the speech of a public employee is wholly dependent on whether the employee was speaking in his capacity as a citizen or pursuant to his employment.  127 S. Ct. 1957 (2007).

[73] (D.I. 32 at 38, n.18).

[74] Smith v. Borough of Pottstown,  No. 96-1941, 1997 U.S. Dist. LEXIS 9178, at *41, n.16 (E.D. Pa. June 30, 1997).

[75] (D.I. 32 at 33-34).

[76] 359 F. Supp. 1053, 1055-56 (D.N.J. 1973).

defendant in conspiracy with the state Department of Labor.[77]  In addition to the unlawful investigation, the defendants had subpoenaed various files that were protected by the attorney-client privilege.[78]  The court found that the plaintiffs' claims could survive a motion to dismiss because they alleged more than defamatory harassment.  They alleged that a criminal investigation had actually been instituted.  Because the allegations in the complaint involved an investigation and was not limited to mere words or threats, the claims could survive to the next stage of the analysis.[79]

In Taylor v. Kentucky State Bar Association, a case decided by the Sixth Circuit nearly forty years ago, the defendants were alleged to have instituted disbarment proceedings against an attorney in retaliation for his protected conduct.[80]  The court found that disbarment proceedings were "quasi-criminal in nature" and, therefore, were the equivalent of criminal prosecution by the state.  In accordance with the defamation-plus standard, the court permitted the case to proceed on the ground that the plaintiff had alleged something *more* than harassment or defamatory conduct.  The allegedly retaliatory conduct included *more* than defamation—included quasi-criminal prosecution.

The final case cited by Plaintiff also contains allegations beyond defamation.  In Izen v. Catalina, the defendants were alleged to have engaged in retaliatory conduct by wrongfully investigating and prosecuting the plaintiff for money laundering.[81]  The cases

---

[77] Id.

[78] Id. at 1057; and id. at 1056 (explaining that the plaintiffs had identified other, "specific instances of harassment" not delineated in the court's opinion).

[79] Id. at 1057.

[80] 424 F.2d 478, 481 (6th Cir. 1970).

[81] 382 F.3d 566, 568 (5th Cir. 2004).

referred to in the footnotes of Plaintiff's brief also involved allegations of criminal prosecution or investigation, thereby lifting them to the defamation-plus standard.[82]

Even a cursory review of the cases Plaintiff cites reveal that reliance on these cases is misplaced. Plaintiff relies on these cases for the proposition that "attorneys may bring First Amendment actions arising from retaliation against them for their vigorous advocacy of unpopular causes that challenge the powers that be."[83] This characterization misses the mark. The cited cases actually stand for the proposition that an attorney (or other citizen) may bring a First Amendment claim for actions taken against them in retaliation for their protected conduct *only if* the alleged actions include something more than defamation or threatened conduct.

To survive dismissal, the allegations must include retaliatory investigation, prosecution, or other tangible harms initiated by the defendants. Plaintiff does not make any such allegation in his Complaint. Nor does he attempt to make such a claim in his Answering Brief. Because Plaintiff has not alleged that Defendants instituted a criminal investigation or prosecution, his claims do not meet the requirements for application of the defamation-plus analysis.

## V.    PLAINTIFF FAILS TO DISPUTE THAT DEFENDANTS' SPEECH IS ENTITLED TO CONSTITUTIONAL PROTECTION

In their Opening Brief, Defendants demonstrated that Plaintiff's Complaint could not survive the present Motion for at least three reasons. First, the Complaint fails to allege that Plaintiff engaged in any protected activity. Second, the Complaint fails to allege that he sufficiently adverse action by Defendants as demonstrated by the fact that Plaintiff was never

---

[82] See (D.I. 32 at 34, n.13) (quoting Hartman v. Moore, 547 U.S. 250 (2006)) ("the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out").

[83] (D.I. 32 at 33, § (2)).

deterred from exercising his First Amendment rights.  Third, the Complaint fails to identify any allegedly retaliatory conduct by Defendants that was not, itself, protected by the First Amendment.  In his Answering Brief, Plaintiff does not attempt to dispute these three failures.  Hence, the conclusion remains the same—Defendants' speech is entitled to no less constitutional protection than Plaintiff's and, therefore, cannot trigger the imposition of liability.

### A.    Plaintiff Has Abandoned His Petition Claim

As set forth in Defendants' Opening Brief, Plaintiff's attempt to characterize his representation of and advocacy for his clients as protected petitioning activity is wholly without merit.[84]  The Petition Clause provides constitutional protection to litigants who petition the government through the court system seeking redress of their grievances.[85]  The Petition Clause does not provide vicarious protection to the counsel for the petitioning party.  Plaintiff makes no attempt to refute these arguments and he has, therefore, conceded that Defendants are correct.

Plaintiff's discussion of the "collective First Amendment right to counsel" is confusing and out of place.[86]  His analysis of the history of labor unions is without relevance to the present claims.  His subsequent analysis of the "individual First Amendment right to counsel" is similarly out of context.[87]  Plaintiff also discusses the right of an individual to consult with an attorney in legal matters, but how this fits into the present analysis is unclear, because Plaintiff does not allege that Defendants' speech somehow prevented him from seeking or retaining counsel.

---

[84] (D.I. 27 at 12, § 1).

[85] See San Filippo v. Bongiovanni, 30 F.3d 439-40, n.18, & 442-43 (3d Cir. 1994), cert. denied, 513 U.S. 1082 (1995).

[86] (D.I. 32 at 40-41).

[87] (D.I. 32 at 41-42).

B.    The <u>Mezibov</u> Case Provides Persuasive Guidance to the Court in the Present Matter

Plaintiff makes two arguments in an effort to distinguishes the case of <u>Mezibov v. Allen</u>, from the facts of the present case.  Neither argument is convincing.[88]

1.    Plaintiff's Attempt to Limit the <u>Mezibov</u> Holding Is Unavailing

Plaintiff first alleges that the <u>Mezibov</u> holding is limited to attorney speech made within the physical confines of the courtroom.[89]  Plaintiff claims that, because his speech on behalf of his clients was made outside of the courtroom, <u>Mezibov</u> therefore does not apply.  Such a restricted interpretation is unsupportable.

The court explicitly framed the issue as "whether an attorney can claim First Amendment protection on his own behalf for his filing motions and making courtroom statements on behalf of his client."[90]  The court held that, "in filing motions and advocating for his client in court, Mezibov was not engaged in free expression; *he was simply doing his job.*"[91]  The holding applies to all speech made in an attorney's capacity as an officer of the court.[92]

Here, Plaintiff's claim is premised on the assertion that he was punished for acting as a "vigorous advocate" on behalf of his clients.[93]  He cannot now disclaim his status as legal

---

[88] 411 F.2d 712 (6th Cir. 2005).

[89] (D.I. 32 at 36).

[90] 411 F.3d at 717 (6th Cir. 2005).

[91] <u>Id.</u> at 720 (emphasis supplied).

[92] <u>See</u> <u>Gentile v. State Bar of Nev.</u>, 501 U.S. 1030, 1071 (1991) (holding that, "even in an area far from the courtroom and the pendency of a case, our decisions dealing with a lawyer's right under the First Amendment to solicit business and advertise . . . have not suggested that lawyers are protected by the First Amendment to the same extent as those engaged in other businesses.") (<u>citing</u> <u>Bates v. State Bar of Ariz.</u>, 433 U.S. 350 (1977); <u>Peel v. Att'y Registration & Disciplinary Comm'n of Ill.</u>, 496 U.S. 91 (1990)).

[93] (D.I. 32 at 32).

counsel simply to avoid the influential impact of the court's holding. There can be no debate that, in his "vigorous advocacy," he was acting in the scope of his role as counsel; i.e., he was simply doing his job.

### 2. Plaintiff's Attempt to Mitigate the Impact of <u>Mezibov</u> Is Equally Unpersuasive

Plaintiff next attempts to discredit the Sixth Circuit's ruling in <u>Mezibov</u> with the argument that <u>Mezibov</u> and the cases that follow it were wrongly decided because they allegedly "flatly ignored" a prior Sixth Circuit decision, <u>Taylor v. Kentucky State Bar Association</u>.[94] He contends that <u>Taylor</u>, decided in 1970, "recognized that an attorney who claims Fist Amendment protection from retaliation because of his association with and representation of controversial clients and causes 'stated a claim for which relief may be granted under 42 U.S.C. § 1983.'"[95]

Plaintiff's attempt to discredit the Sixth Circuit's decision in <u>Mezibov</u> misinterprets the court's prior ruling in <u>Taylor</u>. His attempt to distinguish <u>Mezibov</u> rests on the strained argument that the Sixth Circuit somehow failed to follow its local rules and <u>Mezibov</u> and its progeny are rendered a nullity. Notably, Plaintiff does not offer any decision from any court that was decided on similar facts in support of his claims.

Regardless, Defendants do not cite the <u>Mezibov</u> decision as binding case law but, instead, as a guidepost for the Court to use, given the absence of decisions from any court on similar facts. And, as discussed in Section IV(C), above, Plaintiff's attenuated interpretation of the <u>Taylor</u> case is incorrect. The <u>Taylor</u> decision is based on circumstances that were "highly unusual and very limited" to the facts of that case.[96]

---

[94] (D.I. 32 at 36-37) (<u>citing</u> 424 F.2d 478, 480-82 (6th Cir. 1970).

[95] (D.I. 32 at 35-36 (<u>quoting</u> <u>Taylor</u>, 424 F.2d at 482).

[96] 424 F.2d at 480.

23

In <u>Taylor</u>, the appellant-attorney claimed that disbarment proceedings were instituted against him in bad faith and with the intention of chilling his right to free speech. The disbarment proceedings were equated with criminal proceedings, which elevates the claim into the "defamation-plus" standard.[97] Here, Plaintiff has not alleged any government persecution, such as a criminal investigation or prosecution or the initiation of disbarment proceedings. In the absence of additional allegations that would qualify Plaintiff's claim as one for "defamation plus," <u>Taylor</u> is inapplicable.

### C.    Plaintiff Fails to Allege the Requisite Level of Adversity

The Complaint cannot survive the present Motion unless it alleges that Plaintiff was subject to sufficiently adverse actions by Defendants. "Sufficiently adverse" in this context requires that Plaintiff was actually deterred from exercising his First Amendment rights as a result of the alleged conduct. Here, Plaintiff has not been deterred in his continued "vigorous advocacy" against the "powers that be."[98] Plaintiff does not dispute that he has continued in his pursuits, undeterred by any alleged conduct by Defendants.

#### 1.    Plaintiff Again Applies the Wrong Standard

Plaintiff claims that he need not demonstrate that he was "actually deprived" of his First Amendment rights. In making this claim, Plaintiff ignores Third Circuit precedent to the contrary. In <u>Aiello v. City of Wilmington</u>, the Third Circuit held that the defendants were entitled to prevail as a matter of law because their conduct, even if true, had not deterred the plaintiff from continuing to exercise his First Amendment rights.[99] Plaintiff's admission that he

---

[97] <u>Id.</u>

[98] (D.I. 32 at 37).

[99] 623 F.2d 845, 847-58 (3d Cir. 1980).

24

had continued to engage in the allegedly targeted conduct "directly contradicts [the plaintiff's]

charges of a chilling effect" caused by the claimed retaliatory action.[100]

Plaintiff does not address the <u>Aiello</u> decision or any of the numerous other

decisions cited by Defendants in their Opening Brief.[101]  Instead, he again cites to cases decided

in the context of public employment,[102] or misstates the holding of the proffered cases,[103] and

even cites without notation a decision that was expressly vacated.[104]

### 2.    Even Under the Standard Plaintiff Adopts, His Claims Fail to Allege Sufficiently Adverse Action

Without addressing the <u>Aiello</u> decision or any of the many other supporting cases

cited by Defendants, Plaintiff simply argues for a different standard.  He argues that, regardless

of the fact that he has not been deterred in exercising his First Amendment rights, he is not

precluded from proceeding with his claim.  This argument is based on the principle that even the

most trivial adverse action will satisfy the adversity requirement.

---

[100] <u>Id.</u>

[101] (D.I. 27 at 21-24).

[102] (D.I. 32 at 45) (<u>citing</u> <u>O'Connor v. City of Newark</u>, 440 F.3d 125 (3d Cir. 2006); <u>Swartzwelder v. McNeilly</u>, 297 F.3d 228, 241 (3d Cir. 2002) (deciding the plaintiff-employer's motion for preliminary injunction); <u>Bart v. Telford</u>, 677 F.2d 622 (7th Cir. 1982) (public employee alleged she was required to take a leave of absence to run for public office)).

[103] (D.I. 32 at 47) (<u>citing</u> <u>Garcia v. City of Trenton</u>, 348 F.3d 726, 729 (8th Cir. 2003) for the proposing that "the issuance of $35 parking tickets to a citizen would chill a person of ordinary firmness from exercising their free speech rights," where the facts of the case involved the issuance of a *numerous* parking tickets only to the plaintiff, which, it was openly admitted, was in retaliation for her complaints, and which caused the plaintiff to develop medically diagnosed anxiety and where the cited opinion reversed the trial court's grant of judgment as a matter of law to one of the defendant despite a jury verdict against him).

[104] <u>Price v. Chaffinch</u>, Nos. 04-956, -1207-GMS, 2006 U.S. Dist. LEXIS 57026 (D. Del. Aug. 14, 2006), in support of this proposition.  <u>Price</u> was subsequently vacated by the District Court, whose decision was affirmed by the Third Circuit, <u>sub nom</u>, <u>Foraker v. Chaffinch</u>, 501 F.3d 231 (3d Cir. 2007).

25

This is not the standard employed in the Third Circuit.  This standard is used in the analysis for a First Amendment retaliation claim brought by a *public employee*.[105]  As Plaintiff admitted earlier in his Brief, the public employee standards are not transferable to claims brought by private citizens.

Plaintiff cites the case of <u>Bloch v. Ribar</u>, as support for the *de minimus* standard he desires to invoke.[106]  <u>Bloch</u> is applicable and convincing but does not support Plaintiff's argument.  In <u>Bloch</u>, the Sixth Circuit upheld liability under Section 1983 for the violation of a citizen's First Amendment rights.[107]

In that case, the sheriff revealed intimate and highly sensitive information about the details of the plaintiff's rape in retaliation for the plaintiff's critical comments about how the investigation of the crime was handled.  Some of the details were so painful, the plaintiff had not yet shared them even to her husband.  This case involves adversity of the worst type.  The court held that the sheriff's conduct was beyond reproach.  <u>Bloch</u> thus confirms that more than *de minimus* misconduct is required.

### 3.    Using an Objective Standard, Plaintiff Would Not Have Been Deterred From Exercising His Constitutional Rights

The adversity standard is an objective one but must be put into the proper context.[108]  The application of the standard depends on the  position of the defendant.  Attorneys,

---

[105] (D.I. 32 at 43-44).

[106] (D.I. 32 at 47) (<u>citing</u> 156 F.3d 673 (6th Cir. 1998)).  Interestingly, after having just made the argument that the Sixth Circuit's First Amendment precedent is valueless, he now relies on a decision from that same court to support his claim.

[107] 42 U.S.C. § 1983.

[108] <u>Citizens for a Better Lawnside v. Bryant</u>, No. 05-4268, 2007 U.S. Dist. LEXIS 38514, at *17 (D.N.J. May 24, 2007) (<u>citing</u> <u>Eaton v. Meneley</u>, 379 F.3d 949 (10th Cir. 2004)).

like public officials, are held to a higher standard than an ordinary citizen.[109]  As an attorney

involved in numerous highly publicized cases, Plaintiff "must be expected to endure some

scrutiny for his actions."[110]  An experienced practitioner of ordinary firmness who regularly

employs the power of the media to advocate on behalf of his clients "would not be deterred from

vigorously defending his clients as a consequence of the alleged defamation in this case."[111]

## VI.  PLAINTIFF FAILS TO PROVIDE ANY SUPPORT FOR HIS CLAIM THAT DEFENDANTS ARE NOT IMMUNE FROM HIS STATE LAW CLAIMS

The Municipal Tort Claims Act does not provide for any exceptions to the Count's

immunity.[112]  Contrary to Plaintiff's suggestion, the Individual Defendants enjoy full immunity,

as well.  The Act identifies three elements that must exist before a defendant can lose immunity.

First, only defendant-employees can lose immunity.  Second, to lose immunity,

the defendant-employees must have engaged in an act that resulted in "bodily harm or property

damage."  Third, the actor must have engaged in the alleged conduct with malicious intent.

Plaintiff alleges the first and third element but ignores the second entirely.

Because Plaintiff's Complaint does not allege that the Individual Defendants caused any bodily

harm or property damage, their immunity remains fully in tact.  The state tort law claims for

defamation and invasion of privacy, therefore, must be dismissed.

---

[109] See Mattox v. Village of Forest Park, 183 F.3d 515, 522 (6th Cir. 1999); Mezibov, 411 F.3d at 721 (formulating test for "adverse action" prong for elected city council member as whether a "public official of ordinary firmness" would be deterred from exercising her First Amendment rights).

[110] Mezibov, 411 F.3d at 722.

[111] Id.

[112] 10 Del. C. §§ 4010-13.

## VII.    PLAINTIFF FAILS TO PROVIDE ANY SUPPORT FOR HIS CLAIM THAT DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

### A.    The Fourteenth Amendment Privacy Right Asserted by Plaintiff Was Not Clearly Established

In determining whether there was a clearly established right at the time of the alleged conduct, it is essential to determine the precise nature of the right at issue.  Plaintiff instead crafts the question in only the broadest of terms.  With respect to the privacy claim, Plaintiff simply describes the right at issue as "the right to privacy."[113]  In all of four sentences, Plaintiff asserts that there is a long-established right to privacy of medical information.  No cases or similar factual scenarios are identified, nor does he claim that his allegations raise a novel issue.

This conclusory attempt to avoid the qualified-immunity doctrine is without merit.  Plaintiff does not provide the Court any support for the broad-sweeping assertion that the right to "privacy of medical information" is entirely obvious and clearly established.  The scope of the "right to privacy" is far from clear.  As several courts have noted, although there are numerous cases on that explore the right of privacy, "the contours of the confidentiality branch are murky."[114]

Thus, even if his privacy claim were not ripe for dismissal as set forth in detail above, the qualified immunity doctrine precludes it from proceeding against the Individual Defendants.

---

[113] (D.I. 32 at 52).

[114] Scheetz v. Morning Call, Inc., 946 F.2d 202, 206 (3d Cir. 1991); see also Weisman v. Buckingham Twp., 2005 U.S. Dist. LEXIS 11696, at *21 (E.D. Pa. June 14, 2005) ("Although the full measure of the constitutional protection of the right to privacy has not yet been fully delineated").

DB02:6802125.1                                                          045581.1053

**B.      The First Amendment Rights As Asserted by Plaintiff Were Not Clearly Established**

As Plaintiff has pointed out, the Mezibov decision was not entered until two years after the alleged conduct in this case already had occurred.  Even then, the contours of a double-First Amendment claim were still considered to present novel issues.  In Mezibov, the Circuit Court noted that the question of whether an attorney can claim First Amendment protection on his own behalf for his filing of motions and making statements on behalf of his client was an issue of first impression.[115]  The court also concluded that no court had imposed First Amendment liability for this narrow type of speech.[116]

Our own District Court has provided a thorough analysis of this issue.  In Rappa v. Hollins, the court held that the issue to be decided for the purposes of qualified immunity was whether "the plaintiff's asserted right not to be subjected to defamatory remarks in response to exercising his First Amendment rights was clearly established."[117]  Or, put differently, whether defamatory remarks, such as those alleged by Plaintiff, "were clearly established as constituting [sufficiently] adverse action."[118]

As required, the court first looked to Supreme Court precedent and found that the prior case law "only clearly established that it was unconstitutional to remove traditionally recognized governmental benefits (e.g., money, services, employment, licenses) in retaliation for the exercise of First Amendment expression."[119]  "Given this case law, a reasonable official in Defendants' position could not have known that defamatory remarks in response to the plaintiff's

---

[115] 411 F.2d at 717.

[116] Id.

[117] 991 F. Supp. 367, 381 (D. Del. 1997).

[118] Id. at 376.

[119] Id.

speech and petition efforts would violate the plaintiff's First Amendment rights."[120]  In short, the court concluded that the U.S. Supreme Court cases did not clearly establish that "defamatory remarks constituted retaliation in violation of the First Amendment."[121]

Having made this determination, the court next turned to the cases from within this circuit to determine whether the right to be free from retaliation in the form of defamatory remarks was clearly established.  The court pointed out that the Third Circuit had defined the adversity standard as to whether there had been the imposition of any "disciplinary action" or the "denial of a benefit," and that the court had most often found retaliations based on denial of employment or an employment benefit.[122]

The court then reviewed the only two decisions from the District Courts of the Third Circuit that had addressed a similar issue.  The first case concluded that the plaintiff could *not* establish a First Amendment claim based on defamatory remarks.[123]  The second case was silent on the issue as to whether defamation may establish a cause of action.[124]  "Taken together, these two cases at best rendered murky the visibility of a First Amendment retaliation claim based on defamatory comments.  Further, it would take a judge or lawyer knowledgeable in First Amendment constitutional law to tease a principle of law out of the Mraz court's silence."[125]

---

[120] Id.

[121] Id.

[122] Id. at 377 (collecting cases).

[123] Weisser v. Med. Care Sys., 423 F. Supp. 1292 (E.D. Pa. 1977).

[124] Mraz v. County of Lehigh, 862 F. Supp. 1344 (E.D. Pa. 1994).

[125] Rappa, 991 F. Supp. at 377.

Thus, the <u>Rappa</u> court properly held that no such right had been clearly established and that defendants were entitled to qualified immunity as a matter of law.[126] Plaintiff in the present matter has failed to address the <u>Rappa</u> case or any of the cases reviewed therein.  Qualified immunity is warranted due to the absence of case law from the U.S. Supreme Court, or from within the Third Circuit, that could be said to even suggest that defamatory remarks may constitute grounds for a First Amendment retaliation claim.

---

[126] <u>Id.</u> at 379.

DB02:6802125.1                                                                045581.1053

## CONCLUSION

For the reasons set forth in the brief above, Defendants respectfully request that

Plaintiff's Complaint be dismissed in its entirety.

Respectfully submitted,

*/s/ Charles E. Butler*

Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
E-mail: ceb@cebutler.com

and

*/s/ Barry M. Willoughby*

Barry M. Willoughby, Esquire (No. 1016)
Margaret M. DiBianca, Esquire (No. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6666
Facsimile: (302) 576-3345
E-mail: bwilloughby@ycst.com

*Attorneys for Defendants*

Dated: May 9, 2008