IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER          :       CIVIL ACTION
                                      :
      v.                        :
                                        :
THOMAS P. GORDON, individually;   :
SHERRY FREEBERY, individually;    :
CHRISTOPHER A. COONS, in his official  :
capacity as County Executive; DAVID W.  :     NO. 05-916-TNO
SINGLETON, in his official capacity as Chief  :
Administrative Officer; and NEW CASTLE  :
COUNTY                            :

O'NEILL, J.                                    JULY 21, 2008

## MEMORANDUM

On December 29, 2005, plaintiff Thomas S. Neuberger filed a complaint against

defendants Thomas P. Gordon and Sherry L. Freebery individually ("Individual Defendants");

Christopher A. Coons and David W. Singleton in their official capacities as County Executive

and Chief Administrative Officer respectively ("Incumbent Defendants"), and New Castle

County.  In his complaint, plaintiff alleges that defendants violated his rights under the United

States Constitution by retaliating against him for exercising his rights under the First Amendment

and for violating his right to privacy under the Fourteenth Amendment.  Plaintiff now seeks relief

pursuant to 42 U.S.C. § 1983.  Plaintiff also asserts Delaware state law claims for defamation,

invasion of privacy, intrusion on seclusion, and false light invasion of privacy.  Before me now

are defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), plaintiff's response and

defendants' reply thereto.

## BACKGROUND

1

Plaintiff is a practicing member of the Delaware bar.  At all times relevant to this matter, defendant Thomas P. Gordon was the County Executive of defendant New Castle County and defendant Sherry L. Freebery was the Chief Administrative Officer ("CAO") of the same. Presently, defendant Christopher A. Coons is the County Executive of defendant New Castle County and defendant David W. Singleton is the CAO.

Over the last several years, plaintiff has filed and prosecuted a large number of lawsuits against Individual Defendants and New Castle County on behalf of numerous police officers and other government employees of New Castle County.  During one such case, namely Reyes v. Freebery, et al, Individual Defendants published an official release from the Office of the County Executive in various local newspapers.  Plaintiff alleges that this release falsely accused him of violating federal court orders, unethical behavior and other wrongdoing.  Plaintiff claims that the release was part of a calculated effort to retaliate against, intimidate and injure him for filing numerous lawsuits challenging government corruption and for speaking to the media and the public about the same.

On January 15, 2004, during a court proceeding in the Reyes matter, plaintiff's co-counsel in the matter, Martin Haverley revealed to the court that plaintiff had been diagnosed with a brain tumor.  Plaintiff claims that upon learning this information the Individual Defendants disclosed to the Delaware media that plaintiff was dying of a brain tumor and that it was causing him to act erratically.  Plaintiff also asserts that the Individual Defendants discussed his private medical information with numerous other individuals and during county government meetings.  Plaintiff alleges that this was another attempt to retaliate against, intimidate and injure him for his First Amendment protected activities, as well as a violation of his privacy rights.

2

Thus, plaintiff claims he is entitled to relief for the violations he has alleged.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact and any reasonable inferences that may be drawn therefrom in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims." Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

## DISCUSSION

In their motions, Defendants argue that: (1) plaintiff lacks standing; (2) plaintiff's claim is moot; (3) Incumbent Defendants should be dismissed as duplicative; (4) plaintiff has failed to state a claim for First Amendment retaliation; (5) plaintiff has failed to state a claim under the

Fourteenth Amendment; (6) Individual Defendants are entitled to qualified immunity; and (7)

plaintiff's state law claims are barred by the County and Municipal Tort Claims Act, 10 Del. C.

§§ 4010-12 (2007) ("TCA").  I hold  that plaintiff has standing, his claims are not moot, and he

has stated a claim under § 1983 for violations of both his First Amendment and Fourteenth

Amendment rights.  Yet, I also hold that Incumbent Defendant are duplicative, and that

plaintiff's state law claims are barred by the TCA.  I hold further that Individual Defendants are

entitled to qualified immunity on plaintiff's First Amendment claim that Individual Defendants

retaliated against him for filing numerous lawsuits by publishing a newspaper ad.  However, I

hold that Individual Defendants are not entitled to qualified immunity on plaintiff's First

Amendment claim that Individual Defendants retaliated against him for speaking to the media

and the public by publishing a newspaper ad or on any of plaintiff's First Amendment claims

arising from the dissemination of plaintiff's private medical information.  Therefore, I will grant

defendants' motions to dismiss in part by dismissing Incumbent Defendants as well as plaintiff's

state law claims.  I will also bar plaintiff from collecting damages from Individual Defendants for

the portion of his First Amendment retaliation claim detailed above.  Finally, I will deny

defendants' motions as to the rest of plaintiff's claims.

I.     Justiciability: Standing and Mootness

        Individual Defendants challenge the justiciability of plaintiff's claims arguing that

plaintiff lacks standing and that his claims are moot.  I disagree.

        A.     Constitutional Standing

        The gist of the question of constitutional standing is whether plaintiff has "such a

personal stake in the outcome of the controversy as to assure that concrete adverseness which

4

sharpens the presentation of issues upon which the court so largely depends." Baker v. Carr, 369 U.S. 186, 204 (1962). Thus, constitutional standing requires a plaintiff to allege such a personal stake "as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498-99 (1975). To establish constitutional standing, a plaintiff must satisfy three elements: "(1) the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006) (citing United States v. Hays, 515 U.S. 737, 742-43 (1995)).

Individual Defendants argue that plaintiff lacks constitutional standing because he has failed to allege an injury as his constitutional rights were never actually restrained or curtailed and there is no real or immediate threat of injury in the future. Individual Defendants also claim that even if plaintiff was injured this court lacks the ability to redress the same as plaintiff cannot collect damages for defamation nor is he entitled to injunctive or declaratory relief.

I find that plaintiff did sufficiently allege an injury-in-fact. The injury-in-fact element of constitutional standing requires only "an identifiable trifle of harm." Joint Stock Soc. v. UDV N. Am., Inc., 266 F.3d 164, 177 (3d Cir. 2001) (quoting United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n.14 (1973)). The purpose of this element is to "distinguish a person with a direct stake in the outcome of a litigation-even though small-from a person with a mere interest in the problem." SCRAP, 412 U.S. at 689 n.14.

Plaintiff claims that private medical information was made public in contravention of his constitutionally protected right to privacy and that his ability to engage in protected First Amendment activities has been chilled. As I must accept as true all well-pleaded allegations of fact, I find plaintiff successfully alleges actual and particularized invasions of legally protected interests.

Plaintiff also satisfies the remaining requirements for constitutional standing. He states that defendants' conduct was the cause of his injury. Moreover, I find that if plaintiff does establish a constitutional violation, it is likely that this court would be able to redress his injury by awarding damages. Plaintiff requests relief in the form of compensatory damages for garden variety emotional distress, humiliation, embarrassment and injury to reputation. Individual Defendants argue that defamation damages are unavailable under § 1983. However, the Supreme Court has held that compensatory damages for § 1983 claims "may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . personal humiliation, and mental anguish and suffering.'" Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)). Furthermore, punitive damages as requested by plaintiff can be awarded based solely upon a constitutional violation. Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir. 2000) (citations omitted). Thus, I find that plaintiff's alleged injury would likely be redressed by a favorable decision[1] and that plaintiff has constitutional standing to bring his claims.

B.     Prudential Standing

---

[1]As I find that plaintiff's injury is likely to be redressed by an award of damages, I need not decide whether plaintiff would be entitled to injunctive or declaratory relief.

Individual Defendants argue that plaintiff lacks prudential standing because he is asserting the legal rights of third parties rather than his own. Of plaintiff's remaining claims, however, Count I clearly asserts plaintiff's own legal interests in claiming that he was denied his right to privacy by the release of his own private medical information. Moreover, I find that Counts II, III and IV all claim denial of plaintiff's own rights under the First Amendment due to retaliation against plaintiff for his exercising the same. Thus, it is unnecessary to address this argument.

C.    Mootness

Individual Defendants' argument that this claim is moot also fails for the same reasons outlined above. Individual Defendants claim that because none of the requested forms of relief can be awarded plaintiff's claims are moot as "the court's ability to grant effective relief lies at the heart of the mootness doctrine." Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 216 (3d Cir. 2003) (citation omitted). If developments occur during the course of a litigation that "prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Id. However, as explained above both compensatory and punitive damages may be awarded to plaintiff. Thus, I find plaintiff's claims are not moot. It is also unnecessary for me to decide at this juncture if plaintiff would be entitled to other forms of relief as well.

II.    Consideration of Materials Outside the Pleadings

When resolving a 12(b)(6) motion a district court may "generally consider only the allegations in the complaint , exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004) (internal citations omitted). An undisputedly authentic document may only be considered

7

if "plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Here, defendants ask me to consider three pieces of information outside the pleadings including: (1) the official release by Individual Defendants from the Office of the County Executive; (2) an article written by Cris Barrish and published by News Journal on January 11, 2004; and (3) portions of the Reyes litigation.

I will consider and take judicial notice of the official release, as it forms the basis of plaintiff's claim being "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). With regards to the Barrish article, I will consider it "only to indicate what was in the public realm at the time, not whether the contents . . . were in fact true." Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital, 435 F.3d 396, 401 n. 15 (3d Cir. 2006).

As for portions of the Reyes litigation, a district court can take judicial notice of judicial proceedings to demonstrate the existence of the same, but not for the truth of the facts asserted. Lum, 361 F.3d at 222 n. 3. Examining a prior judicial proceeding for facts would require converting a motion to dismiss into a motion for summary judgment. Id. (citing Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 427 n.7 (3d Cir. 1999)). Therefore, I will consider portions of the Reyes litigation only to the extent of judicially noticing the existence of these prior proceedings, but not for the truth of the facts averred in the same. Southern Cross, 181 F.3d at 427 n.7.

III.    Incumbent Defendants

It is well-settled that "an official capacity suit is, in all respects other than name to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also

8

Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n.55 (1978).  In order to recover a judgment for damages in an official capacity suit, a plaintiff "must look to the government entity itself."  Graham, 473 U.S. at 166.  Therefore, it is redundant to seek damages from both the Incumbent Defendants and New Castle County.

Plaintiff argues that the claims are not redundant because he seeks injunctive relief and attorneys' fees.  Under the Federal Rules of Civil Procedure, any injunction binds not only the parties, but also the parties' officers, agents, servants, and employees.  FED. R. CIV. P. 65(d)(2)(A)-(B) (2008).  Therefore, any injunction binding New Castle County would also bind Incumbent Defendants in their official capacities.  As for the attorneys' fees, the cases cited by plaintiff are inapposite to this case.  Some hold that government entities need not be named for plaintiffs to recover attorneys fees in official capacity suits.  See Morrison v. Ayoob, 627 F.2d 669, 673 (3d Cir. 1980); Hutto v. Finnery, 437 U.S. 678, 699-700 (1978).  Others addressed whether a prevailing plaintiff in a suit against a government entity's employees in their personal capacities could recover attorneys' fees from the entity and are thus inapposite to this case.  See Baraka v. McGreevey, 481 F.3d 187, 202 (3d Cir. 2007) (discussing Kentucky, 473 U.S. at 161). Plaintiff cites no case nor can I find any authority substantiating his claim that Incumbent Defendants are necessary for him to recover attorney's fees.  Therefore, I find that the inclusion of both Incumbent Defendants and New Castle County is redundant and will dismiss plaintiff's claims as to the Incumbent Defendants.

IV.    TCA

The TCA expressly grants immunity to all governmental entities and their employees "from suit on any and all tort claims seeking recovery of damages."  10 De. St. Ti. § 4011(a).  A

9

government entity includes "any municipality, town, county, administrative entity or instrumentality created pursuant to Chapter 8 of Title 22 or Title 9." 10 De. St. Ti. § 4010(2). An employee is any "person acting on behalf of a government entity in any official capacity, whether temporarily or permanently, and whether with or without compensation." 10 De. St. Ti. § 4010(1).

Immunity under TCA is absolute unless an exception under either § 4011(c) or § 4012 applies. None of § 4012's exceptions apply to this case. See 10 De. St. Ti. § 4012. § 4011(c) provides that government employees can be personally liable for property damage, bodily injury or death when not acting within the scope of their employment or when acting with wanton negligence or willful and malicious intent. 10 De. St. Ti § 4011(c). Here, New Castle County is a government entity and is therefore immune to plaintiff's state law tort claims. With respect to Individual Defendants, the question is not whether they acted within the scope of their employment, but whether they were acting in their official capacities. I find that in issuing the press release and speaking with the media and at county government meetings, they were acting in their official capacities as County Executive and Chief Administrative Officer and are therefore government employees under the TCA. Hence, they would only be liable for property damage, bodily injury or death. As plaintiff has not alleged that Individual Defendants caused any such damage, they too are immune from plaintiff's state law tort claims. See Dale v. Town of Elsmere, 702 A.2d 1219, 1223 (Del. 1997) (citing Carr v. Town of Dewey Beach, 730 F.Supp. 591, 601 (D. Del. 1990) (holding that "economic harm alone does not constitute 'property damage' as that term is used" in the TCA)). Thus, it is irrelevant whether Individual Defendants were acting within the scope of their employment or with wanton negligence or willful and

malicious intent.  Therefore, I find that plaintiff's state law claims are barred by the TCA and will be dismissed.

V.    Fourteenth Amendment Privacy Right Claim

The privacy right is "the right to be let alone-the most comprehensive of rights and the right most valued by civilized men.  To protect that right, every unjustifiable intrusion of the government upon the privacy of an individual...must be deemed a [constitutional violation]." Sterling v. Borough of Minersville, 232 F.3d 190, 193 (3d Cir. 2000) (quoting Olmstead v. United States, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting).  The Court of Appeals has held that the privacy right includes the "right not to have intimate facts concerning one's life disclosed without one's consent."  Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir. 1999). Plaintiff alleges that during a January 15, 2004 court proceedings, defendants became aware of confidential and private information about plaintiff, specifically that he had a brain tumor.[2] Plaintiff claims that defendants widely disclosed and disseminated that information in violation of his Fourteenth Amendment privacy right.[3]

Defendants argue (1) that plaintiff's voluntary disclosure to Mr. Haverly precludes this

_____

[2]I disagree with defendants' reading of plaintiff's complaint.  Defendants argue that plaintiff alleged defendants published untrue information about his medical condition and thus pleaded himself out of court as the Fourteenth Amendment only protects against the disclosure of truthful information.  Instead, I read plaintiff's complaint as alleging a violation of his privacy right arising from the disclosure of his being afflicted with a brain tumor.  The false information alleged by plaintiff, specifically that he was dying from the brain tumor and that it was causing him to act erratically, is alleged in support of his First Amendment retaliation claims.

[3]Defendants also claim that plaintiff failed to plead a cognizable injury.  However, as explained supra Part I.A., plaintiff claimed private and confidential medical information was made public in violation of his privacy right under the Fourteenth Amendment.  Thus, he did successfully plead an injury or an actual and concrete invasion of a legally protected interest. Taliaferro, 458 F.3d at 188.

claim and (2) that plaintiff has failed to allege a protected privacy interest.  Mr. Haverly's role in the ultimate disclosure of plaintiff's medical condition was not contained in the allegations of the complaint.  However, plaintiff does admit that Mr. Haverly knew of his condition and disclosed it to the <u>Reyes</u> court.  Yet the mere fact that plaintiff voluntarily disclosed this information to Mr. Haverly does not preclude plaintiff from maintaining his claim.

For example, in <u>Sterling</u> a young man voluntarily admitted to a police officer that he was homosexual.  232 F.3d at 192.  The Court of Appeals found that despite his voluntarily disclosure to a third party the young man still had a protected privacy right prohibiting the police officer from divulging that same information to a third party, the young man's relative.  <u>Id.</u> at 193.  Thus, the protected nature of information is not lost simply because it is voluntarily disclosed.  Instead, the "essence of private information is its general unavailability and the individuals' treatment of it as confidential." <u>Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia</u>, 812 F.2d 105, 116 (3d Cir. 1987).  Moreover, the "fact that protected information must be disclosed to a party who has a particular need for it . . . does not strip the information of its protection against disclosure to those who have no similar need." <u>Id.</u> at 118.  Hence, plaintiff simply disclosing his medical condition to Mr. Haverly would not suffice by itself to bar plaintiff's claim as "[c]onfiding in one's friends . . . would not suffice to diminish a reasonable expectation of privacy against disclosure to the public at large." <u>Scheetz v. The Morning Call, Inc.</u>, 946 F.2d 202, 209 (3d Cir. 1991) (Mansmann, J., dissenting).

With respect to defendants' second argument, I find that plaintiff did allege a protected privacy interest.  The Court of Appeals has held that "private medical information is 'well within the ambit of material entitled to privacy protection,' in part because it concerns intimate facts of a

personal nature." Sterling, 232 F.3d at 195 (quoting United States v. Westinghouse Elec. Corp.,

638 F.2d 570, 577 (3d Cir. 1980)). "Information about one's body and state of health is matter

which the individual is ordinarily entitled to retain within the 'private enclave where he may lead

a private life.'" Westinghouse, 638 F.2d at 570. Thus, I find the fact that plaintiff had a brain

tumor is constitutionally protected information.

       Defendants argue that because having a brain tumor lacks a negative social stigma

plaintiff does not have a constitutional right to keep that information confidential. I disagree.

Powell v. Shriver, the case cited by defendants in support of this contention, states "that the

interest in privacy of medical information will vary with the condition." 175 F.3d 107, 111 (2d

Cir. 1999). However, Powell relies on the following language in Doe v. City of New York:

> Clearly an individual's choice to inform others that she has contracted what
> is at this point invariably and sadly a fatal, incurable disease is one that she
> should normally be allowed to make herself. This would be true for any
> serious medical condition, but is especially true with regard to those
> infected with HIV . . . considering the unfortunately unfeeling attitude
> among many in this society toward those copies with the disease.

15 F.3d 264, 267 (2d Cir. 1994). This language clarifies that plaintiff need not demonstrate

negative social stigma to extend the right to confidentiality to personal medical information.

Rather, the existence of the same only increases the need for privacy. Thus, I find that plaintiff

did allege a protected privacy interest and a cognizable claim under the Fourteenth Amendment.

VI.    First Amendment Retaliation Claims

       Plaintiff alleges that defendants published newspaper ads and released his private medical

information to retaliate against him for his exercising his First Amendment rights in two ways:

(1) by speaking to the media and public challenging government corruption and illegality; and (2)

by filing lawsuits on his clients behalf challenging the same. To state a claim for actionable

retaliation under the First Amendment, the plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006).

    A.    Constitutionally Protected Conduct

Plaintiff claims he engaged in protected activity in two ways: (1) by speaking to the media and the public regarding government corruption and illegality, and (2) by filing lawsuits on behalf of his clients challenging the same. As an initial matter, in claiming he was retaliated against for speaking to the public and the media himself plaintiff is not asserting anyone's rights other than his own. Next, Defendants do not contest that while speaking to the media and the public plaintiff was a private citizen. The Supreme Court has noted that "[p]rivate citizens cannot be punished for speech of merely private concern." Rutan v. Republican Party of Ill., 497 U.S. 62, 95 (1990) (citing Connick v. Myers, 461 U.S. 138, 147 (1983)). Moreover, speech regarding matters of public concern is accorded more protection than that involving only private matters. Eichenlaub v. Township of Ind., 385 F.3d 274, 284 (3d Cir. 2004) (holding that while "speech on topics of public concern may stand on the 'highest rung' on the ladder of the First Amendment, private speech . . . is still protected."). Thus, private citizens cannot be punished for speech regarding matters of public concern either. Government corruption and illegality is well-established to be a matter of public concern. See Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 829 (1994) (holding that the disclosure of "corruption, fraud, and illegality in a government agency is a matter of significant public concern."); Holder v. City of Allentown, 987 F.2d 188, 195 (1993) (citing a speaker seeking to "'bring to light actual or

14

potential wrongdoing or breach of the public trust' on the part of government officials" as an example of a matter of public concern (quoting Connick, 461 U.S. at 148)).  Thus, it is clear that plaintiff cannot be punished for speaking to the media regarding government corruption and illegality.

Defendants argue that plaintiff's speech is not protected activity under the rationale of Mezibov v. Allen, 411 F.3d 712 (6th Cir. 2005).  However, I find defendants' argument unpersuasive as I agree with plaintiff's more narrow reading of that case.  More specifically, I find that the Court of Appeals for the Sixth Circuit held only that "in the context of the courtroom proceedings, an attorney retains no personal First Amendment rights when representing his client in these proceedings."  Id. at 720-21.  Hence, I find that plaintiff successfully alleged that he engaged in protected activity while speaking to the media and the public.

With regard to aiding his clients in pursuing lawsuit challenging government corruption I find that plaintiff's actions were protected under the First Amendment.[4]  The Supreme Court has held that there is a "basic right to group legal action." United Transp. Union v. State Bar of Mich., 401 U.S. 576, 585 (1971) ("Collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment."); United Mine Workers of America, Dist. 12 v. Ill. State Bar, 389 U.S. 217, 224-25 (1967) (holding that the freedom of speech, assembly and petition guaranteed by the First Amendment gave the union

---

[4] I do not agree with defendants that plaintiff is asserting his client's rights in this action. Plaintiff is not claiming that he is being retaliated against because of the actions of his clients but rather because of his own actions in representing his clients.  Thus, the pertinent inquiry here is whether plaintiff's own actions in representing his clients were protected under the First Amendment.

"the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights."); Brotherhood of R.R. Trainmen v. Va. ex rel. Va. State Bar, 377 U.S. 1, 8 (1964) (holding the First Amendment protected the union's right "to maintain and carry out their plan for advising workers who are injured to obtain legal advice and for recommending specific lawyers"); Nat'l Ass'n for Advancement of Colored People v. Button, 371 U.S. 415, 431 (1963) (holding that the NAACP could advise litigants to seek the assistance of certain attorneys and even pay for that assistance because "association for litigation may be the most effective form of political association."). Significantly, the Supreme Court has noted that attorneys who provide representation for collective actions are also protected under the First Amendment. Trainmen, 377 U.S. at 8 (noting that "of course, lawyers accepting employment under this constitutionally protected plan have a like protection which the State cannot abridge."). Thus, the Supreme Court has recognized that affording the representing attorney protection is necessary for the rights of the client to be fully protected.

As a part of this basic right to group legal action the First Amendment also protects "collective action by individuals to seek legal advice and retain legal counsel." Denius v. Dunlap, 209 F.3d 944, 954 (7th Cir. 2000). Yet the right to retain and consult an attorney extends not only to collective actions but also to individuals as well. See Bates v. State Bar of Arizona, 433 U.S. 350, 376 n.32 (1977) (reasoning that "the Court's concern that the aggrieved receive information regarding their legal rights and the means of effectuating them...applies with at least as much force to aggrieved individuals as it does to groups."). The Court of Appeals for several circuits have recognized an individual right to hire and consult an attorney protected by the First Amendment's guarantees of freedom of speech, association and petition. Denius, 209

16

F.3d at 953; see also Mothershed v. Justices of Supreme Court, 410 F.3d 602, 611 (9th Cir. 2005); DeLoach v. Bevers, 922 F.3d 618, 620 (10th Cir. 1990); Martin v. Lauer, 686 F.2d 24, 32 (D.C. Cir. 1982). I find that this protection must also be extended to the individual's attorney or that individual's right to retain and consult an attorney will be curtailed. Hence, I find that in being retained by and in consulting with his clients plaintiff was engaging in protected conduct under the First Amendment.

Defendants again cite Mezibov to argue that plaintiff's conduct in representing his clients was not protected. 411 F.3d at 718. However, that case is clearly distinguishable. The attorney in Mezibov was attempting to "claim First Amendment protection on his own behalf for his filing motions and making courtroom statements on behalf of his client." Id. at 717. As the Court of Appeals noted an attorney's challenge of restriction on speech during a judicial proceeding are "grounded in the rights of the client, rather than any independent rights of the attorney." Id. at 718. The attorney in Mezibov was attempting to assert his client's right to freedom of speech during a courtroom proceedings as opposed to his client's right to retain and consult with counsel. Accordingly, the fact that the courtroom is a nonpublic forum while key to Mezibov's analysis is inapposite here. Id. As defendants' argument is unpersuasive, I find that plaintiff has successfully alleged that he also engaged in protected activity while representing his client and filing lawsuits on their behalf.

B.     Retaliatory Action

Plaintiff alleges two incidents of retaliation: (1) defendants published and widely circulated newspaper ads that were false and contained accusations against plaintiff of unethical conduct and other wrongdoing; and (2) defendants widely disseminated plaintiff's private

medical information to the media and other persons.  Plaintiff clearly alleges that defendants'

motive for these actions was retaliatory and that his First Amendment protected activity was a

substantial and motivating factor in the same.  Moreover, plaintiff also alleges that such

retaliatory adverse action would deter a person of ordinary firmness from exercising his First

Amendment rights.  At this juncture, I must accept these allegations as true.

With respect to circulating the newspaper ads, defendants argue that they had a

constitutionally protected right to respond under the First Amendment guarantee of freedom of

speech.  However, an "act taken in retaliation for the exercise of a constitutionally protected right

is actionable under § 1983 even if the act, when taken for a different reason, would have been

proper."  DeLoach, 922 F.2d at 620 (quoting Matzer v. Herr, 748 F.2d 1142, 1150 (7th Cir.

1984)); Bloch v. Ribar, 156 F.3d 673, 681-82 (6th Cir. 1998) (same quotation); see also Allah v.

Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) ("Government actions which standing alone do

not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial

part by a desire to punish an individual for exercise of a constitutional right." (quoting Thaddeus-

X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999) (en banc))).  Thus, assuming that defendants'

motive was retaliatory it is irrelevant whether or not they may have had a right to respond under

the First Amendment.  Furthermore, plaintiff also alleges that defendants' newspaper ads were

false and defamatory.  Thus, the newspaper ads would not be protected under the First

Amendment.  See Mezibov, 411 F.3d at 722 (considering only those comments that could

"reasonably be construed as defamatory, lest we trample on the First Amendment rights" of the

government official).

Defendants also argue that neither of their actions were sufficiently adverse to qualify as

retaliatory action. Defendants' argument is three-pronged: (1) their conduct was insufficient to deter a reasonable person of ordinary firmness from exercising constitutional rights; (2) their conduct was insufficient to deter a reasonable plaintiff's civil rights attorney from exercising constitutional rights; and (3) plaintiff was not deterred from exercising his constitutional rights.

Plaintiff has clearly alleged that defendants' conduct was sufficient to deter a person of ordinary firmness from exercising constitutional rights and I must accept that as true. Therefore, plaintiff would fail to satisfy this prong only if the alleged retaliatory actions "are so de minimis that they do not rise to the level of being constitutional violations." Thaddeus-X, 175 F.3d at 398. However, I note that this is a very low threshold and is "intended to weed out only inconsequential actions." Id. Plaintiff alleges that in addition to humiliating him and injuring his reputation defendants' alleged conduct has isolated him from society and exposed him to public contempt and ridicule. As a result, I find that defendants' alleged conduct would deter a person of ordinary firmness from exercising the constitutional right at stake and thus is not inconsequential.

Defendants also argue that "the definition of adverse action is not static across contexts." Id. Thus, defendants argue that the correct formulation of the test is whether defendants' alleged conduct would deter a plaintiff's civil rights attorney of ordinary firmness from engaging in the constitutionally protected conduct. See Mezibov, 411 F.3d at 721. Even accepting this as true, I would still find that defendants' alleged conduct satisfied the required adversity. Similar to the facts in Mezibov, much of defendants' alleged conduct were statements calling plaintiff a bad attorney. Id. at 722-23. However, this was also combined with the release of plaintiff's private medical information and the spreading of rumors that due to his medical condition plaintiff was

behaving erratically and would soon die.  To a large extent plaintiff would not be able to dispel these rumors as the mere whisper of the same would create a lingering doubt in the mind of many.  Moreover, the totality of the alleged retaliatory conduct would result in stripping plaintiff of not only his good reputation but also of all credibility.  Even discrediting defendants' statements about him would still do little to limit the damage to plaintiff's career and his ability to attract new clients.  I find that such a fate would be sufficient to deter a civil rights plaintiff's attorney of ordinary firmness from exercising constitutional rights.

Finally, as Defendants concede in their reply brief, this inquiry is an objective one and does not depend upon the actual effect of the retaliatory conduct on plaintiff.  See Smith v. Mosley, — F.3d —, 2008 WL 2609353 at *5 (11th Cir. 2008); Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Harbin-Bey v. Rutter, 420 F.3d 571, 579 (6th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004).  Thus, it is immaterial to this analysis whether or not plaintiff was actually deterred from exercising his constitutional rights.  Furthermore, defendants' reliance on Aiello v. City of Wilmington, Del., 623 F.2d 845 (3d Cir. 1980), is misplaced.  Aiello's holding is limited as plaintiff's "claim of an unconstitutional chilling effect rests upon a discrete period in the past."  Id. at 857.  Aiello also noted that an impermissible chill can occur if there is "some likelihood that [a plaintiff] has been or will be deterred from engaging in constitutionally protected activity."  Id.  Thus, Aiello itself counters defendants' argument that plaintiff must show that his conduct was actually chilled. Hence, I find that plaintiff has sufficiently alleged retaliatory conduct sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

C.    Causal Link

20

Plaintiff also alleges that a casual link could be established by the temporal proximity of the events, a past history of hostility and antagonism and the evidence as a whole.   Defendant does not contend nor do I find plaintiff's allegations deficient in any way.  Thus, I find that plaintiff has sufficiently alleged a causal link.  See Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007) (holding that a plaintiff can establish the requisite causal connection by proving "a pattern of antagonism coupled with timing").  As plaintiff has satisfied each of the three prongs I find that he has a stated a cognizable claim for retaliation under the First Amendment.

## VII.   Qualified Immunity for Individual Defendants

Still remaining are plaintiff's Fourteenth Amendment right to privacy claim (Count I) and his First Amendment retaliation claims (Counts II, III, and IV) against defendants New Castle County and Individual Defendants.  Individual Defendants claim they are entitled to qualified immunity for all of plaintiff's remaining claims.  Plaintiff argues that the actions of Individual Defendants were outside the scope of their official duties, that Individual Defendants did violate Plaintiff's constitutional rights and that those rights were clearly established.  I find that Individual Defendants are entitled to qualified immunity for claims arising from plaintiff's representation of his clients and filing lawsuits on their behalf but not for claims arising from plaintiff's speech to the media and the public.

Qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official.  Gomez v. Toledo, 113 U.S. 635, 640 (1980).  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818.

It is the burden of a defendant official asserting qualified immunity to establish an entitlement to

the same. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (quoting Stoneking

v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989)). Yet, this immunity only applies

"to suits for civil *damages* arising from actions within the scope of an official's duties and in

'objective' good faith." Harlow v. Fitzgerald, 457 U.S. 800, 819 n.34 (1982).

A.    Scope of Authority

The purpose of qualified immunity is to protect officials who act when their "duties

legitimately require action." Harlow, 457 U.S. at 819. Thus, the preliminary inquiry is whether

the official acts for which qualified immunity is asserted were within the scope of the official's

authority. The defendant official "bears the burden of demonstrating that the conduct of which

the plaintiff complains 'falls within the scope of the defendant's duties.'" In re Allen, 106 F.3d

582, 594 (4th Cir. 1997) (quoting Shechter v. Comptroller of New York, 79 F.3d 265, 268 (2d

Cir. 1996)); see also Al-Amin v. Smith, 511 F.3d 1317, 1324 (11th Cir. 2008) (holding that a

"government official must first establish that he was acting within his discretionary authority" to

receive qualified immunity); Gardenhire v. Schubert, 205 F.3d 303, 311 (6th Cir. 2000) (same);

Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981) (holding that the burden is on defendant

to establish his entitlement to claim official immunity by demonstrating that "his actions were

undertaken pursuant to the performance of his duties and within the scope of his authority.").

Rather than the title of an official's office it is "the duties with which the particular officer sought

to be made to respond in damages is entrusted – the relation of the act complained of to 'matters

committed by law to his control or supervision'. . . which must provide the guide in delineating

the scope of the rule which clothes the official acts . . . with immunity." Barr v. Matteo, 360 U.S. 564, 573-74 (1959); see also Doe v. McMillian, 412 U.S. 306, 319-23 (1973) (holding that independent establishment of a government printing office did not confer an independent immunity). Yet, "in order to ensure that public officials are adequately protected from liability, an official's conduct falls within his authority *unless* a reasonable official in the defendant's position would have known that the conduct was clearly established to be beyond the scope of that authority." Allen, 106 F.3d at 594.

Individual Defendants argue that public employees acting under the color of state law must be acting within the scope of their official authority. Unfortunately, this argument confuses the relevant issues. It is true that the traditional definition of "acting under color of state law" requires an official exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 481 U.S. 42, 49 (1988). However, the ultimate question in determining if a public employee is acting under the color of state law is whether that official's action are fairly attributable to the state. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 927, 933 (1982)). This is a separate inquiry from whether the actions of an official are within the scope of that official's authority although the two may intersect at times. The Supreme Court has noted the distinction between the two holding that personal liability under § 1983 for acts taken under color of state law may be imposed on acts both within as well as outside an official's authority. Hafer v. Melo, 502 U.S. 21, 29 (1991). Furthermore, the Court of Appeals has held that even "one who is without actual authority, but who purports to act according to official power, may also act under color of state law." Barna v. City of Perth Amboy, 42 F.3d 809, 816

23

(3d Cir. 1994).

When determining the scope of an official's authority the Supreme Court has analyzed the statutes or regulations controlling the official's duties.  See Doe, 412 U.S. at 321-22 (interpreting the statutes controlling the duties of the Public Printer and the Superintendent of Documents to determine the "outer perimeter" of their statutory duties); Barr, 360 U.S. at 574-75 (determining duties of agency director by analyzing statute defining authority of agency).  Here, the scope of Individual Defendants as County Executive and Chief Administrative Officer depends on an analysis of DEL. CODE ANN. tit. 9, §§ 1116-1122.  On the face of the complaint, plaintiff alleges two sets of actions by Individual Defendant that violated his constitutional rights: (1) publication of the newspaper ads; and (2) the wide release and circulation of plaintiff's medical information to the media and other persons as well as discussion of the same during a New Castle County government meeting.  I find that while reasonable officials may have believed the first set of actions to be within the scope of their authority as County Executive and CAO, the second set clearly is not.

The County Executive is charged with seeing that all duties and responsibilities of the county government are performed and with coordinating the various offices, departments and agencies.  DEL. CODE ANN. tit. 9, § 1116(1).  The County Executive can also require the submission of any reports deemed appropriate.  DEL. CODE ANN. tit. 9, § 1116(8).  Finally, the County Executive is charged with "the organization and performance of such civil defense as shall from time to time be performed by the County."  DEL. CODE ANN. tit. 9, § 1118. Meanwhile, the CAO must "prepare reports and information concerning the status of the financial and other affairs of the County which will keep the County Executive, County Council

and the public informed as to all offices, departments and agencies receiving appropriations from the County Treasury." DEL. CODE ANN. tit. 9, § 1121(b). Here, the newspaper ads published information regarding pending litigation in which New Castle County was a named defendant. Moreover, the matter at issue was institutional racism and racial profiling in the county police department as well as First Amendment retaliation against two minority officers. Thus, this matter directly touches upon both the civil defense of the county as well as the affairs of a department receiving appropriations from the county treasury. Hence, I find that publishing the newspaper ads was within the scope of authority delegated to the County Executive and CAO. However, even if it were not I find that a reasonable official acting in either capacity could have believed it was. Thus, I find that publishing the newspaper ads was within the scope of official actions for which qualified immunity may be available.

As for the release of plaintiff's private medical information, Individual Defendants do not identify nor in my own research have I found any duties or sources of authority that would bring such actions within the scope of the authority of either the County Executive or CAO. Plaintiff's medical condition is not a matter of public concern nor is it relevant to county governance. Thus, I find that reasonable officials acting in the capacity of either County Executive or CAO would have known that both the release of plaintiff's private medical information to the media as well as its discussion at a county government meeting were clearly beyond the scope of their authority. Hence, I find that Individual Defendants have failed to satisfy their burden and are not entitled to qualified immunity on plaintiff's First Amendment and Fourteenth Amendment claims arising from the release of his private medical information.

        B.        Violation of Constitutional Right

25

I must now continue the qualified immunity analysis with respect to plaintiff's First Amendment claims arising from the newspaper ads.  When defendants assert qualified immunity the initial inquiry must be whether "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  While a court may "find it necessary to set forth principles which will become the basis for a holding that a right is clearly established . . . [yet] this is the process for the law's elaboration from case to case."  Saucier, 533 U.S. at 201.  However, if  "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  As explained supra Part VI, plaintiff did allege a violation of a constitutional right.

C.     Clearly Established Rights

Even if Individual Defendants participated in constitutionally prohibited behavior, they may still be shielded from liability unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow, 457 U.S. at 818. For qualified immunity purposes, a right is considered clearly established only if "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1982).  A reasonable official may be on notice that their conduct is unlawful even if there is not "a previous precedent directly on point."  Acierno v. Cloutier, 40 F.3d 597, 630 (3d Cir. 2004); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (holding that an "official can still be on notice that their conduct violates established law even in novel factual circumstances"); Anderson, 483 U.S. at 640 (holding that although the very action in question need not previously be held unlawful "in the

26

light of pre-existing law the unlawfulness must be apparent.").  General statements of the law can give "fair and clear warning, and in other instances a general rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question."  Hope, 536 at 740.  The ultimate issue is "whether despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful."  Good v. Dauphin County Social Servs. for Children and Youth, 891 F.2d 1087, 1092 (3d Cir. 1989).

Plaintiff clearly alleges that Individual Defendants' motivation in publishing the newspaper ads was retaliatory and I must accept all well-pleaded allegations of fact as true at this juncture.  Twombly, 127 S. Ct. at 1965 .  I find that Plaintiff's right to be free from official reprisal in retaliation for exercising his constitutional rights was clearly established in January of 2004.  See Larsen v. Senate of Commw. of Pa., 154 F.3d 82, 95 (3d Cir. 1998).  The Supreme Court has held that the First Amendment prohibits government officials from subjecting individuals to retaliatory actions for speaking out.  Crawford-El v. Britton, 523 U.S. 574, 592 (1998) (stating that the general rule that the First Amendment bars retaliation for protected speech has long been clearly established); Perry v. Sindermann, 408 U.S. 593, 597 (1972) (noting that the government may not punish or deprive a person of a benefit on the basis of his "constitutionally protected speech").  Moreover, the Court of Appeals has held that "official retaliation for the exercise of *any* constitutional right creates an actionable claim under Section 1983."  Anderson v. Davila, 125 F.3d 148, 162 (3d Cir. 1997) (emphasis in original); see also White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution

actionable under section 1983."). Moreover, the Court of Appeals has stated that "it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006) (quoting Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001)).

As a result, the "unlawful intent inherent in . . . retaliatory action places it beyond the scope of . . . qualified immunity if the right retaliated against was clearly established." DeLoach, 922 F.2d at 620. Thus the relevant inquiry is whether the right retaliated against was clearly established. Plaintiff's right to speak to the media and the public regarding government corruption and illegality is clearly established. See Mills v. State of Ala., 384 U.S. 214, 218 (1966) ("there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs."). However, the same cannot be said for the First Amendment protection afforded plaintiff while representing his clients and filing lawsuits on their behalf. The only precedent in this circuit for such protection is Freeman and Bass, P.A. v. State of N.J. Comm'n of Investigation, 359 F.Supp. 1053, 1057 (D.N.J. 1973). Significantly, the Court of Appeals has yet to announce an individual right to retain and consult with counsel much less protection under the same rationale for the individual's attorney. Thus, I find that a reasonable official in January of 2004 would not have fair warning that an attorney in representing his client and in filing lawsuits on their behalf was engaged in activity protected under the First Amendment.

Individual Defendants argue that the question presented is whether plaintiff's "asserted right not to be subjected to defamatory remarks in response to exercising his First Amendment rights was clearly established." Rappa v. Hollins, 991 F.Supp. 367, 379 (D. Del. 1997). The

court in Rappa focused on whether the defendants had fair notice that defamatory remarks constituted actionable retaliation.  Id.  However, I disagree that a reasonable official could believe actions taken with the intent of retaliating against another for exercising protected constitutionally rights are lawful.  Retaliation is characterized by intent, not whether it is clearly established that retaliation can take the form alleged.  For this reason, the Court of Appeals has held that the qualified immunity analysis in the context of a First Amendment retaliation claim turns on "factual determinations as to the officials' subjective beliefs and motivations, and thus cannot properly be resolved on the face of the pleadings." Larsen, 154 F.3d at 95.  The only exception to this rule is if a legitimate basis for Individual Defendants' actions is "so apparent that plaintiff's allegations of retaliatory motive could not alter the conclusion" that Individual Defendants would have acted the same "even without regard for the protected First Amendment activity."  Id.  As I find that no such legitimate basis is apparent here my analysis above will remain unchanged.

Hence, with regards to plaintiff's First Amendment retaliation claims arising from defendants' publication of the newspaper ads, I find that Individual Defendants are entitled to qualified immunity on the claims for which plaintiff's protected conduct was representing his clients and filing lawsuits on their behalf.  However, assuming a retaliatory motive behind their alleged conduct, Individual Defendants are not entitled to qualified immunity on claims for which plaintiff's protected conduct was speaking to the media and public.  Therefore, I will bar plaintiff from collecting damages from Individual Defendants on the grounds that they retaliated against him by publishing the newspaper ads as a result of his representing his clients and filing lawsuits on their behalf.  However, I will not limit plaintiff's other First Amendment retaliation

29

claims in the same way.

       An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS S. NEUBERGER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS P. GORDON, individually; | : | |
| SHERRY FREEBERY, individually; | : | |
| CHRISTOPHER A. COONS, in his official | : | |
| capacity as County Executive; DAVID W. | : | NO. 05-916-TNO |
| SINGLETON, in his official capacity as Chief | : | |
| Administrative Officer; and NEW CASTLE | : | |
| COUNTY | : | |

## **ORDER**

AND NOW, this 21st day of July 2008, upon consideration of defendants' motions to dismiss, plaintiff's response, and defendants' reply thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that defendants' motions are GRANTED IN PART and DENIED IN PART as follows:

(1)     Plaintiff's claims against defendants Christopher A. Coons and David W. Singleton are DISMISSED;

(2)     Counts V and VI of Plaintiff's claims are DISMISSED;

(3)     Plaintiff is barred from collecting damages from defendants Thomas P. Gordon and Sherry Freebery on the grounds that they retaliated against him for filing lawsuits on behalf of his clients by publishing a newspaper ad;

(4)     The remainder of defendants' motions is DENIED; and

(5)     The parties should notify the Court promptly whether a settlement conference would be helpful before the Magistrate Judge or another Judge of this Court.

*/s/ Thomas N. O'Neill, Jr.*
_____
THOMAS N. O'NEILL, JR., J.